1  **Nathan R. Rietmann, OSB #053630**
Rietmann Law P.C.
2  1270 Chemeketa St. NE
Salem, Oregon 97301
3  Phone: 503-551-2740
Email: nathan@rietmannlaw.com
4  Phone: (503) 551-2740 / Fax: (888)-700-0192
Attorneys for Plaintiff Klamath Irrigation District
5

6                UNITED STATES DISTRICT COURT

7                  DISTRICT OF OREGON

8                  MEDFORD DIVISON

9  **KLAMATH IRRIGATION DISTRICT,**        Case No. 1:19-cv-00451-CL

10                 Plaintiff,              **FIRST AMENDED COMPLAINT
                                           FOR DECLARATORY AND
11       v.                                INJUNCTIVE RELIEF**

12  **UNITED STATES BUREAU OF
    RECLAMATION, DAVID
13  BERNHARDT, Acting Secretary of the
    Interior, in his official capacity, BRENDA
    BURMAN, Commissioner of the Bureau
14  of Reclamation, in her official capacity,
    and ERNEST CONANT, Director of the
15  Mid-Pacific Region, Bureau of
    Reclamation, in his official capacity, and
16  JEFFREY NETTLETON, in his official
    capacity as Area Manager for the
17  Klamath Area Reclamation Office.**

18                 Defendants.

19

20

21                  **Nature of Action**

22       1.      Plaintiff Klamath Irrigation District, on behalf of itself and its landowners,

23  brings this action for declaratory and injunctive relief to protect their private property

24  rights (i.e., vested water rights) from Defendants' regular, sustained, and ongoing

25  violations of the Reclamation Act of 1902, Ch. 1093, 32 Stat. 388 ("Reclamation Act")

26  and the Fifth Amendment to the United States Constitution.

Page 1 -    AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    2.    The past, present, and future agency actions, inactions, findings, and

2    conclusions that Plaintiff is asking the Court to declare unlawful, set aside, or restrain are

3    being carried out by Defendant United States Bureau of Reclamation ("Reclamation")

4    and its officers and agents pursuant to and in accordance with a Proposed Action and

5    Amended Proposed Action evaluated by the National Marine Fisheries Service

6    ("NMFS") and United States Fish and Wildlife Service ("FWS") (collectively the

7    "Services"), as well as Defendant Reclamation, in their:

8    (a)    Joint Biological Opinion on the Effects of the Proposed Klamath

9    Project Operations from May 31, 2013, through March 31, 2023, on Five Federally

10    Listed Threatened and Endangered Species ("2013 BiOp"),

11    (b)    FWS Biological Opinion on the Effects of Proposed Klamath Project

12    Operations from April 1, 2019, through March 31, 2024, on the Lost River Sucker and

13    the Shortnose Sucker ("2019 FWS BiOP"),

14    (c)    NMFS Biological Opinion, and Magnuson-Stevens Fishery

15    Conservation and Management Act Essential Fish Habitat Response for Klamath Project

16    Operations from April 1, 2019 through March 31, 2024 ("2019 NMFS BiOP"), and

17    (d)    Reclamation's Final Environmental Assessment Implementation of

18    Klamath Project Operating Procedures 2019-2024 and related Finding of No Significant

19    Impact ("OP").

20    3.    Defendants have caused or are imminently prepared to cause Plaintiff and

21    its landowners irreparable harm through the actions, inactions, decisions, findings, and

22    conclusions analyzed in the foregoing documents.

23    4.    The past, present, and future agency actions, inactions, findings, and

24    conclusions Plaintiff is asking the Court to declare unlawful, set aside, or restrain include,

25    but are not limited to, the following:

26    ///

Page 2 -    AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1    (a)    Defendants are unlawfully using 400,000 acre-feet (or more) of

2    water in Upper Klamath Lake ("UKL") reservoir for instream purposes each year without

3    a water right or other lawful authority under Oregon law in violation of Section 8 of the

4    Reclamation Act.

5    (b)    Defendants are unlawfully capping the amount of water that Plaintiff

6    and its landowners are entitled to receive from UKL reservoir at less than the amounts

7    they are entitled to beneficially use under their water rights in violation of Section 8 of

8    the Reclamation Act.

9    (c)    Defendants are unlawfully divesting Plaintiff and its landowners of

10    their vested water rights in the beneficial use of water in UKL reservoir, as elsewhere

11    alleged in this Amended Complaint, without purchasing such rights or condemning them

12    "under judicial process" in accordance with state law, in violation of Sections 7 and 8 of

13    the Reclamation Act.

14    (d)    Defendants are depriving Plaintiff and its landowners of their vested

15    water rights in the beneficial use of water in UKL reservoir without due process of law in

16    violation of the Fifth Amendment to the United States Constitution through the actions,

17    inactions, findings, and conclusions generally identified above and more specifically

18    alleged herein.

