SOMACH SIMMONS & DUNN, PC
A Professional Corporation
PAUL S. SIMMONS, ESQ. (OSB #971386)
RICHARD S. DEITCHMAN, ESQ. (OSB #154839)
500 Capitol Mall, Suite 1000
Sacramento, CA 95814
Telephone: (916) 446-7979
Facsimile: (916) 446-8199
psimmons@somachlaw.com
rdeitchman@somachlaw.com

Attorneys for Plaintiffs SHASTA VIEW IRRIGATION DISTRICT,
TULELAKE IRRIGATION DISTRICT, KLAMATH WATER
USERS ASSOCIATION, BEN DUVAL, and ROB UNRUH

[*See additional counsel on next page*]

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### Medford Division

| | |
|---|---|
| KLAMATH IRRIGATION DISTRICT,<br><br>                          Plaintiff,<br><br>    v.<br><br>UNITED STATES BUREAU OF<br>RECLAMATION; et al.,<br><br>                          Defendants. | Consolidated Cases<br>Case No. 1:19-cv-00451-CL (lead)<br>Case No. **1:19-cv-00531-CL**<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND PRELIMINARY INJUNCTION** |
| SHASTA VIEW IRRIGATION DISTRICT, KLAMATH DRAINAGE DISTRICT, VAN BRIMMER DITCH COMPANY, TULELAKE IRRIGATION DISTRICT, KLAMATH WATER USERS ASSOCIATION, BEN DUVAL, and ROB UNRUH,<br><br>                          Plaintiffs,<br><br>    v.<br><br>UNITED STATES BUREAU OF RECLAMATION; ERNEST CONANT, in his official capacity as the Regional Director of the Mid-Pacific Region of the United States Bureau of Reclamation; JEFFREY NETTLETON, in his official capacity as the Area Manager of the Klamath Basin Area Office of the United States Bureau of Reclamation,<br><br>                          Defendants. | |

PARKS & RATLIFF, P.C.
NATHAN J. RATLIFF, ESQ. (OSB #034269)
620 Main Street
Klamath Falls, OR 97601
Telephone: (541) 882-6331
Facsimile: (541) 883-1501
Email: nathan@parksandratliff.com

Attorneys for Plaintiff VAN BRIMMER DITCH COMPANY


CLYDE SNOW & SESSIONS, P.C.
REAGAN L.B. DESMOND, ESQ. (OSB #045129)
1018 SW Emkay Drive
Bend, OR 97702
Telephone: (801) 322-2516
Facsimile: (801) 521-6280
Email: rlbd@clydesnow.com

Attorneys for Plaintiff KLAMATH DRAINAGE DISTRICT

Plaintiffs SHASTA VIEW IRRIGATION DISTRICT, KLAMATH DRAINAGE DISTRICT, VAN BRIMMER DITCH COMPANY, TULELAKE IRRIGATION DISTRICT, KLAMATH WATER USERS ASSOCIATION, BEN DUVAL, and ROB UNRUH (collectively, "Plaintiffs") allege as follows:

## JURISDICTION, SOVEREIGN IMMUNITY, AND VENUE

1.      This action involves claims that federal officers or agencies have acted, are acting, or will act unlawfully in matters related to the Klamath Project (Project), a federal reclamation project.  By their adoption and implementation of the Final Environmental Assessment for the Implementation of Klamath Project Operating Procedures, 2019-2024, Oregon and California 2019-EA-007; Finding of No Significant Impact (FONSI), 2019-FONSI-007; and adoption and implementation of the Implementation of Klamath Project Operating Procedures, 2019-2024, Oregon and California 2019-EA-007 (cumulatively referred to as "Action"), Defendants UNITED STATES BUREAU OF RECLAMATION, ERNEST CONANT, and JEFFREY NETTLETON (collectively, "Defendants") have acted arbitrarily and capriciously, abused their discretion, and acted in excess of statutory jurisdiction, authority, or limitation.  Plaintiffs' claims are based on, or involve interpretation of, reclamation law including section 8 of the Reclamation Act of 1902, ch. 1093, 32 Stat. 388 *et seq.* (codified at 43 U.S.C. §§ 372, 383) (1902 Act), the Endangered Species Act, 16 U.S.C. § 1531 *et seq.* (ESA), the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* (APA), and other applicable law.  Plaintiffs seek declaratory and injunctive relief and other relief not including money damages.  The United States has waived immunity to suit pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 1346(a)(2).

2.      This Court has jurisdiction over the claims against the United States and federal agencies or officers, pursuant to 5 U.S.C. §§ 701-706 and 28 U.S.C. §§ 1331, 2201-2202.

3.      This is an action where officers of the United States and agencies of the United States are Defendants, a substantial portion of events that give rise to this claim occurred or will occur in this judicial district, and a substantial part of the property that is the subject of this action is located in this judicial district.  Venue properly lies within the District of Oregon, Medford Division, pursuant to 28 U.S.C. § 1391.

4.      By seeking declaratory and injunctive relief herein, Plaintiffs do not waive any rights to seek damages in the Court of Federal Claims against the United States for any conduct of the Defendants.

## PARTIES

5.      Plaintiff Shasta View Irrigation District (SVID) is an irrigation district formed and existing pursuant to Or. Rev. Stat. chapter 545.  Or. Rev. Stat. § 545 *et seq.*  SVID is located in Klamath County, Oregon.  SVID diverts water from the D Canal, a Project facility operated by Klamath Irrigation District (KID), and delivers water for beneficial irrigation use on approximately 5,760 acres.  Such water is delivered to lands within SVID and to certain lands within Klamath Basin Improvement District pursuant to state law and various contracts.  Under Oregon law, SVID was established by and represents all landowners within its boundaries. SVID brings this action on its own behalf and as a representative of all water users who are entitled to receive specific quantities of irrigation water through SVID's facilities.

6.      Plaintiff Klamath Drainage District (KDD) is a drainage district formed and existing pursuant to Or. Rev. Stat. chapter 547.  KDD diverts and delivers water for beneficial irrigation use on approximately 27,500 acres through facilities of the Project and facilities owned and constructed by KDD, and also provides related drainage services to such land.  Water is diverted and delivered to lands within KDD, including public land within KDD pursuant to state

law and contracts between KDD and the United States.  Under Oregon law, KDD was
established by and represents all landowners within its boundaries.  KDD brings this action on its
own behalf and as a representative of water users who are entitled to receive irrigation water
through Project facilities and facilities owned and/or operated by KDD.

       7.      Plaintiff Van Brimmer Ditch Company (Van Brimmer) is a ditch company
formed and existing under Or. Rev. Stat. chapter 554, and organized for the purpose to use those
waters that Van Brimmer's predecessor, the Van Brimmer Brothers, appropriated in 1883,
22 years before the authorization of the Project.  The point of diversion for water delivered to
Van Brimmer is A Canal and water is delivered to Van Brimmer through the C Canal.  Under
Oregon law, Van Brimmer was established by and represents all irrigators within its boundaries,
delivering water to approximately 4,589.3 acres.  Van Brimmer brings this action on its own
behalf and as a representative of all water users who are entitled to receive irrigation water
through its facilities.