19                    **Jurisdiction, Venue, and Waiver of Sovereign Immunity**

20    5.    Jurisdiction arises under 5 U.S.C. §§ 701–706 and 28 U.S.C. §§ 1331,

21    2201, and 2202.

22    6.    The acts alleged herein occurred in the District of Oregon and venue is

23    therefore appropriate pursuant to 28 U.S.C. § 1391.

24    7.    Defendants' sovereign immunity is waived pursuant to 5 U.S.C. § 702

25    because Plaintiff is making claims for equitable relief, not money damages.

26    ///

Page 3 -    AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1          **Parties**

2          8.      Plaintiff Klamath Irrigation District ("KID" or "Plaintiff") is an irrigation

3   district duly constituted and existing pursuant to ORS Chapter 545.   KID and its

4   landowners hold vested water rights entitling them to beneficially use live flow and water

5   stored in UKL reservoir, for purposes of irrigation and other beneficial uses.   Under

6   Oregon law, all private property interests held by KID, including vested water rights, are

7   held in trust for the benefit of its landowners.   KID brings this action in a representative

8   capacity to protect the rights of its landowners as much as its own, as well as the rights of

9   water right holders outside its own boundaries to whom KID owes affirmative non-

10  discretionary water delivery obligations.

11         9.      Defendant United States Bureau of Reclamation (hereafter "Reclamation")

12  is a federal agency, or bureau, within the United States Department of the Interior.

13  Reclamation holds a water right entitling it to store water in UKL reservoir to benefit the

14  separate irrigation rights of KID, its landowners, and other water right holders within the

15  Klamath Reclamation Project.   Defendant does not have a water right, instream lease, or

16  any other legal authorization under state or federal law to use water stored in UKL

17  reservoir for instream purposes.

18         10.     Defendant David Bernhardt is the Acting Secretary of the United States

19  Department of the Interior.   In such capacity, Defendant Bernhardt is directly responsible

20  for administration of, and compliance with, federal reclamation law and other laws of the

21  United States, including those pertaining to the Klamath Reclamation Project.

22         11.     Defendant Brenda Burman is the Commissioner of the Defendant United

23  States Bureau of Reclamation.    In such capacity, Defendant Burman is directly

24  responsible for administration of, and compliance with, federal reclamation law and other

25  laws of the United States, including those pertaining to the Klamath Reclamation Project.

26  *///*

1    12.    Defendant Ernest Conant is the Director of the Defendant United States

2  Bureau of Reclamation Mid-Pacific Region Office.  In such capacity, Defendant Conant

3  is directly responsible for administration of, and compliance with, federal reclamation

4  law and other laws of the United States, including those pertaining to the Klamath

5  Reclamation Project.

6    13.    Defendant Jeffery Nettleton is the Area Manager for the Defendant United

7  States Bureau of Reclamation's Klamath Area Office.  In such capacity, Defendant

8  Nettleton is directly responsible for administration of, and compliance with, federal

9  reclamation law and other laws of the United States, including those pertaining to the

10  Klamath Reclamation Project.

11    **Allegations Common to All Claims**

12    14.    The United States Congress enacted the Reclamation Act in 1902 to

13  provide funding for irrigation projects in arid regions of the western United States.

14    15.    Pursuant to Sections 7 and 8 of the Reclamation Act, Defendants are

15  required to obtain water rights for Reclamation projects in accordance with state law,

16  through appropriation, purchase, or "condemnation under judicial process."

17    16.    Sections 7 and 8 of the Reclamation Act also require Defendants to comply

18  with state laws relating to the control, use, or distribution of water.

19    17.    Section 7 of the Reclamation Act, 43 U.S.C. § 421, states:

20    Where, in carrying out the provisions of this Act it becomes
        necessary to acquire any rights or property, the Secretary of the
21    Interior is authorized to acquire the same for the United States by
        purchase or condemnation under judicial process, and to pay
22    from the reclamation fund the sums which may be needed for
        that purpose, and it shall be the duty of the Attorney General of
23    the United States upon every application of the Secretary of the
        Interior, under such sections, to cause proceedings to be
24    commenced for condemnation within thirty days from receipt of
        the application at the Department of Justice.

25

26  ///

Page 5 -    AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

18.     Section 8 of the Reclamation, 43 U.S.C. § 383, provides in relevant part:

> Nothing in this Act shall be construed as affecting or intending to affect or to in any way interfere with the laws of any State or Territory relating to the control, appropriation, use, or distribution of water used in irrigation, or any vested right acquired thereunder, and the Secretary of the Interior, in carrying out the provisions of such sections, shall proceed in conformity with such laws, and nothing in such sections shall in any way affect any right of any State or of the Federal Government or of any landowner, appropriator, or user of water in, to or from any interstate stream or the waters thereof.

19.     In 1905, the Oregon Legislative Assembly sought to advance the purposes of the Reclamation Act and the development of a Reclamation project in the Klamath Basin, by enacting Chapter 5, Oregon Laws of 1905 and Chapter 228, Oregon Laws 1905.