       8.      Plaintiff Tulelake Irrigation District (TID) is a California irrigation district formed
and existing pursuant to California Water Code section 20500 *et seq*.  TID is located in Modoc
County and Siskiyou County, California.  TID diverts and delivers water through facilities of the
Project for beneficial irrigation use on approximately 65,000 acres.  Such water is delivered to
lands within TID, including individuals farming public land within TID, and elsewhere pursuant
to state law and contracts between TID and the United States Bureau of Reclamation
(Reclamation) and between Reclamation and other parties.  Under California law, TID was
established by and represents all landowners and water users within its boundaries.  TID's
objectives and purpose include acquiring and maintaining an assured water supply for irrigated
land in TID.  TID's objectives and purpose also include the protection of irrigation and

agriculture-related resources in TID, and any actions that adversely affect such resources will injure TID and its water users and customers.  TID brings this action on its own behalf and as a representative of all landowners and water users within TID who are entitled to receive irrigation water through Project facilities and facilities operated by TID and KID.

9.      Plaintiffs SVID, KDD, Van Brimmer, and TID are hereafter referred to collectively as "Districts."

10.     Plaintiff Ben DuVal is a farmer and owner of land served by facilities of the Project and TID.  Mr. DuVal owns and farms 320 acres of land in TID, including property that was homesteaded by his grandfather.  Mr. DuVal grows hay, and farming is the means by which he supports his family.  In addition, he owns and operates a custom hay service business that supports family farming operations throughout the Project.

11.     Plaintiff Rob Unruh is a farmer and owner of land served in part by facilities of the Project and in part by facilities of SVID.  Mr. Unruh grows potatoes, wheat, hay, and seed grains on approximately 650 acres of land located in SVID, as well as in other districts in the Project.

12.     Plaintiffs DuVal and Unruh support their families through irrigated agriculture in the Project service area.  Each also desires to continue to farm successfully and to continue to live in their communities.  Each derives personal enjoyment and satisfaction from living and working in their rural communities.  Further, each derives aesthetic, recreational, and other enjoyment from the abundant wildlife resources that make use of irrigated farmland and water delivery systems in the Project area, as well as from the wildlife resources associated with the nearby Lower Klamath and Tule Lake National Wildlife Refuges (NWRs).

13.     Plaintiffs SVID, KDD, Van Brimmer, TID, DuVal, and Unruh are hereinafter referred to collectively as "Water Users."

14.     Plaintiff Klamath Basin Water Users Protective Association does business as the Klamath Water Users Association (Association).  The Association is a non-profit corporation organized under the laws of the State of Oregon.  A major purpose of the Association is to protect the common interests of its members in the use of water for irrigation.  Members of the Association include irrigation and drainage districts and individuals who obtain, deliver, and receive water through facilities constructed by Reclamation, or constructed by the Association members, or both.

15.     Most Association members are contractors of Reclamation and distribute water for irrigation through Project facilities.  In addition, some private individuals and businesses or other organizations are members of the Association or participate in its activities.

16.     The Association provides information and representation for its members on matters in which they have common interests, and to persons in the Klamath Basin generally. The Association also makes information available to the public by participation in public or civic functions.  The Association provides representation and information to its members regarding matters that affect the availability of water for use on lands within the Project.  Actions or events that adversely affect the availability of water supplies of any type will injure the interests of Association members.  The Association, on behalf of its members, promotes and provides information and leadership on issues regarding land stewardship and resource management.  This includes, for example, protection of the continued viability of land for farming purposes and the preservation of soils.  The Association promotes and advocates the interests of its members in the

continued viability of rural communities.  Actions or events that adversely affect these resources will also injure the interests of Association members.

17.    Defendant United States Bureau of Reclamation (Reclamation) is a federal agency within the United States Department of the Interior.  Reclamation is charged with various duties and responsibilities including operating certain facilities of the Project, and compliance with state water law, on behalf of the United States of America.

18.    Defendant Ernest Conant is the Regional Director for Defendant United States Bureau of Reclamation's Mid-Pacific Region Office.  In such capacity, Defendant Conant is directly responsible for the administration of, and compliance with, federal reclamation laws, laws pertaining to fish and wildlife, and other federal laws in connection with the operation of the Project.

19.    Defendant Jeffrey Nettleton is the Area Manager for the Klamath Basin Area Office of the Bureau of Reclamation, a bureau of the United States Department of the Interior. Defendant Nettleton is responsible for administration of, and compliance with, federal reclamation law, laws pertaining to fish and wildlife, and other federal laws in connection with the operation of the Project.  Defendant Nettleton approved and is implementing the Action.

## GENERAL ALLEGATIONS

20.    Beginning in the nineteenth century, private individuals, firms, and districts began to develop systems and works for the diversion and beneficial use of water for irrigation within the geographic area that is currently served by the Project and related facilities.  Appropriations were made and initiated, and water rights were perfected for substantial acreage prior to the authorization of the Project.

21.     In 1902, Congress enacted the 1902 Act.  In the 1902 Act, the United States sought to promote the settlement of western states and the production of food to feed the nation. The 1902 Act provided authority for the construction by the Reclamation Service of irrigation systems for the purpose of storing and distributing water for irrigation of arid lands. Reclamation is the successor to the Reclamation Service.  The 1902 Act provided for the repayment of costs of construction of irrigation project works by irrigators using these systems, in exchange for which the irrigators obtained a water use right wholly distinct from any ownership of Reclamation or the United States in Project works.

22.     Section 8 of the 1902 Act provides that, "the right to use water acquired under the provisions of this Act shall be appurtenant to the land irrigated, and beneficial use shall be the basis, the measure, *and the limit* of the right."  43 U.S.C. § 372, 32 Stat. 390 (emphasis added). Similarly, under the laws of Oregon and California, water rights which provide water for irrigated land are appurtenant to the land irrigated.

23.     In and by chapter 5, Oregon Laws of 1905 (Chapter 5), the State of Oregon granted to the United States, for purposes of irrigation and reclamation, authorization to lower the water level of certain lakes including Upper Klamath Lake, and to use all or any part of the beds of such lakes for the storage of water in connection with reclamation or irrigation.  By the same enactment, the State of Oregon ceded to the United States title to any land uncovered by the lowering of such lakes, to use for purposes in furtherance of the 1902 Act.

24.     In and by the Act of February 3, 1905 (1905 Cal. Stat. at 4), the State of California authorized the United States to lower the level of certain lakes in California, and ceded to the United States title to lands uncovered by such lowering, for use and disposal in pursuance of the purposes of the 1902 Act.