20.     Through enactment of Chapter 5, Oregon Laws of 1905 the State of Oregon granted to the United States, for purposes of irrigation and reclamation, authorization to lower the water level of certain lakes, including Upper Klamath Lake, and to use all or any part of the beds of such lakes for the storage of water in connection with reclamation or irrigation.  By the same enactment, the State of Oregon ceded to the United States title to any land uncovered by the lowering of such lakes, to use for purposes in furtherance of the 1902 Act.

21.     Through enactment of Chapter 228, Oregon Laws 1905, the State of Oregon specifically described the manner in which water could be appropriated for Reclamation projects in Oregon.  Chapter 228, Oregon Laws 1905 provides in relevant part as follows:

> Whenever the proper officers of the United States, authorized by law to construct works for the utilization of water within this State, shall file in the office of the State Engineer a written notice that the United States intends to utilize certain specified waters, the waters described in such notice and unappropriated at the time of the filing thereof shall not be subject to further appropriation under the laws of this State, but shall be deemed to have been appropriated by the United States; *provided*, that

within a period of three years from the date of filing such notice the proper officer of the United States shall file final plans of the proposed works in the office of the State Engineer for his information; *and provided further*, that within four years from the date of such notice the United States shall authorize the construction of such proposed work.

22.     On May 17, 1905, Defendant Reclamation filed notices of appropriation pursuant to Chapter 228, Oregon Laws 1905 to appropriate all the then-unappropriated waters of the Klamath Basin for the Klamath Reclamation Project.  The notices stated that "[t]he United States intends to use the above described waters in the operation of works for the utilization of water in the State of Oregon under the provisions of . . . the Reclamation Act," and that "[t]he Water is to be used for irrigation, domestic, power, mechanical and other beneficial uses in and upon lands situated in Klamath Oregon and Modoc California counties."

23.     Following authorization of the Klamath Project, facilities were constructed, previously existing facilities were improved and incorporated into the Klamath Project, and individual landowners began applying water to beneficial use on their lands after entering into contracts with the United States to repay the costs of the irrigation works developed by the United States.

24.     The Klamath Project is the second oldest in the nation.  As such, it is unique from most other Reclamation projects in that it was only authorized as a single-purpose irrigation project to meet the nation's objective of developing the West. The Klamath Project and other so-called "single-use" projects authorized under the original Reclamation Act of 1902 are fundamentally different from so-called "multi-use" Reclamation projects that were authorized by Congress later in time under the Reclamation Act of 1939 and subsequent statutes, which are congressionally intended to provide water for multiple different uses.

25.     KID was formed in 1917 and thereafter entered into a contract with Reclamation in 1918 to repay the costs of construction, operation, and maintenance of the

1    Klamath Project.  The contract has since been amended several times, most notably in

2    1954.  By virtue of its contract with Defendant, KID has a perpetual obligation to operate

3    and maintain certain irrigation works owned by the United States and an affirmative non-

4    discretionary legal and contractual obligation to deliver water to fulfill the appurtenant

5    water rights of its own landowners.   KID also has a non-discretionary legal and

6    contractual obligation to deliver water needed to fulfill water rights held by certain

7    districts and landowners located outside KID's own boundaries.   KID's contract

8    specifically contemplates that ownership of the transferred works it currently operates

9    and maintains, as well as any water rights held by Reclamation that are associated with

10   KID, will be eventually be transferred to KID.

11       26.     Defendant has no discretion or authority to limit the amount of water KID

12   and its landowners are entitled to beneficially use under their water rights, to the extent

13   such water is physically available, without otherwise condemning or appropriating KID's

14   water rights and the rights of its landowners through judicial process in accordance with

15   Oregon law.

16       27.     Defendant has no discretion or authority to limit the amount of water that

17   other water right holders receiving water from KID are entitled to beneficially use under

18   their water rights to the extent such water is physically available, without otherwise

19   purchasing or condemning the water rights through judicial process in accordance with

20   Oregon law.

21       28.     On February 24, 1909, the Oregon Legislative Assembly enacted the Water

22   Rights Act, which means and embraces ORS 536.050, 537.120, 537.130, 537.140 to

23   537.252, 537.390 to 537.400, 538.420, 540.010 to 540.120, 540.210 to 540.230, 540.310

24   to 540.430, 540.505 to 540.585 and 540.710 to 540.750.

25       29.     Pursuant to ORS 537.110, all water within the state from all sources of

26   water supply belongs to the public.  However, subject to existing rights, individuals may

1    obtain the right to use the public's water by applying for and obtaining a water right.

2    Under Oregon law, the use of the public's water is a property right.  *See e.g.,* ORS

3    307.010(1)(b)(D)).  The property right is said to be usufructuary because, although a

4    water right grants the right to use the public's water, ownership of the water itself

5    remains vested in the public.  Oregon courts have recognized that the right to the use of

6    water constitutes a vested property interest which cannot be divested without due process

7    of law.