25.     In and by the act of February 9, 1905, the United States Congress enacted parallel legislation authorizing the raising or lowering of lakes and disposition of ceded landed under the 1902 Act.  The Act provided:

> The Secretary of the Interior is hereby authorized in carrying out any irrigation project that may be undertaken by him under the terms and conditions of the national reclamation Act and which may involve the changing of the levels of Lower or Little Klamath Lake, Tule or Rhett Lake, and Goose Lake, or any river or other body of water connected therewith, in the States of Oregon and California, to raise or lower the level of said lakes as may be necessary and to dispose of any lands which may come into the possession of the United States as a result thereof by cession of any State or otherwise under the terms and conditions of the national reclamation Act.

Act of February 9, 1905, 58 Pub. L. 66, 33 Stat. 714, codified at 43 U.S.C. § 601.

26.     In and by chapter 228, Oregon Laws 1905 (Chapter 228), the State of Oregon enacted a statute providing, in part, the following:

> Whenever the proper officers of the United States, authorized by law to construct works for the utilization of water within this State, shall file in the office of the state engineer a written notice that the United States intends to utilize certain specified waters, the water described in such notice and unappropriated at the date of filing thereof shall not be subject to further appropriation under the laws of this State, but shall be deemed to have been appropriated by the United States.

27.     Pursuant to Chapter 228, on May 19, 1905, the Reclamation Service filed in the Office of the State Engineer a notice appropriating all of the then unappropriated waters of the Klamath watershed in Oregon, including Upper Klamath Lake and the Klamath River and all their tributaries.  Thereafter, the Reclamation Service, within three years from the date of such notice of appropriation, filed plans for the construction of a U.S. Reclamation Project in Oregon and California, and within four years from the date of such notice, filed authorization to construct said project.

28.     Pursuant to Chapter 5, Chapter 228, the California Act of February 3, 1905, the 1902 Act, and other state and federal laws, the United States, Plaintiffs, and their predecessors

proceeded with diligence in the reclamation of lands, the construction of facilities to deliver water to arid lands, and the irrigation of lands.  Of this, a portion was made available for entry pursuant to the homestead laws.

29.    Commencing in or about 1905 and for several years thereafter, Reclamation solicited and executed water contracts with individual landowners in the Project.  Such contracts provided for the repayment by the individuals of the cost of constructing the Project, and provided terms and conditions for the diversion and delivery of water for beneficial irrigation use on such lands.  Lands to be irrigated were owned directly or indirectly by water users and were included in such contracts.

30.    The construction of the Project eliminated the physical water supply at Van Brimmer's point of diversion.  In a contract entered into in 1909 (1909 Van Brimmer contract), Van Brimmer agreed not to object to this action, and the United States agreed to divert water from an alternate location and deliver 50 cubic feet per second (cfs) to Van Brimmer. Subsequent to the 1909 Van Brimmer contract, KID assumed the obligation to deliver water to Van Brimmer, but the Van Brimmer contract remains in effect.

31.    Plaintiffs SVID, TID, KDD, Van Brimmer, and other members of the Association have paid all sums that have come due under their contracts and have complied with the contracts in all other material respects.  Water Users have satisfied all conditions to be entitled to receive and use water stored in and conveyed through Project facilities, and have put all delivered water to beneficial use.

32.    Water is diverted and delivered to Water Users and other members of Plaintiff Association from Upper Klamath Lake and the Klamath River through facilities diverting and rediverting water from Upper Klamath Lake, Link River, and the Klamath River.  Plaintiffs and

water users represented by Plaintiffs, by their actions and those of their predecessors, and through using the Project works, have perfected water rights under the laws of the states of Oregon and California.

33.    Districts have perpetual obligations to operate and maintain certain irrigation works owned by the United States and/or themselves and affirmative non-discretionary legal and contractual obligations to deliver water to fulfill the appurtenant water rights of their own member landowners.  Plaintiffs TID, SVID, KDD, and Van Brimmer also have a non-discretionary legal and contractual obligation to deliver water needed to fulfill water rights held by certain other districts and landowners.

34.    On December 23, 1975, the State of Oregon commenced a McCarran Amendment, 43 U.S.C. § 666, general stream adjudication pursuant to Or. Rev. Stat. chapter 539 to determine all water rights to the Klamath Basin.  Reclamation and Plaintiffs filed claims in the adjudication.  Reclamation claimed various water rights under state law.  Districts, on behalf of themselves and their patrons including DuVal and Unruh, claimed various water rights including rights to live flow of the Klamath River and rights to water stored in Upper Klamath Lake.  All such claims were determined and became enforceable in 2013, pursuant to Oregon law.  *See* Or. Rev. Stat. §§ 539.130(4), 539.170.  The amended determinations for Plaintiffs' claimed water rights are found in the Oregon Water Resources Department's 2014 Amended and Corrected Findings of Fact and Order of Determination (ACFFOD).  Hereafter, citations to the ACFFOD are in accordance with the Bates-stamping convention of the ACFFOD, as follows: KBA_ACFFOD_XXXXX [Bates page or pages].

35.    The Oregon adjudication determined that Reclamation has enforceable water rights to store water for a specific and limited purpose of use, limited as follows: "The purposes

of use properly include irrigation, livestock use and domestic use, and use of water for storage." ACFFOD at 34, KBA_ACFFOD_07570. The "use of water for storage" does not include other types of uses, such as wildlife purposes. KBA_ACFFOD_07059.

36.    The ACFFOD also provides that Reclamation is the owner of the right to store water in Upper Klamath Lake to benefit the irrigation rights to beneficial use held by Water Users and Association members and their patrons. *See* KBA_ACFFOD_07060, 07061, 07075, 07084, 07117.

37.    Plaintiffs and other Project water users have the right to live flow and use of stored water from Upper Klamath Lake for the purposes of irrigation and other beneficial uses. *See* KBA_ACFFOD_07075, 07084, 07086, 07160-07161.

38.    The Project service area includes approximately 200,000 acres of irrigated land in southern Klamath County, Oregon, and northern Modoc and Siskiyou Counties, California. With few exceptions, this land is irrigated and farmed by private individuals or firms. The total value of agricultural products produced by the Project has been estimated at up to $300 million annually, in addition to the families directly supported by agriculture, numerous businesses provide goods and services to farmers. Agriculture supports a significant portion of the local tax base.

39.    The Action will have significant effects on the operation of the Project and the availability of water for irrigation. Under the Action, Plaintiffs' water supply will be reduced from the amount of water determined in the ACFFOD, water that has been fully delivered to Plaintiffs in the past. Hydrologic model outputs developed and relied upon by Reclamation demonstrate that implementation of the Action will result in an amount of water available that is far less than irrigation water demand in the Project.