8        30.    Oregon law (ORS 539.007(11)) defines water rights established prior to the

9    adoption of the Water Rights Act on February 24, 1909 as undetermined vested rights.

10   The Water Rights Act provides at ORS 539.010(4) that undetermined vested rights are

11   not to be impaired or affected by any of its provisions.  However, ORS 539.010(4) of the

12   Water Rights Act also provides that the scope and attributes of all undetermined vested

13   rights are to be determined through an adjudication conducted in accordance with ORS

14   Chapter 539.

15       31.    The adjudication process set forth in ORS Chapter 539 consists of two

16   phases: (1) an administrative phase, and (2) a judicial phase.  During the administrative

17   phase, the adjudicator investigates the waters at issue, hears claims and exceptions, and

18   ultimately issues a Final Order of Determination setting forth the relative water rights of

19   the parties.  Once the Final Order of Determination is issued, it is filed with the circuit

20   court having jurisdiction of the matter.  The Final Order of Determination reflects

21   enforceable water rights under Oregon law, unless and until it is stayed pending the

22   outcome of the judicial phase or is amended or changed during the judicial phase of the

23   adjudication process.  The circuit court proceeding culminates in the issuance of a decree

24   finally determining the relative rights of all parties claiming a pre-1909 right to use the

25   waters at issue, subject to any appeal.

26       32.    In 1975, the State of Oregon initiated a general stream adjudication of the

Page 9 -    AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   waters of the Klamath Basin (hereafter "Klamath Adjudication").    The Klamath
2   Adjudication satisfies the requirements of the McCarran Amendment, 43 U.S.C. § 666,
3   and encompasses, *inter alia,* all pre-1909 state, federal, and tribal claims use water stored
4   in UKL reservoir.

5       33.    While the administrative phase of the adjudication of the waters of the
6   Klamath Basin was pending, and upon the written advice of the Oregon Attorney General
7   issued on March 18, 1996, the State of Oregon did not regulate or enforce pre-1909 water
8   rights in the Klamath Basin, as such rights were wholly undetermined and regulation
9   would necessarily involve pre-determination of the parties' claims.  However, based on a
10  U.S. Solicitor memorandum dated January 9, 1997, the United States took the position
11  that it had an obligation to "use its best efforts to operate the Project consistent with
12  existing water rights."  U.S. Reg. Solicitor Memo, Jan 9, 1997, Pg. 5.  While the United
13  States acknowledged that the precise nature of the existing rights relating to the Project
14  was not known with certainty because the rights had not been adjudicated, it nevertheless
15  believed these existing rights could be "reasonably estimated" and that the government
16  had a duty to ensure the Project was "operated based on the best available information."
17  *Id.* at 6.

18      34.    At all times material prior to the completion of the administrative phase of
19  the Klamath Adjudication, the United States asserted, and it was otherwise assumed, that
20  all water rights associated with the Klamath Project were owned or held by the United
21  States.  The United States also asserted, and it was otherwise assumed, that the Klamath
22  Tribes and others held water rights in UKL that were senior to those of KID and others
23  within the Klamath Project.  While the administrative phase of the Klamath Adjudication
24  was pending, the United States distributed water from UKL based on these assumptions.

25      35.    On March 7, 2013, thirty-eight (38) years after the commencing the general
26  stream adjudication for the Klamath Basin, the State of Oregon, via the Water Resources

Page 10 -  AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   Department ("OWRD"), issued its Findings of Fact and Final Order of Determination

2   ("FFOD") and filed it with the Klamath County Circuit Court, thus completing the

3   administrative phase of the adjudication.

4       36.    In May 2013, the Services issued the 2013 BiOp, which analyzed

5   modifications to the Bureau's operation of the Klamath Project, including the use of

6   Project water for augmented instream flows (the "Proposed Action").  At or shortly after

7   the issuance of the 2013 BiOp, Reclamation adopted the Proposed Action.  Thus, the

8   Proposed Action described in the 2013 BiOp was formally adopted by Reclamation after

9   the OWRD issued its FFOD.

10      37.    Neither the 2013 BiOp nor the Proposed Action accounted for the effects of

11  the FFOD issued in the Klamath Adjudication on March 7, 2013, despite the fact that it

12  provided for modification once the effects were known:

13              The potential effects of the Findings of Fact and Order of
                Determination on management of water in the Klamath Basin,
14              including Reclamation's Project operations, are uncertain at
                present and will likely remain uncertain for several years.
15              Therefore, the proposed action is not modified based on the
                Findings of Fact and Order of Determination.  *In the future,*
16              *when the consequences of the adjudication are understood, the*
                *proposed action will be modified if necessary in accordance*
17              *with parties' legal rights to beneficial use of water*. [emphasis
                added]
18

19      38.    In February 2014, OWRD filed an Amended and Corrected Findings of

20  Fact and Final Order of Determination ("ACFFOD") with the Klamath County Circuit

21  Court.

22      39.    Pursuant to ORS 539.130(4) and ORS 539.170, the ACFFOD is in full

23  force and effect, and water is to be distributed in accordance with the ACFFOD unless or

24  until the ACFFOD is stayed either wholly or in part pursuant to ORS 539.180.