40.     In addition to specific reductions to Water Users' water rights and specific reduction of water rights of Association members and their patrons, which reduce water use below historic levels, the water curtailment will continuously harm Plaintiffs economically by reducing agricultural production, will harm the local economy due to the reduced agricultural production, and will harm NWRs which rely on Project deliveries and return flows.  The water curtailment will cause permanent and physical loss of water rights and therefore loss of farming income and benefits to the Plaintiffs and the surrounding economy.  Water curtailment will cause irreparable harm to Plaintiffs' long-term farming businesses and communities, and Plaintiffs will suffer irreparable harm if water users in the Project are restricted in their ability to farm consistent with ordinary agricultural practices for the region, or if conditions are imposed that are outside of Reclamation's discretion.

41.     Plaintiffs and Districts' patrons, and all Association members and their patrons, will be irreparably injured by any action which directly and indirectly reduces the agricultural acreage of private or leased lands or diminishes the ability to farm the land productively in the Project service area.  Further, Plaintiffs will be irreparably injured by any action which directly and indirectly threatens, causes, results in, or exacerbates the unavailability of water for use on their farm lands.

42.     Defendants have not secured Water Users' water rights through compensation agreements or other agreements in order to make water legally available from the Project for instream purposes, or taken any steps to mitigate Plaintiffs' losses and/or impacts to the local economy in the Klamath Basin.  The failure to analyze effects and mitigate impacts on Plaintiffs does not serve the public interest.

## RELEVANT LAW

43.    Section 8 of the 1902 Act, 43 U.S.C. § 383, 32 Stat. 390, provides:

Nothing in this Act shall be construed as affecting or intending to affect or to in any way interfere with the laws of any State or Territory relating to the control, appropriation, use, or distribution of water used in irrigation, or any vested right acquired thereunder, and the Secretary of the Interior, in carrying out the provisions of this Act, shall proceed in conformity with such laws, and nothing herein shall in any way affect any right of any State or of the Federal Government or of any landowner, appropriator, or user of water in, to or from any interstate stream or the waters thereof.

44.    Section 7(a)(2) of the ESA, 16 U.S.C. § 1536(a)(2) provides:

Each Federal agency shall, in consultation with and with the assistance of the Secretary, insure that any action authorized, funded, or carried out by such agency (hereinafter in this section referred to as an "agency action") is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined by the Secretary, after consultation as appropriate with affected States, to be critical, unless such agency has been granted an exemption for such action by the Committee pursuant to subsection (h) of this section.  In fulfilling the requirements of this paragraph, each agency shall use the best scientific and commercial data available.

45.    The APA, 5 U.S.C. §§ 701-706, authorizes a court to set aside and find unlawful any final agency action or findings and conclusions that are arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; without observance of procedure required by law; unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.  5 U.S.C. § 706(2).

46.    The Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes a court ". . . upon the filing of an appropriate pleading [to] declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

28 U.S.C. § 2201(a).  Pursuant to 28 U.S.C. § 2202, a court granting a declaratory judgment may grant further necessary or proper relief, including injunctive relief.

47.    Defendants are bound by the laws of the State of Oregon related to the control, use, or distribution of water used in irrigation, or any vested right acquired thereunder. 43 U.S.C. § 383.  Where the United States is a party under the McCarran Amendment, 43 U.S.C. § 666, Defendants are required to proceed in conformity with Oregon law in Oregon's general stream adjudication.

48.    Pursuant to Or. Rev. Stat. §§ 539.130(4) and 539.170, the ACFFOD is in full force and effect and water is to be distributed in accordance with the ACFFOD unless and until the ACFFOD is stayed pursuant to Or. Rev. Stat. § 539.180.

49.    The Oregon Water Resources Department is the sole agency charged with administering and regulating water rights for water diverted or used in Oregon.

## DEFENDANTS' ACTIONS GIVING RISE TO THIS CASE

50.    On December 21, 2018, Reclamation issued and transmitted to the United States Fish and Wildlife Service (USFWS) and National Marine Fisheries Service (NMFS) (collectively, Services) a document titled, "The Effects of the Proposed Action to Operate the Klamath Project from April 1, 2019 through March 31, 2029 on Federally-Listed Threatened and Endangered Species" (Original BA).  Defendants prepared the Original BA pursuant to section 7(c) of the ESA, 16 U.S.C. § 1536(c), to evaluate the potential effects to federally-listed species that could result from the continued operation and maintenance (O&M) of the Project. Original BA at 1-1.

51.    On February 15, 2019, Reclamation amended its proposed action, in the 2018 Biological Assessment Modified Part 4 (BA Amendment).  Together, the Original BA and

BA Amendment are hereafter referred to collectively as the "Proposed Action." The Proposed

Action states its elements as follows:

> The [Proposed Action] for 2019 to 2024 consists of three major elements to meet authorized Project purposes, satisfy contractual obligations, and address protections for listed species and certainty for Project irrigators:
>
> 1. Store waters of the Upper Klamath Basin and Lost River.
>
> 2. Operate the Project, or direct the operation of Project facilities, for the delivery of water for irrigation purposes or NWR needs, or releases for flood control purposes, subject to water availability; while maintaining conditions in UKL and the Klamath River that meet the legal requirements under section 7 of the ESA.
>
> 3. Perform O&M activities necessary to maintain Project facilities.

Original BA at 4-8.

52.     Under the Proposed Action, Defendants proposed to limit water diversion and use

by Water Users and Association members, and available water would be limited to less than their

water rights entitlements, contractual rights, and needs. The Proposed Action was based upon

Reclamation's assessment, after informal consultation with the Services, of what would result in

Reclamation not being in violation of its substantive obligations imposed under ESA

section 7(a)(2). The Original BA under element 2 of its Proposed Action, provides

Reclamation's action will include the following:

> The [Proposed Action] management approach has two major components:
>
> 1. UKL elevations and storage, specifically the UKL control logic and UKL Credit, to protect sucker habitat and ensure adequate storage to meet the needs of listed species in UKL and the Klamath River and water supply for the Project; and
>
> 2. Klamath River flows, specifically EWA to support coho needs and to produce flows for disease mitigation or protection of coho habitat during the spring/summer operational period (between March 1 and September 30), and a formulaic approach for calculating IGD releases in the fall/winter (October 1-February 28/29).

Original BA at 4-12.

53.     On March 5, 2019, Reclamation issued a draft Environmental Assessment

(draft EA) under the National Environmental Policy Act titled, "Implementation of Klamath

Project Operating Procedures 2019-2024," and allowed two weeks for public comment.  The

draft EA was prepared to evaluate Reclamation's Proposed Action.

54.     On March 29, 2019, NMFS issued its "Endangered Species Act Section 7(a)(2)

Biological Opinion, and Magnuson-Stevens Fishery Conservation and Management Act

Essential Fish Habitat Response" for Klamath Project Operations from April 1, 2019 through

March 31, 2024 (NMFS BiOp).

55.     Also on March 29, 2019, USFWS issued its "Biological Opinion on the Effects of

Proposed Klamath Project Operations from April 1, 2019, through March 31, 2024, on the Lost

River Sucker and the Shortnose Sucker" (USFWS BiOp).