25      40.    Following the issuance of the FFOD and the ACFFOD, the legal rights of

26  the parties to this action were known and enforceable under Oregon law.

41.    Reclamation has not sought to stay the ACCFOD either wholly or in part, and the ACCFOD has not otherwise been stayed by any other party pursuant to ORS 539.180.

42.    The issuance of the FFOD / ACFFOD fundamentally changed the legal paradigm governing the distribution of water in the Klamath Basin.  Specifically:

(a)    The ACFFOD is presently enforceable under Oregon law, and must be followed by all owners of determined claims pending the judicial review phase of the Klamath Basin Adjudication before the Klamath County Circuit Court.  ORS 539.130; ORS 539.170.

(b)    Defendant Reclamation is the owner of a right to store water— specifically, a maximum annual volume of 486,828 acre-feet of water in UKL reservoir to benefit the separate water rights held by KID and other water right holders. KBA_ACFFOD_07060, 07084, 07117.

(c)    Defendant Reclamation is only entitled to store water in UKL reservoir to satisfy the water rights of KID, its landowners and other secondary water right holders.  KBA_ACFFOD_7061, 07075.

(d)    KID, its landowners, and other districts and landowners within the Klamath Project hold water rights entitling them to use live flow and water the United States stores in UKL reservoir for the purposes of irrigation and other beneficial uses. *See*, *e.g.,* KBA_ACFFOD_07075, 07084, 07086, 07160, 07061.

(e)    Defendant Reclamation does not hold an instream water right entitling it to use water from UKL reservoir for instream purposes.

(f)    The Klamath Tribes hold a water right entitling them to certain elevations of water in UKL at certain times of the year, but this right cannot be used to call the water rights of Klamath Project irrigators.  KBA_ACFFOD_04941.

(g)    Neither the Hoopa nor the Yurok tribe have vested but undetermined

Page 12 -  AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   water rights in UKL.

2          (h)     Now that the ACFFOD has been issued, Oregon law (e.g., ORS

3   537.130, ORS 540.270) prohibits the use of water from the waters within the scope of the

4   Klamath Basin Adjudication without a water right (e.g., water right, determined claim,

5   instream lease).

6          43.     Despite the issuance of the FFOD, and the subsequent issuance of the

7   ACFFOD, Defendant Reclamation nevertheless formally adopted the Proposed Action

8   described in the 2013 BiOp and continued to manage the Klamath Project in accordance

9   with the 2013 BiOp without regard to the enforceable determinations made in the

10  Klamath Adjudication through March 29, 2019.  In doing so, Defendant Reclamation

11  unlawfully used water in UKL reservoir for instream purposes without a water right.

12  Defendants did this notwithstanding the fact that KID, its landowners, and others hold

13  water rights legally entitling them to beneficial use of such water and KID and its

14  landowners could have entered into instream leases or other economic arrangements with

15  Defendant Reclamation that would have enabled Defendants to lawfully use water

16  instream.  Defendant also limited the amount of water KID, its landowners, and other

17  water right holders were entitled to beneficially use under their water rights even though

18  Defendants did not have any lawful authority to restrict the beneficial use of water and

19  Defendant had neither purchased nor condemned their rights "under judicial process" in

20  accordance with Sections 7 and 8 of the Reclamation Act.

21         44.     On December 21, 2018, Reclamation issued a Biological Assessment as

22  part of a consultation process under the Endangered Species Act.  Reclamation amended

23  its proposed action on February 15, 2019 ("Amended Proposed Action").  Subsequently,

24  on or about March 29, 2019, Reclamation adopted the 2019 FWS BiOp, 2019 NMFS

25  BiOp, and 2019 OP analyzing the Amended Proposed Action.  Under the Amended

26  Proposed Action that Defendant has adopted and is now implementing, Defendant has

1   decided to:

2         (a)    Continue using water in UKL reservoir for instream purposes

3   without a water right in violation of Section 8 of the Reclamation Act to a greater extent

4   than under the Proposed Action evaluated under the 2013 BiOp.  *See e.g.,* 2019 FWS

5   BiOp, Pg. 22, *et seq.*

6         (b)    Continue limiting the amount of water that KID is able to deliver to

7   itself, its landowners, and other water right holders to an amount that is less than their

8   water rights to an even greater extent than the Proposed Action evaluated under the 2013

9   BiOp. *See*, *e.g.*, 2109 FWS BiOp, Pg. 24.

10        (c)    Continue depriving KID and its landowners of their vested water

11   rights as described in (a) and (b) above, without purchasing the vested rights or

12   condemning the vested rights under judicial process in accordance with Oregon law, in

13   violation of Sections 7 and 8 of the Reclamation Act.