56.     On April 1, 2019, Reclamation adopted and approved the Proposed Action as the

Action.  By its approval of the draft EA and Action, Reclamation has determined to limit water

diversions and deliveries based on section 7(a)(2) of the ESA and/or otherwise not make water

available to Water Users and Association members and their patrons.  The limitations are

summarized as follows:

> The maximum Project Supply under the Proposed Action Alternative is
> 350,000 AF, which is a reduction from the No Action Alternative (maximum of
> 390,000 AF).  Project Supply is initially determined in early March as the
> quantity of water remaining after the end of September target UKL storage and
> EWA are determined, or a maximum of 350,000 AF, whichever is less.  It is
> recalculated in early April using the NRCS inflow forecast to reflect the most
> current information on hydrologic conditions.  Should EWA allocation be less
> than 576,000 AF on April 1, the calculated Project Supply is further reduced by
> 10,000 AF in order to support augmented May/June river flows.

57.     Under the Action, Reclamation will "operate, or direct the operation of," Project

and Project-related facilities in a manner that will result in insufficient water for diversion and

use by Plaintiffs Duval and Unruh, Plaintiff Districts' patrons, and all Association members and

their patrons.  Implementation of the Action will result in insufficient water diversion and use for approximately 180,000 acres of irrigated land in the Project, and to Lower Klamath and Tule Lake NWRs.  This reduction in diversion for all years falls significantly below the Plaintiffs' water rights as determined in the ACFFOD, other state water rights, or the quantities they are entitled to have delivered under their contracts with Reclamation.  In the majority of years, water diversion and use will be significantly less than the amounts needed for irrigation of crops.  Such a result would severely injure the interests of Plaintiffs as provided herein.

## FIRST CLAIM FOR RELIEF

(APA and Declaratory Relief – Actions that Are an abuse of Discretion,
Not in Accordance with Law, and in Excess of Statutory Jurisdiction,
Authority, or Limitations, *Ultra-vires* Actions)

58.    Plaintiffs reallege and incorporate by reference all preceding paragraphs of this First Amended Complaint.

59.    Under state law, there are water rights appurtenant to land owned by Plaintiffs DuVal and Unruh and land served by the Districts and the Association members.

60.    The Districts are parties to contracts with Reclamation that provide for storage, diversion, and delivery of water to the Districts and those to whom the Districts distribute water, including Plaintiffs DuVal and Unruh.

61.    Reclamation's substantive obligation under ESA section 7(a)(2) is to ensure that its actions not jeopardize the continued existence of listed species or destroy or adversely modify designated critical habitat.

62.    Neither section 7(a)(2) of the ESA, nor any other authority or obligation that may be asserted by Defendants, confers legal power or authorities on Defendants to curtail diversion and use of water by and for Water Users or other Association members or their patrons.

63.     Reclamation has a non-discretionary duty to maintain and operate certain features of the Klamath Project, but the fact that Reclamation perpetuates the Project's existence is not a discretionary action subject to consultation.

64.     To the extent, if any, Defendants have a right or ability to curtail diversion and use of water by and for Water Users or other Association members or their patrons, such right could exist only by virtue of contracts establishing legal rights and relationships as between such persons or entities and Defendants.

65.     None of the contracts described herein were or are subject to renewal or renegotiation at the time of the Action or in the future.

66.     Section 7(a)(2) of the ESA applies to actions with respect to which there is discretionary federal involvement or control.  50 C.F.R. § 402.03; *Nat. Res. Def. Council v. Norton*, 236 F. Supp. 3d 1198, 1217 (E.D. Cal. 2017); *Envtl. Prot. Info. Ctr. v. Simpson Timber Co.*, 255 F.3d 1073, 1082 (9th Cir. 2001) (*EPIC*).

67.     The 1909 contract between Van Brimmer and Reclamation resulted in a transfer of Van Brimmer's point of diversion and waiver of certain riparian rights in exchange for Reclamation's agreement to deliver water to the Van Brimmer ditch, and provides, in relevant part:

   a.     ". . . [t]he Company hereby waives and renounces to the use and benefit of the United States any and all riparian rights, in relation to the waters and shores of Lower Klamath Lake appurtenant or incident to the lands now being irrigated by the Company . . . ."  Art. 1 of the 1909 Van Brimmer contract.

   b.     "It is understood and agreed that the United States and its assigns, will deliver to the Company during each and every irrigation season, that is from

May first to October fifteenth of each year, a quantity of water, not to exceed

fifty second feet, in which the Company claims the right to the exclusive use to

irrigate sufficiently those certain pieces or parcels of land lying and being situated

west of Lost River, Klamath County, Oregon, and east of the present canals or

ditches of the Company as now existing and constructed . . . ."  Art. 2 of the

1909 Van Brimmer contract.

68.     In 1943, Van Brimmer entered into a Warren Act contract with Reclamation,

providing for delivery of water in excess of the 50 cfs provided in the 1909 contract, including

stored water from Upper Klamath Lake.  This agreement also modified Reclamation's obligation

to deliver water beginning April 15, rather than May 1.  Van Brimmer's 1943 contract with

Reclamation provides, in relevant part:

a.      "It is understood and agreed that for the year 1942 and subsequent

years, [Van Brimmer] will pay to the United States the sum of fifty cents . . . per

acre foot for all water delivered by the United States to [Van Brimmer] in excess

of an aggregate total amount of 50 cubic feet per second . . . ."  Art. 19 of the

1943 contract between Van Brimmer and Reclamation.

b.      "It is understood and agreed that said excess water provided under

the terms [of this contract] shall be used solely for the purpose of distribution by

[Van Brimmer] to individual water users . . . and said excess water shall be used

solely for the purposes of irrigation and domestic purposes incidental thereto."

Art. 21 of the 1943 contract between Van Brimmer and Reclamation.

c.      "It is understood and agreed that the United States and its assigns,

will deliver to the Company during each and every irrigation season, that is from

April fifteenth to October fifteenth of each year, a quantity of water, not to exceed

fifty second feet, in which the Company claims the right to the exclusive use, to

irrigate sufficiently those certain pieces or parcels of land lying and being situated

west of Lost River, Klamath County, Oregon, and east of the present canals or

ditches of the Company as now existing and constructed." Art. 15 of the

1943 contract between Van Brimmer and Reclamation.

69.     The 1948 contract between SVID and Reclamation provides, in relevant part:

The United States will impound, store or otherwise provide water for the
irrigation of lands in the District and deliver same to the District through the
Adams or 'D' Canal of the Klamath Project . . . . At such delivery points the
District shall be entitled to receive a water supply sufficient for beneficial use . . .
Provided, That in no event shall the United States be obligated to furnish water in
any one month at a rate of delivery in excess of six-tenths (0.6) of an acre-foot per
irrigable acre . . . .

Art. 13 of the 1948 contract between SVID and Reclamation.