14        (d)    Continue denying KID and its landowners the due process to which

15   they are entitled under the Fifth Amendment of the United States Constitution before

16   depriving KID and its landowners of their vested water rights as described above.

17      45.    Defendants do not intend to cure their unlawful actions alleged herein and

18   their unlawful actions will continue if not restrained.

19      46.    Defendants' unlawful actions are causing KID irreparable harm and the

20   balance of the equities tips sharply in KID's favor.  It is possible for Defendants to

21   comply with the applicable law *and* use water in the manner they are using water today.

22   Defendants, however, are simply choosing to disregard the law.  Defendants' refusal to

23   comply with the law is depriving KID, its landowners, and other water right holders of

24   water they are legally entitled to beneficially use without due process of law causing

25   significant financial, emotional, and socioeconomic harm to KID, its landowners, other

26   water right holders to whom KID owes water delivery obligations.

**FIRST CLAIM FOR RELIEF**

**(Violation of the APA – Section 8 of Reclamation Act)**

47.    KID reasserts and realleges ¶¶ 1 to 46, as though fully set forth herein.

48.    A district court may hold unlawful and set aside any agency action that is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; "contrary to constitutional right, power, privilege, or immunity," or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C. § 706(2)(A)–(C).

49.    Defendants' actions, inactions, findings, and conclusions in adopting and implementing the Amended Proposed Action evaluated in the 2019 FWS BiOp, 2019 NMFS BiOp, and 2019 OP violate Section 8 of the Reclamation Act, which requires Reclamation to comply with state law in the control, appropriation, use, or distribution of water and prohibits Reclamation from interfering with vested rights established under state law.

50.    Defendants' actions, inactions, findings, and conclusions in adopting and implementing the Amended Proposed Action and thereby using water stored in UKL reservoir for its own instream use without a water right or other authority under the laws of the State of Oregon, in violation of Section 8 of the Reclamation Act, is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, contrary to constitutional right, power, privilege, or immunity, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

51.    Defendants' actions, inactions, findings, and conclusions in adopting and implementing the Amended Proposed Action described in the 2019 FWS BiOp, 2019 NMFS BiOp, and 2019 OP, and unlawfully capping the amount of water that KID, its landowners, and others are entitled beneficially use under their vested water rights, violates Section 8 of the Reclamation Act and is arbitrary, capricious, an abuse of

1   discretion, or otherwise not in accordance with law, contrary to constitutional right,
2   power, privilege, or immunity, or in excess of statutory jurisdiction, authority, or
3   limitations, or short of statutory right.

4       52.    Defendants' actions, inactions, findings, and conclusions in adopting and
5   implementing the Amended Proposed Action analyzed in the 2019 FWS BiOp, 2019
6   NMFS BiOp, and 2019 OP and thereby divesting KID and its landowners of the
7   beneficial use of water under their water rights deprives KID of due process of law
8   required by the Fifth Amendment to the United States Constitution, and is arbitrary,
9   capricious, an abuse of discretion, or otherwise not in accordance with law, contrary to
10  constitutional right, power, privilege, or immunity, or in excess of statutory jurisdiction,
11  authority, or limitations, or short of statutory right.

12      53.    Defendants' conduct as alleged herein is in excess of the authority granted
13  to Defendants under Section 8 of the Reclamation Act and Defendants' contracts with
14  KID.   Accordingly, Reclamation's actions in adopting and implementing the Amended
15  Proposed Action must be held unlawful and set aside.

16              **SECOND CLAIM FOR RELIEF**

17          **(Violation of the APA – Section 7 of Reclamation Act)**

18      54.    KID reasserts and realleges ¶¶ 1 to 53, as though fully set forth herein.

19      55.    A district court may hold unlawful and set aside any agency action that is
20  found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance
21  with law"; "contrary to constitutional right, power, privilege, or immunity," or "in excess
22  of statutory jurisdiction, authority, or limitations, or short of statutory right."   5 U.S.C.
23  § 706(2)(A)–(C).

24      56.    Section 7 of the Reclamation Act requires Reclamation to acquire property
25  rights, such as the right to use water under Oregon law, through Oregon's appropriation
26  process or "by purchase or condemnation under judicial process," using the procedure set

1    out by Oregon law.  *See* 43 U.S.C. § 421.

2    57.    Reclamation's actions, inactions, findings, and conclusions in adopting and
3    implementing the Amended Proposed Action described in the 2019 FWS BiOp, 2019
4    NMFS BiOp, and 2019 OP, and thereby divesting KID and its landowners of their vested
5    water rights without purchasing or condemning such rights "under judicial process" in
6    accordance with state law, violates Section 7 of the Reclamation Act.

7    58.    Defendants' actions in violation of Section 7 of the Reclamation Act as
8    alleged herein must be held unlawful and set aside.