70.     A 1954 contract between KID and Reclamation provides that KID has

responsibility for delivery of water to other districts served by the Project, including Van

Brimmer and SVID.

71.     Article 33 of the 1956 contract between TID and Reclamation provides, in

relevant part:

        a.      "The District shall have the right in perpetuity, subject to the terms

and conditions of this contract and consistently with the applicable laws of the

State of California, to receive from the Klamath Project all water needed by the

District for beneficial irrigation uses within the District. Said water shall be

delivered from the works under the control of the United States or its designees or

agents at such times and in such amounts as the District may demand, subject

only to the limit of the capacity of the facilities available therefor and the amount

of water required for reasonable beneficial use within the District . . . . ."

      b.    "The District shall deliver or furnish water from the works

operated and maintained by the District to any lands owned or under the control

of the United States within the District, and the United States shall be charged for

the irrigation and drainage service furnished: <u>Provided</u>, That such charge shall not

exceed the actual cost of service performed."

      72.    In 1917, KDD contracted with the United States to drain Lower Klamath Lake

and to reclaim those lands for cultivation.  That contract was amended and superseded in 1921,

1929, and 1943.  The 1943 contract between KDD and Reclamation provides, in relevant part:

> The United States agrees that . . . it will deliver to the District during the irrigation
> season of each year at the gates . . . a supply of water out of storage in Upper
> Klamath Lake and from natural flow of the Klamath River.  For purposes of this
> contract, the irrigation season is the period from April 15 to September 30 . . . of
> each year.  The amount of water to be delivered in any season shall not be in
> excess of the amount that can be used beneficially for the irrigation of lands in the
> District in cultivation in that season, and in no event to exceed the amount that
> can be used beneficially for 27,500 acres of irrigable lands within the District
> boundaries . . . .

Art. 14(a) of the 1943 contract between KDD and Reclamation.

      73.    The contracts identified above, and the contracts between Reclamation and the

Association's members, do not confer power or authority upon Defendants to curtail or limit

Water Users' or Association members' and their patrons' use of water in order to benefit listed

species.  Reclamation has no discretion under such contracts to limit Water Users' or Association

members' and their patrons' use of water in order to provide benefit to listed species.  The

substantive obligations of ESA section 7(a)(2) do not apply to the storage, diversion, and use of

water consistent with the Districts' contracts or those of the Association's members.  *See Norton*,

236 F. Supp. 3d at 1217; *Nat. Res. Def. Council v. Jewell,* 749 F.3d 776, 784-85 (9th Cir. 2014);

*EPIC*, 255 F.3d at 1076. Plaintiffs are actually injured by Defendants' forced reduction in water use dictated by the Action, which is beyond the scope of Defendants' lawful authority or discretion.

74.     The Action, which provides the curtailment of the diversion or diversion to storage and curtailment of use of water by Water Users and Association members to less than the amount of water they would be entitled absent the ESA, is *ultra vires*. This Court may review any agency action that is *ultra vires* and outside of an agency's authorities.

75.     Defendants' approval and implementation of the Action is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, in excess of statutory jurisdiction, authority, or limitations, or short of statutory right, and Plaintiffs are entitled to a declaration that the contracts between Reclamation and the Association's members do not confer power or authority upon Defendants to curtail or limit Water Users' or Association members' and their patrons' use of water in order to benefit listed species or otherwise provide water for instream purposes.

76.     Unless Defendants are restrained and enjoined from reducing diversion and use of water under Plaintiff Districts' water rights, Plaintiffs' interests will be irreparably harmed.

<u>**SECOND CLAIM FOR RELIEF**</u>

(APA and Declaratory Relief – Section 8 of Reclamation Act)

77.     Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint.

78.     Plaintiff Districts and the Association members hold legal title to rights of the use of water from the Klamath River and Upper Klamath Lake, including live flow of Upper Klamath Lake and the Klamath River, and water stored in Upper Klamath Lake, pursuant to state

law.  Plaintiffs DuVal and Unruh hold rights of use of live flow of Upper Klamath Lake and the Klamath River, and of water stored in Upper Klamath Lake.

79.    Defendants' actions, inactions, findings, and conclusions in adopting and implementing the Action violate section 8 of the Reclamation Act, which prohibits Defendants from interfering with state law in the control, appropriation, use, or distribution of water.

80.    Defendants' actions, inactions, findings, and conclusions in adopting and implementing the Action to make water available for its own instream use without a water right or other authority, interfere with applicable state law and thus violate section 8 of the Reclamation Act, and are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, contrary to constitutional right, power, privilege, or immunity, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

81.    Defendants' actions, inactions, findings, and conclusions in adopting the Action and limiting Plaintiffs' right to use water without lawful authority to do so, interfere with Plaintiffs' vested water rights, violate section 8 of the Reclamation Act, and are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, contrary to constitutional right, power, privilege, or immunity, or in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.

82.    Defendants' actions, inactions, findings, and conclusions in adopting and implementing the Action violate section 8 of the Reclamation Act, which requires Reclamation to not interfere with state law in the control, appropriation, use, or distribution of water.

83.    Thus, the Action is not in accordance with the mandates of federal and state law and violates 5 U.S.C. § 706.  In the alternative, the Action constitutes actions in excess of Defendants' statutory jurisdiction or authority.

84.     Defendants' approval and implementation of the Action are arbitrary, capricious, an abuse of discretion, and not in accordance with law, and must be set aside.  In addition, Plaintiffs are entitled to a declaration that Defendants' actions, inactions, findings, and conclusions in adopting and implementing the Action violate section 8 of the Reclamation Act.

85.     Unless Defendants are restrained and enjoined from reducing deliveries of Plaintiff Districts' water rights, Plaintiffs' interests will be irreparably harmed.

## THIRD CLAIM FOR RELIEF

(APA and Declaratory Relief – Actions that Are an Abuse of Discretion,
Not in Accordance with Law, and in Excess of Statutory Jurisdiction, Authority,
or Limitations, Breach of Reclamation Law – Stored Water)

86.     Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint.

87.     The authorized purposes of the Project are for reclamation and irrigation purposes only.  The authorized purposes of use for the water stored in Upper Klamath Lake are limited to irrigation, livestock use and domestic use, and use of water for storage.  KBA_ACFFOD_07050.

88.     The ACFFOD determines that the United States is the owner of a right to store water in Upper Klamath Lake to benefit the separate irrigation rights recognized for the Project, including Water Users and Association members and their patrons.  KBA_ACFFOD_07084.

89.     Under the Reclamation Act, section 8, Congress provided that the Reclamation Act is not to be construed as interfering with state laws "relating to the control, appropriation, use, or distribution of water used in irrigation" and that "the Secretary of the Interior, in carrying out provisions of the Act, shall proceed in conformance with such laws . . . ."