9                          **THIRD CLAIM FOR RELIEF**

10              **(Violation of the APA – Arbitrary and Capricious Baseline)**

11    59.    KID reasserts and realleges ¶¶ 1 to 58, as though fully set forth herein.

12    60.    A district court may hold unlawful and set aside any agency action that is
13    found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance
14    with law"; "contrary to constitutional right, power, privilege, or immunity," or "in excess
15    of statutory jurisdiction, authority, or limitations, or short of statutory right."  5 U.S.C.
16    § 706(2)(A)–(C).

17    61.    The 2013 BiOp, which was not issued until May 31, 2013, acknowledged
18    that the FFOD was issued on March 7, 2013, yet also concluded that the "potential
19    effects" of the FFOD were "uncertain" and therefore the proposed action was "not
20    modified based on the Findings of Fact and Order of Determination." (2013 BiOp at 3–
21    4.)

22    62.    The FFOD—and now the ACFFOD—defined the scope and attributes of
23    enforceable water rights under Oregon law with priority dates of 1905.  The effects of
24    these water rights were known both at the time Defendant Reclamation received the 2013
25    BiOP during the subsequent period of time Defendants have implemented the Proposed
26    Action described in the 2013 BiOp.  Despite this, Defendants continued to implement the

1  Proposed Action through May 29, 2019 instead of modifying the Proposed Action to
2  conform to the ACFFOD.    Thereafter, Defendants adopted and implemented the
3  Amended Proposed Action described in the 2019 FWS BiOp, 2019 NMFS BiOp, and
4  2019 OP without proper consideration of the ACFFOD.

5      63.    The decision not to develop an Amended Proposed Action that complies
6  with the ACFFOD was arbitrary and capricious.  Because this action violates the APA, it
7  must be held unlawful and set aside.

**FOURTH CLAIM FOR RELIEF**

**(Declaratory Judgment)**

10      64.    KID reasserts and realleges ¶¶ 1 to 63, as though fully set forth herein.

11      65.    Under the Declaratory Judgment Act, "any court of the United States, upon
12  the filing of an appropriate pleading, may declare the rights and other legal relations of
13  any interested party seeking such declaration, whether or not further relief is or could be
14  sought." 28 U.S.C. § 2201.

15      66.    Pursuant to 28 U.S.C. § 2202, a court granting a declaratory judgment may
16  grant further necessary or proper relief, including injunctive relief.

**COUNT 1**

**Violation of Section 8 of Reclamation Act**

**(Unlawfully using water)**

20      67.    Pursuant to 28 U.S.C. § 2201, KID is entitled to a declaration that
21  Defendant is violating Section 8 of the Federal Reclamation Act by unlawfully using
22  water in UKL reservoir for instream purposes during KID's irrigation season without a
23  water right or other authority under state or federal law and thereby interfering with the
24  vested water rights of KID, its landowners, and other water right holders to whom KID is
25  legally obligated to deliver water.

26      68.    Pursuant to 28 U.S.C. § 2202, KID is entitled to further injunctive relief

1  enjoining Defendants from using water stored in UKL reservoir for instream purposes
2  during KID's irrigation season. KID asks that the restraints of the injunction not go into
3  effect until April 1, 2020 so as to afford Defendants a reasonable period of time to secure
4  the right to use water from UKL reservoir for instream purposes in accordance with
5  Oregon law, as required by Section 8 of the Federal Reclamation Act, without causing
6  any harm to endangered or protected species during the period in which Defendants are
7  bringing themselves into legal compliance.

8  **COUNT 2**

9  **Violation of Section 8 of the Reclamation Act**

10  **(Unlawfully curtailing water)**

11  69.    KID is entitled to a declaratory judgment is violating Section 8 of the
12  Reclamation Act by unlawfully capping the amount of water KID, its landowners, and
13  other water right holders are able to beneficially use under their water rights.

14  70.    Pursuant to 28 U.S.C. § 2202, KID is entitled to further injunctive relief
15  enjoining Defendants from limiting the amount of water that KID, its landowners, and
16  other water right holders who receive water delivery from KID are able to beneficially
17  use under their water rights. KID asks that the restraints of the injunction not go into
18  effect until April 1, 2020 so as to afford Defendants a reasonable period to secure the
19  right to use water from UKL reservoir for instream purposes in accordance with Oregon
20  law, as required by Section 8 of the Federal Reclamation Act, without causing any harm
21  to endangered or protected species during the period in which Defendants are bringing
22  themselves into legal compliance.