90.     The Action includes storing, and holding and using water stored in Upper Klamath Lake for the purported benefit of endangered species, depriving Water Users and Association members and their patrons of the use of stored water.  The Action also includes

using stored water for ESA purposes in the Klamath River.  Use of water for ESA purposes is not an allowed use of water stored in Upper Klamath Lake.  Collection and retention and use of stored water for ESA-listed species, and use of stored water for ESA-listed species or any instream purpose in the Klamath River, are not activities authorized by any applicable law.

91.     Section 7(a)(2) of the ESA is a limitation on certain actions, but it is not a source of authority to act in a manner not already authorized.  *See Norton*, 236 F. Supp. 3d at 1217; *EPIC*, 255 F.3d at 1083; *Sierra Club v. Babbitt*, 65 F.3d 1502, 1509 (9th Cir. 1995) (". . . we conclude that where, as here, the federal agency lacks the discretion to influence the private action, consultation would be a meaningless exercise; the agency simply does not possess the ability to implement measures that inure to the benefit of the protected species.").  Collection and use of stored water for ESA-listed species, or any other purported responsibility outside of the determined or decreed state water rights, is inconsistent with Oregon water law and not authorized by state or federal law.  Plaintiffs are entitled to a declaration that Defendants' authorization in the Action of collection and retention and use of stored water for ESA-listed species, and use of stored water for ESA-listed species in the Klamath River, are not activities authorized by any applicable law.  Unless Defendants are restrained and enjoined from reducing deliveries of Plaintiff Districts' water rights, Plaintiffs' interests will be irreparably harmed.

## FOURTH CLAIM FOR RELIEF

(APA and Declaratory Relief – Capped Water Deliveries;
Excess of Statutory Jurisdiction; Arbitrary and Capricious)

92.     Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint.

93.     Water Users and Association members and their patrons have water rights in the amount of 3.5 acre-feet per acre at the place of use during the standard March-October irrigation

season, and have historically made beneficial use of the full extent of the rights.  This equates to 540,778 acre-feet during the March-October period.  *See* KBA_ACFFOD_07160.

94.    Defendants' Action limits to the Project a maximum diversion of 350,000 acre-feet per year.  The maximum diversion cap of 350,000 acre-feet is not authorized by Oregon law or any other legal authority.

95.    Defendants' adoption and implementation of the Action is arbitrary, capricious, an abuse of discretion, not otherwise in accordance with the law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.  In addition, Plaintiffs are entitled to a declaration that the maximum diversion cap of 350,000 acre-feet is not authorized by Oregon law or any other legal authority.

96.    Unless Defendants are restrained and enjoined from acting to cap Plaintiff Districts' water rights, Plaintiffs' interests will be irreparably harmed.

## FIFTH CLAIM FOR RELIEF

(APA and Declaratory Relief – Reclamation's Determination with Respect
to Compliance with ESA Section 7 as Related to Shortnose Suckers
and Lost River Suckers Is Arbitrary, Capricious, and Contrary to Law)

97.    Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint.

98.    Section 7(a)(2) of the ESA, 16 U.S.C. § 1536, requires federal agencies ensure that their actions are "not likely to jeopardize the continued existence of any endangered or threatened species or result in the destruction or adverse modification of habitat of such species which is determined by the Secretary . . . to be critical."  16 U.S.C. § 1536(a)(2).  In fulfilling this requirement, Reclamation is to use the "best scientific and commercial data available."  *Id.* An action does not jeopardize the continued existence of a species unless the action "reasonably would be expected, directly or indirectly, to reduce appreciably the likelihood of both the

survival and recovery of a listed species in the wild by reducing the reproduction, numbers, or distribution of that species."  50 C.F.R. § 402.02.

99.    In approving the Action, Defendants determined that limitations on diversion, storage, use of stored water, and delivery of water to or by Water Users, Association members, and their patrons, are necessary to ensure that Reclamation's action not violate the substantive requirements of ESA section 7(a)(2) based on effects of storage in, and diversion or use of water from, Upper Klamath Lake.  In particular, under the Action, the diversion and use of water from Upper Klamath Lake is constrained and limited based on the determination that such constraints and limitations are necessary in order to maintain or approximate certain Upper Klamath Lake elevations for various life stages of the shortnose sucker and Lost River sucker.

100.    Based on evidence in the administrative record and any other admissible evidence, Reclamation's determination that the constraints and limitations on diversion and use of water are necessary for compliance with ESA section 7(a)(2) with respect to endangered suckers are arbitrary and inconsistent with law for several reasons, including but not limited to:

a.    Defendants failed to analyze the effects of the Action, or the effects of operation and maintenance of Project and Project-related facilities, on listed suckers, and instead the Action is based on protecting the species without regard to the effects that operation of the Project and Project-related facilities does or does not have;

b.    Defendants failed to determine the correct environmental baseline for determining the effects of O&M of Project and Project-related facilities;

c.    The best scientific and commercial data available does not support that variations in Upper Klamath Lake elevations that would result absent such constraints and limitations would or may violate the standards of ESA section 7(a)(2);

d.      The best available scientific and commercial data does not support that the amount or area of in-lake spawning habitat is a limiting factor for sucker populations;

e.      The best available scientific and commercial data does not support that the amount or area of in-lake rearing habitat is a limiting factor for sucker populations;

f.      The best available scientific and commercial data does not support that a cap of 350,000 acre-feet on diversions is necessary to ensure that Reclamation's action does not violate ESA section 7(a)(2).

101.    Needless economic dislocation will occur as a result of Reclamation's failure to use the best scientific and commercial data, which is contrary to a primary directive of the ESA.

102.    The best available scientific and commercial data available does not support that increasing Upper Klamath Lake elevations is expected, directly or indirectly, to reduce appreciably either the survival or recovery of the shortnose sucker or Lost River sucker.  A judicial declaration is necessary and appropriate at this time under the Declaratory Judgment Act in order that the Plaintiffs may ascertain their rights and the Defendants' obligations pursuant to the ESA and the ESA regulations.  Unless such a declaration is issued, the Plaintiffs will suffer injury and a loss and/or impairment of their rights and property in violation of the law.  Defendants will continue to singularly focus on regulating the Project for environmental objectives, and economic injury to Plaintiffs will occur if Defendants are not required to use the best scientific and commercial data available.

103.    Defendants' adoption and implementation of the Action is arbitrary, capricious, an abuse of discretion, not otherwise in accordance with the law; contrary to constitutional right, power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or

short of statutory right to the extent it does not consider the best scientific and commercial data as proscribed by ESA section 7(a)(2), 16 U.S.C. § 1536(a)(2).

104.    Plaintiffs have no plain, speedy, and adequate remedy in the course of law, and absent immediate judicial intervention, Plaintiffs will suffer irreparable injury.

## SIXTH CLAIM FOR RELIEF

(APA and Declaratory Relief – Reclamation's Determination with Respect
to Compliance with ESA Section 7 as Related to SONCC, Sturgeon,
Orca, and Eulachon Is Arbitrary, Capricious, and Contrary to Law)

105.    Plaintiffs reallege and incorporate by reference all preceding paragraphs of this Complaint.

106.    Section 7(a)(2) of the ESA, 16 U.S.C. § 1536, requires federal agencies ensure that their actions are "not likely to jeopardize the continued existence of any endangered or threatened species or result in the destruction or adverse modification of habitat of such species, which is determined by the Secretary . . . to be critical."  16 U.S.C. § 1536(a)(2).  In fulfilling this requirement, Reclamation is to use the "best scientific and commercial data available."  *Id*. An action does not jeopardize the continued existence of a species unless the action "reasonably would be expected, directly or indirectly, to reduce appreciably the likelihood of both the survival and recovery of a listed species in the wild by reducing the reproduction, numbers, or distribution of that species."  50 C.F.R. § 402.02.

107.    In adopting and approving the Action, Defendants determined that limitations on diversion, storage, use of stored water, and delivery of water to or by Water Users and/or Association members and their patrons, and/or use of water from Link River Dam to provide flows below Iron Gate Dam as described in the Action, are necessary to ensure that Reclamation's action not violate the substantive requirements of ESA section 7(a)(2).  In particular, under the Action, the operation of Link River Dam and the diversion of water by

Reclamation and Districts and other Association members are constrained and limited based on the determination that such constraints and limitations are necessary in order to maintain or approximate certain flows below Iron Gate Dam for various life stages of SONCC, Sturgeon, Orca, and Eulachon.

108.    Based on evidence in the administrative record and any other admissible evidence, Reclamation's determination that the constraints and limitations on diversion and water use are necessary for compliance with ESA section 7(a)(2) with respect to coho salmon is arbitrary and capricious for several reasons, including but not limited to:

a.    Defendants failed to analyze the effects of the Action, or the effects of O&M of Project and Project-related facilities, on SONCC, Sturgeon, Orca, and Eulachon, and instead the Action is based on protecting the species without regard to the effects that operation of the Project and Project-related facilities does or does not have;

b.    Defendants failed to determine the correct environmental baseline for determining the effects of O&M of Project and Project-related facilities;

c.    The best scientific and commercial data available does not support that variations in flows below Iron Gate Dam that would result absent such constraints and limitations would or may violate the standards of ESA section 7(a)(2);

d.    The best available scientific and commercial data does not support that the amount or area of in-river spawning habitat is a limiting factor for coho populations;

e.    The best available scientific and commercial data does not support that the amount or area of in-river rearing habitat is a limiting factor for coho populations;

f.    The best available scientific and commercial data does not support that the velocity of flows below Iron Gate Dam is a limiting factor for coho populations;

g.      Section 7(a)(2) of the ESA does not oblige Reclamation to mitigate or avoid disease conditions in the Klamath River unless and only to the extent necessary to ensure that Reclamation's action does not violate section 7(a)(2);

h.      The best available scientific and commercial data does not support that the specific disease-prevention flows (including but not limited to flushing flows) in the Action are necessary to ensure that Reclamation's action does not violate ESA section 7(a)(2);

i.      The best available scientific and commercial data does not support that a cap of 350,000 acre-feet on diversions is necessary to ensure that Reclamation's action does not violate ESA section 7(a)(2);

j.      The best available scientific and commercial data available does not support that changes in Klamath River flows below Iron Gate Dam that would occur absent such constraints and limitations would or may violate the standards of ESA section 7(a)(2).

109.    A judicial declaration is necessary and appropriate at this time under the Declaratory Judgment Act in order that the Plaintiffs may ascertain their rights and the Defendants' obligations pursuant to the ESA and the ESA regulations.  Unless such a declaration is issued, the Plaintiffs will suffer injury and a loss and/or impairment of their rights and property in violation of the law.  Defendants will continue to singularly focus on regulating the Project for environmental objectives, and economic injury to Plaintiffs will occur if Defendants are not required to use the best scientific and commercial data available.

110.    Defendants' adoption and implementation of the Action is arbitrary, capricious, an abuse of discretion, not otherwise in accordance with the law; contrary to constitutional right,

power, privilege, or immunity; in excess of statutory jurisdiction, authority, or limitations, or short of statutory right to the extent it does not consider the best scientific and commercial data as proscribed by ESA section 7(a)(2), 16 U.S.C. § 1536(a)(2).

111.    Plaintiffs have no plain, speedy, and adequate remedy in the course of law, and absent immediate judicial intervention, Plaintiffs will suffer irreparable injury.

WHEREFORE, Plaintiffs pray for relief as more fully set forth below.

## PRAYER FOR RELIEF

1.    For a judicial declaration that the Action is arbitrary, capricious, an abuse of discretion, not in accordance with law, and in excess of statutory jurisdiction, authority, or limitations;

2.    For an order declaring that Defendant Reclamation may not operate or direct Klamath Project operations or manage related facilities, including stored water, for purposes other than irrigation, livestock, and domestic use;

3.    For a preliminary and permanent injunction ordering Defendants not to operate, or direct the operation of, Klamath Project and related facilities for purposes other than irrigation, livestock, and domestic uses;

4.    For an order remanding the approval of the Action to Defendants with direction that section 7(a)(2) of the ESA does not apply to actions other than discretionary actions of a federal agency and that future operations planning and decisions shall not apply ESA section 7(a)(2) to the storage, diversion, or delivery of water for irrigation, livestock, and domestic purposes;

5.    For a preliminary and permanent injunction requiring Defendants to not operate, or direct the operation of, Klamath Project-related facilities in a manner that replaces state

administrative law, and curtails or limits the supply of state water rights to Water Users or

Association members and their patrons;

6.    For a determination that Reclamation must consider the best scientific and

commercial data available to meet its obligations to the extent there is any discretion in adopting

the Action.

7.    For an award of reasonable attorneys' fees and costs of suit; and

8.    For such other relief as the court deems just and proper.

SOMACH SIMMONS & DUNN, PC

DATED:  July 10, 2019            By _*s/ Paul S. Simmons*_____
                                 Paul S. Simmons
                                 Richard S. Deitchman
                                 Attorneys for Plaintiffs Shasta View Irrigation
                                 District, Tulelake Irrigation District, Klamath Water
                                 Users Association, Ben Duval, and Rob Unruh


PARKS & RATLIFF, P.C.

DATED:  July 10, 2019            By _*s/ Nathan J. Ratliff*_____
                                 Nathan J. Ratliff
                                 Attorneys for Plaintiff Van Brimmer Ditch
                                 Company


CLYDE SNOW & SESSIONS, P.C.

DATED:  July 10, 2019            By _*s/ Reagan L.B. Desmond*_____
                                 Reagan L.B. Desmond
                                 Attorneys for Plaintiff Klamath Drainage District

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing will be e-filed on July 10, 2019, and will be automatically served upon counsel of record, all of whom appear to be subscribed to receive notice from the ECF system.

_s/ Paul S. Simmons_
Paul S. Simmons