23  **COUNT 3**

24  **Violation of Section 7 and 8 of Reclamation Act**

25  **(Condemnation without judicial process)**

26  71.    Pursuant to 28 U.S.C. § 2201, KID is entitled to a declaratory judgment

1  stating that Defendants may not divest KID and its landowners of their property interest

2  in the beneficial use of water under their water rights as alleged herein without first

3  purchasing or condemning "under judicial process" those same rights, pursuant to

4  Sections 7 and 8 of the Reclamation Act.

5  72.    Pursuant to 28 U.S.C. § 2202, KID is entitled to further injunctive relief

6  enjoining Defendants from divesting KID and its landowners of their property interest in

7  the beneficial use of water under their water rights as alleged herein without first

8  purchasing or condemning "under judicial process" those same rights, pursuant to

9  Sections 7 and 8 of the Reclamation Act.  KID asks that the restraints of the injunction

10  not go into effect until April 1, 2020 so as to afford Defendants a reasonable period to

11  secure the right to use water from UKL reservoir for instream purposes in accordance

12  with Oregon law, as required by Section 8 of the Federal Reclamation Act, without

13  causing any harm to endangered or protected species during the period in which

14  Defendants are bringing themselves into legal compliance.

15  **COUNT 4**

16  **Violation of the Fifth Amendment**

17  **(Right to Procedural Due Process)**

18  73.    KID reasserts and realleges ¶¶ 1 to 72, as though fully set forth herein.

19  74.    The due process clauses of the Fifth Amendment to the United States

20  Constitution prohibits deprivations of liberty and property interests without due process

21  of law.

22  75.    Due process requires, at a minimum, notice and opportunity for meaningful

23  hearing appropriate to the nature of the case.

24  76.    Section 7 of the Reclamation Act imposes procedural requirements on

25  Reclamation prior to its use or appropriation of water rights, by requiring that the rights

26  be purchased or condemned through judicial process.  Reclamation has not sought to

Page 20 -  AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1   either purchase or condemn through judicial process the water rights of KID, its

2   landowners, and other water right holders to whom KID is legally obligated to deliver

3   water.

4         77.    Pursuant to 28 U.S.C. § 2201, KID is entitled to a declaratory judgment

5   stating that Defendants' have violated KID's procedural due process rights protected by

6   the Fifth Amendment to the United States Constitution by divesting KID and its

7   landowners of their vested water rights without purchasing or condemning "under

8   judicial process" those same rights, pursuant to Sections 7 and 8 of the Reclamation Act.

9         78.    Pursuant to 28 U.S.C. § 2202, KID is entitled to an injunction restraining

10  Defendants from divesting KID and its landowners of their property interests in the

11  beneficial use of water under their water rights as alleged herein without first purchasing

12  or condemning "under judicial process" those same rights, pursuant to Sections 7 and 8

13  of the Reclamation Act, and thereby affording KID and its landowners the due process

14  they are entitled to under the Fifth Amendment to the United States Constitution.  KID

15  asks that the restraints of the injunction not go into effect until April 1, 2020 so as to

16  afford Defendants a reasonable period to secure the right to use water from UKL

17  reservoir for instream purposes in accordance with Oregon law, as required by Section 8

18  of the Federal Reclamation Act, without causing any harm to endangered or protected

19  species during the period in which Defendants are bringing themselves into legal

20  compliance.

21        79.    Declaratory relief is appropriate in this case both because an actual injury

22  has occurred under Defendants' adoption and implementation of the Proposed Action.  In

23  addition, the Amended Proposed Action reflected in the 2019 FWS BiOp, 2019 NMFS

24  BiOp, and 2019 OP Defendants have adopt and are implementing will continue to cause

25  injury to KID and its landowners that is substantively identical, in all material respects, to

26  the injury that has been caused to KID under the adoption and implementation of the

1    Proposed Action analyzed in the prior 2013 BiOP. Therefore, KID and Reclamation have

2    adverse legal interests and there is a substantial controversy between them of sufficient

3    immediacy and reality to warrant the issuance of declaratory judgment and further

4    injunctive relief.

5                              **PRAYER FOR RELIEF**

6         WHEREFORE, KID prays for judgment and an order against each Defendant:

7              1.    Setting aside the unlawful actions of the Defendants under the APA;

8              2.    For declaratory relief setting forth the rights of the parties' rights

9    under the Reclamation Act and the Fifth Amendment to the United States Constitution;

10             3.    For injunctive relief enjoining Defendants from violating the APA

11   and the Reclamation Act and the Fifth Amendment to the United States Constitution, and

12   from using water and otherwise interfering with or divesting KID and its landowners of

13   their water rights in a manner not permitted under the law;

14             4.    For attorneys' fees, costs, and interest, as authorized by law; and

15             5.    Any other relief the Court deems just and proper.

16   DATED:    April 5, 2019

17                         Respectfully submitted by,

18                         RIETMANN LAW P.C

19

20                   By:    *s/ Nathan R. Rietmann*
                            Nathan R. Rietmann, OSB #053630
21                          1270 Chemeketa St. NE
                            Salem, Oregon 97301
22                          503-551-2740
                            nathan@rietmannlaw.com
23                          Of Attorneys for Plaintiff

24

25

26

Page 22 -  AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF