# EXHIBIT A

Thane D. Somerville, OSB #092500
Thomas P. Schlosser, Wash. Bar. #06276
MORISSET, SCHLOSSER, JOZWIAK & SOMERVILLE
811 First Avenue, Suite 218
Seattle, WA 98104
Tel:  206-386-5200
Fax:  206-386-7322
t.somerville@msaj.com
t.schlosser@msaj.com
*Attorneys for Hoopa Valley Tribe*


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

Medford Division

| | |
|---|---|
| KLAMATH IRRIGATION DISTRICT, | Consolidated Cases |
| | Case No. 1:19-cv-00451-CL (lead) |
| | Case No. 1:19-cv-00531-CL (trailing) |
| Plaintiff, | |
| | **HOOPA VALLEY TRIBE'S MOTION** |
| v. | **TO DISMISS PURSUANT TO FRCP 12(b)(7)** |
| | **and 19; and MEMORANDUM IN SUPPORT** |
| UNITED STATES BUREAU OF | |
| RECLAMATION et al., | Request for Oral Argument |
| | |
| Defendants | |

| | |
|---|---|
| SHASTA VIEW IRRIGATION | |
| DISTRICT et al., | |
| | |
| Plaintiffs, | |
| | |
| v. | |
| | |
| UNITED STATES BUREAU OF | |
| RECLAMATION et al., | |
| | |
| Defendants | |


MOTION TO DISMISS

# TABLE OF CONTENTS

CERTIFICATE OF COMPLIANCE WITH LR 7-1 ................................................................. 1

MOTION TO DISMISS ..................................................................................................... 1

MEMORANDUM IN SUPPORT ......................................................................................... 2

I.     INTRODUCTION .................................................................................................. 2

II.    FACTUAL BACKGROUND ................................................................................... 3

    A.    Hoopa Retains Federal Reserved Rights to Take Fish Within Their Reservation from the Klamath and Trinity Rivers For Ceremonial, Subsistence, and Commercial Purposes to Support a Moderate Livelihood. ................................................................. 3

    B.    Hoopa Retains a Federal Reserved Water Right to an Instream Flow of Water Sufficient to Support and Maintain Hoopa's Fishing Rights in the Klamath and Trinity Rivers. ....................................................................................................... 4

    C.    Reclamation's Project Operations Cause Direct and Significant Harm to Hoopa's Reserved Fishing and Water Rights. ....................................................................... 8

    D.    Plaintiffs Seek to Prevent Instream Water Releases for Fish, Which Would Impede Not Only ESA Compliance but Hoopa's Reserved Rights. ..................................... 14

III.    ARGUMENT AND AUTHORITY ......................................................................... 16

    A.    Legal Standard for Rule 12(b)(7) Motion. ................................................................. 16

    B.    Hoopa Is A Required Party Because the Relief Sought by Plaintiffs Would Impair or Impede, As A Practical Matter, Hoopa's Reserved Fishing Rights and Senior Reserved Water Rights Without Their Participation. ................................................. 18

        1.    Hoopa's Interests in Fish and Water of the Klamath River Would be Directly Impaired or Impeded as A Practical Matter by Plaintiffs' Litigation. ......................... 19

        2.    Reclamation Cannot Adequately Represent Hoopa's Interests. ................................. 21

        3.    Reclamation Will Have Conflicting Legal Obligations If Plaintiffs Prevail Without Hoopa's Joinder. ....................................................................................................... 28

    C.    Hoopa Is Indispensable: This Action May Not Proceed in Hoopa's Absence. ......... 29

        1.    A Judgment Rendered in Hoopa's Absence Would Prejudice Hoopa as Well as Existing Parties. ....................................................................................................... 29

        2.    There Is No Way to Shape Relief to Avoid the Prejudice. ........................................ 31

        3.    A Judgment Rendered in Hoopa's Absence Will Not Be Adequate ......................... 33

        4.    Plaintiffs Have an Alternative Forum ..................................................................... 33

IV.    CONCLUSION .................................................................................................... 34

# TABLE OF AUTHORITIES

## Cases

*Alto v. Black*,
738 F.3d 1111 (9th Cir. 2013)............................................... 24

*Am. Greyhound Racing v. Hull*,
305 F.3d 1015 (9th Cir. 2002)...................................... 18, 19, 31, 34

*Arizona v. California*,
373 U.S. 546 (1963) ...................................................... 4, 5, 6

*Baley v. United States*,
134 Fed. Cl. 619 (2017) ......................... 6, 7, 8, 12, 20, 25, 28, 32, 33

*Blake v. Arnett*,
663 F.2d 906 (9th Cir. 1981)................................................ 3

*Clinton v. Babbitt*,
180 F.3d 1081 (9th Cir. 1999).............................................. 19

*Colville Confederated Tribes v. Walton*,
647 F.2d 42 (9th Cir. 1981), cert. denied, 454 U.S. 1092 (1981) ........... 5, 7

*Colville Confederated Tribes v. Walton*,
752 F.2d 397 (9th Cir. 1985)............................................... 5

*Confederated Tribes of the Chehalis Indian Reservation v. Lujan*,
928 F.2d 1496 (9th Cir. 1991)................................... 24, 25, 30, 34

*Dawavendewa v. Salt River Project Agric. Improvement and Power Dist.*,
276 F.3d 1150 (9th Cir. 2002).............................. 18, 28, 29, 30, 34

*Dine Citizens Against Ruining Our Env't v. BIA*,
2019 U.S. App. LEXIS 22407 (9th Cir., July 29, 2019) ............ 17, 19, 22, 23, 34

*Dine' Citizens Against Ruining Our Environment v. Bureau of Indian Affairs*,
2017 U.S. Dist. LEXIS 147432 (D. Az., Sept. 17, 2017) ..................... 23

*Friends of Amador County v. Salazar*,
554 Fed. Appx. 562 (9th Cir. 2014) ............................. 18, 24, 33, 34

*Greely v. Confederated Salish & Kootenai Tribes*,
712 P.2d 754 (Mont. 1985) ................................................ 5

*Hoopa Valley Tribe v. NMFS*,
230 F. Supp. 3d 1106 (N.D. Cal. 2017) .................. 6, 9, 10, 11, 12, 13, 25, 26, 32

*Joint Board of Control v. United States*,
832 F.2d 1127 (9th Cir. 1987), cert. denied 486 U.S. 1007 (1988) .......... 7

*Kandra v. United States*,
145 F. Supp. 2d 1192 (D. Or. 2001)............................. 6, 12, 28, 32

*Karuk Tribe of California v. Ammon*,
209 F.3d 1366 (Fed. Cir. 2000)............................................. 3

*Keweenaw Bay Indian Community*,
11 F.3d 1141 (6th Cir. 1993).............................................. 29

*Kickapoo Tribe of Oklahoma v. Lujan*,
728 F. Supp. 791 (D. D.C. 1990) .......................................... 22

*Kittitas Reclamation Dist. v. Sunnyside Valley Irrigation Dist.*,
  763 F.2d 1032 (9th Cir. 1985), cert. denied, 474 U.S. 1032 (1985) ........................................... 7
*Klamath Tribes v. U.S. Bureau of Reclamation*,
  Case No. 18-cv-3078-WHO (N.D. Cal.) ...................................................................................... 26
*Klamath Water Users Association v. Patterson*,
  204 F.3d 1206 (9th Cir. 2000), cert. denied, 531 U.S. 812 (2000) ......................... 6, 7, 9, 12, 28
*Makah Indian Tribe v. Verity*,
  910 F.2d 555 (9th Cir. 1990) ..................................................... 16, 18, 20, 24, 31, 32, 34
*Manybeads v. United States*, 2
  09 F.3d 1164 (9th Cir. 2000) ...................................................................................................... 24
*Mattz v. Arnett*,
  412 U.S. 481 (1973) ......................................................................................................................... 3
*Michigan v. Bay Mills Indian Community*,
  572 U.S. _____ (2014) .................................................................................................................. 17
*Mississippi v. City of Memphis*,
  533 F. Supp. 2d 646 (N.D. Miss. 2008) ...................................................................................... 20
*Murphy Co. v. Trump*,
  2017 U.S. Dist. LEXIS 35959 (D. Or., Mar. 14, 2017) .............................................................. 22
*NRDC v. Kempthorne*,
  539 F. Supp. 2d 1155 (E.D. Cal. 2008) ....................................................................................... 26
*Pacific Northwest Generating Coop v. Brown*,
  822 F. Supp. 1479 (D. Or. 1993) ................................................................................................. 27
*Parravano v. Babbitt*,
  70 F.3d 539 (9th Cir. 1995) ......................................................................... 3, 4, 5, 7, 8, 11
*PCFFA  v. U.S. Bureau of Reclamation*,
  138 F. Supp. 2d 1228 (N.D. Cal. 2001) ................................................................................. 9, 13
*PCFFA v. U.S. Bureau of Reclamation*,
  426 F.3d 1082 (9th Cir. 2005) ..................................................................................... 8, 9, 13, 26
*PCFFA/Yurok Tribe v. U.S. Bureau of Reclamation*,
  2005 U.S. Dist. LEXIS 36035 (N.D. Cal., March 8, 2005) ....................................................... 26
*Pit River Home and Agricultural Cooperative Ass'n v. United States*,
  30 F.3d 1088 (9th Cir. 1994) ................................................................................................. 24, 34
*Quileute Indian Tribe v. Babbitt*,
  18 F.3d 1456 (9th Cir. 1994) ...................................................................................................... 24
*Republic of Philippines v. Pimentel*,
  533 U.S. 851 (2008) ...................................................................................................... 17, 31, 34
*Santa Clara Pueblo v. Martinez*,
  436 U.S. 49 (1978) ....................................................................................................................... 17
*Shermoen v. United States*,
  982 F.2d 1312 (9th Cir. 1992) ......................................................................... 18, 19, 21, 24, 34
*Short v. United States*,
  202 Ct. Cl. 870-875-980 (1973) ................................................................................................... 3

*Skokomish Indian Tribe v. Goldmark*,
  994 F. Supp. 2d 1168 (W.D. Wash. 2014) ................................................ 18, 20, 28, 31, 33, 34
*Trbovich v. United Mine Workers of Am.*,
  404 U.S. 528 (1972). .............................................................................................................. 22
*Union Pac. R.R. Co. v. Runyon*,
  320 F..D. 245 (D. Or. 2017) .................................................................................................. 18
*United States v. Adair*,
  723 F.2d 1394 (9ᵗʰ Cir. 1983), cert denied, 467 U.S. 1252 (1984) ............................... 4, 5, 6, 7
*United States v. Anderson*,
  591 F. Supp. 1 (E.D. Wash. 1982) .......................................................................................... 5
*United States v. Eberhardt*,
  789 F.2d 1354 (9ᵗʰ Cir. 1986).................................................................................... 3, 5, 7, 8
*United States v. Washington*,
  853 F.3d 946 (9ᵗʰ Cir. 2017), *affirmed per curiam*, 584 U.S. ___ (2018)........................... 8, 11
*United States v. Winans*,
  198 U.S. 371 (1905) ................................................................................................................ 3
*White v. Univ. of Cal.*,
  765 F.3d 1010 (9ᵗʰ Cir. 2014).................................................................................. 17, 27, 31
*Wichita & Affiliated Tribes of Okla. v. Hodel*,
  788 F.2d 765 (D.C. Cir. 1986) .......................................................................................... 30, 32
*Wilbur v. Locke*,
  423 F.3d 1101 (9ᵗʰ Cir. 2005)................................................................................................ 30
*Winters v. United States*,
  207 U.S. 564 (1908) ........................................................................................................... 4, 7

## Statutes

16 U.S.C. § 1538 ....................................................................................................................... 10

## Other Authorities

62 Fed. Reg. 24588 (May 6, 1997) ............................................................................................. 10
83 Fed. Reg. 8410 (2/27/18) ...................................................................................................... 13
83 Fed. Reg. 8413 ...................................................................................................................... 13
Solicitor Opinion M-36979, Fishing Rights of the Yurok and Hoopa Valley Tribes, October 4,
  1993 ................................................................................................................................... 4, 5
Thomas Schlosser, *Dewatering Trust Responsibility:  The New Klamath River Hydroelectric and
  Restoration Agreements*, 1 Wash. J. Envtl. L. & Pol'y 42 (2011) ........................................... 27

## Rules

Fed. R. Civ. P. 12(b)(6)............................................................................................................. 23
Fed. R. Civ. P. 12(b)(7)............................................................................................ 1, 2, 16, 22, 23
Fed. R. Civ. P. 19 ................................................................................................. 1, 2, 16, 18, 34
Fed. R. Civ. P. 19(a) .................................................................................................... 19, 21, 30
Fed. R. Civ. P. 19(a)(1)........................................................................................................ 16, 29

Fed. R. Civ. P. 19(a)(1)(B)(ii)...................................................................................... 16, 17, 28, 29
Fed. R. Civ. P. 19(a)(2)(i) ..................................................................................................... 30
Fed. R. Civ. P. 19(b) ....................................................................................... 17, 30, 31, 33
Fed. R. Civ. P. 19(b)(3)........................................................................................................ 33
Fed. R. Civ. P. 19(b)(4)........................................................................................................ 33
Fed. R. Civ. P. 24(a) ............................................................................................................ 21

## CERTIFICATE OF COMPLIANCE WITH LR 7-1

Undersigned counsel certifies that the parties have made a good faith effort through telephone conference to resolve the issues herein in compliance with Local Rule (LR) 7-1 but were unable to resolve the issues in dispute. *See* Declaration of Thane Somerville, para. 5-6.

## MOTION TO DISMISS

Expressly reserving its sovereign immunity, the Hoopa Valley Tribe (herein, "Hoopa") moves, pursuant to Federal Rule of Civil Procedure ("FRCP" or "Rule") 12(b)(7), for an order dismissing this consolidated action for failure to join Hoopa, a party required by FRCP 19.[1]  In this proceeding, Plaintiffs seek to prohibit the Bureau of Reclamation ("Reclamation") from releasing water from Upper Klamath Lake ("UKL"), or letting water pass Link River Dam into the Klamath River, for instream fish flows.  Such relief would directly conflict with Reclamation's obligation to not jeopardize the survival and recovery of fish species protected under the Endangered Species Act ("ESA").  Plaintiffs' requested relief would also directly prevent instream flows that are necessary to fulfill Hoopa's on-reservation fishing rights and senior water rights reserved to Hoopa by federal law.  Plaintiffs' suit and requested relief, if granted, would significantly prejudice Hoopa due to the direct impairment of its federal reserved fishing and water rights.  Hoopa may not be joined because Hoopa has sovereign immunity, which it has not and does not waive here.  In equity and good conscience, this action may not proceed without Hoopa.  Hoopa also seeks dismissal pursuant to FRCP 12(b)(7) and 19 for failure to join the Yurok Tribe or the Klamath Tribes of Oregon, each of whom are required

---

[1] Case Nos. 19-cv-00451-CL and 19-cv-00531-CL were consolidated on July 1, 2019.  Hoopa moves to dismiss both consolidated cases in their entirety.

MOTION TO DISMISS - 1

parties.  This motion is based on the court file, the accompanying memorandum, and the Declarations of Byron Nelson, Jr., Michael Orcutt, and Thane Somerville.

## MEMORANDUM IN SUPPORT

### I.    INTRODUCTION

Since time immemorial, Hoopa and its members have relied on the water and fish resources of the Klamath and Trinity Rivers, which both flow through its Reservation.[2]  Hoopa holds federal reserved fishing rights, which may be exercised on its Reservation, as well as federal reserved water rights.  Hoopa's Reservation is located within California and downstream from the Klamath Project that is operated by Reclamation.  Reclamation's Project operations substantially dictate the amount of flow that will be released into the Klamath River downstream for the benefit of fish and water resources and Hoopa's reserved rights.

Plaintiffs seek declaratory and injunctive relief that would effectively prohibit Reclamation from releasing any water through Klamath Project facilities into the Klamath River for instream fish flows or for protection of Hoopa's reserved rights.  Although Plaintiffs' water rights are junior to Hoopa's rights, Plaintiffs seek relief that would require their junior rights be satisfied in full regardless of impact on Hoopa's senior rights downstream or on ESA-listed (and other) species that rely on the water claimed by Plaintiffs.

As a federally recognized Indian tribe, Hoopa has sovereign immunity and cannot be joined as a party in this action without its express consent and express waiver of sovereign immunity.  Hoopa has not and does not waive its sovereign immunity here.  Rather, Hoopa moves to dismiss this action pursuant to FRCP 12(b)(7) and 19 for failure to join Hoopa and other required Klamath Basin tribes.

---

[2] The Trinity River is the largest tributary to the Klamath River.

## II.    FACTUAL BACKGROUND

### A.    Hoopa Retains Federal Reserved Rights to Take Fish Within Their Reservation from the Klamath and Trinity Rivers For Ceremonial, Subsistence, and Commercial Purposes to Support a Moderate Livelihood.

The United States located and set aside the Hoopa Valley Reservation on August 21, 1864. *Mattz v. Arnett*, 412 U.S. 481, 490, fn. 9 (1973); *Short v. United States*, 202 Ct. Cl. 870, 875-980 (1973) (discussing Reservation history). On June 23, 1876, President Grant issued an Executive Order formally setting aside the Reservation for "Indian purposes." *Short*, 202 Ct. Cl. at 877.  Traditional salmon fishing was one of the "Indian purposes" for which the Reservation was created. *Parravano v. Babbitt*, 70 F.3d 539, 546 (9th Cir. 1995). The Klamath and Trinity Rivers flow through the Reservation, which encompasses a 12-mile square historically inhabited by Hoopa people. *Karuk Tribe of California v. Ammon*, 209 F.3d 1366, 1370 (Fed. Cir. 2000).

In 1864, the United States determined the Reservation a suitable permanent homeland for Hoopa Indians for two principal reasons.  The Reservation is within the heart of the Tribe's aboriginal lands, which Hoopa Indians occupied and fished upon for generations.  *Parravano*, 70 F.3d at 542.  Hoopa Indians possessed fishing and hunting rights long before contact with white settlers and their salmon fishery was "not much less necessary to [their existence] than the atmosphere they breathed."  *Id.* at 542, *quoting Blake v. Arnett*, 663 F.2d 906, 909 (9th Cir. 1981).  Second, the Reservation set aside resources of the Klamath and Trinity rivers for Hoopa people to be self-sufficient and achieve a moderate living based on fish.  *United States v. Eberhardt*, 789 F.2d 1354, 1359 (9th Cir. 1986) (noting Indians' right to take fish from the Klamath River for ceremonial, subsistence, and commercial purposes); *Parravano*, 70 F.3d at 544-546 (recognizing Hoopa's reserved fishing rights).

In 1993, the Interior Solicitor published an opinion reaffirming Hoopa reserved fishing rights.  Solicitor Opinion M-36979, October 4, 1993.  Somerville Declaration, Exhibit A. Solicitor Leshy examined the "history of the reservations, the Indians' dependence on the Klamath and Trinity River fisheries, the United States' awareness of that dependence, and the federal intent to create the reservations in order to protect the Indians' ability to maintain a way of life, which included reliance on the fisheries."  *Id.*, at 3.  Solicitor Leshy found "it is now well-established that the Yurok and Hoopa Valley Indians have federal reserved fishing rights, created in the nineteenth century when the lands they occupied were set aside as Indian Reservations." *Id.* at 14-15.  "The . . . Hoopa Indians had a 'vital and unifying dependence on anadromous fish'".  *Id.* at 22.  "[T]he Government intended to reserve for the [Hoopa] a fishing right which includes a right to harvest a sufficient share of the resource to sustain a moderate standard of living."  *Id.* at 21; *Parravano*, 70 F.3d at 542-46 (citing Solicitor opinion with approval).

      B.  <u>Hoopa Retains a Federal Reserved Water Right to an Instream Flow of Water Sufficient to Support and Maintain Hoopa's Fishing Rights in the Klamath and Trinity Rivers.</u>

Creation of an Indian reservation by the United States includes an implied reservation of water sufficient to fulfill the purposes for which the reservation was created.  *Arizona v. California*, 373 U.S. 546, 599-601 (1963) ("United States did reserve the water rights for the Indians effective as of the time the Indian Reservations were created"); *Winters v. United States*, 207 U.S. 564, 576-77 (1908) (United States implicitly reserved water for Indian Reservation and protecting those unquantified tribal water rights against upstream irrigators); *United States v. Adair*, 723 F.2d 1394, 1408-1411 (9th Cir. 1983), cert denied, 467 U.S. 1252 (1984) (reservation for Klamath Tribes included water to maintain tribal fishing rights).  Water rights necessary to

fulfill the purposes of the reservation exist whether the reservation was created by treaty or executive action. *Arizona*, 373 U.S. at 598; *Parravano*, 739 F.3d at 544-547.

Traditional salmon fishing is one purpose for which the United States established the Reservation at its location where Hoopa could take and sustain itself on fish from the Klamath and Trinity Rivers. *Parravano*, 70 F.3d at 546 (finding salmon fishing one purpose for which Reservation was created); *Eberhardt*, 789 F.2d at 1359-60 (same); Solicitor's Opinion M-36979; *Adair*, 723 F.2d at 1409 ("one of the 'very purposes' of establishing the Klamath Reservation was to secure to the Tribe a continuation of its traditional hunting and fishing lifestyle").

Hoopa's water right for fishery purposes includes that amount of instream flow necessary to maintain the salmon fishery at harvestable quantities sufficient to fulfill the "moderate living" standard of Hoopa's federal reserved fishing rights. *Adair*, 723 F.2d at 1414-15 (holding Klamath Tribes "entitled to a reservation of water, with a priority date of immemorial use, sufficient to support exercise of treaty hunting and fishing rights"); *Colville Confederated Tribes v. Walton*, 647 F.2d 42, 48 (9th Cir. 1981), cert. denied, 454 U.S. 1092 (1981) (holding that fishing was one purpose for creation of Colville Reservation and that "the Colvilles have a reserved right to the quantity of water necessary to maintain the Omak Lake Fishery"); *Colville Confederated Tribes v. Walton*, 752 F.2d 397, 405 (9th Cir. 1985) (Walton II) (quantifying instream flow for reserved tribal fishing rights); *United States v. Anderson*, 591 F. Supp. 1, 5-6 (E.D. Wash. 1982) (fishing was one purpose for creating Spokane Indian Reservation and "the Tribe has the reserved right to sufficient water to preserve fishing in the Chamokane Creek."); *Greely v. Confederated Salish & Kootenai Tribes*, 712 P.2d 754, 764-66 (Mont. 1985) (tribal reserved rights may include water for fisheries). In 1995, Reclamation's Regional Solicitor opined that Hoopa has a fishery-related water right that includes "the right to certain conditions

of water quality and flow to support all life stages of fish."  Somerville Decl., Exh. B, pp 6-7.

*Baley v. United States*, 134 Fed. Cl. 619, 672-73 (2017) (Hoopa's water rights entitle the Tribe,

at a minimum, to sufficient water to prevent endangerment of their tribal trust fishing resource).[3]

Courts have previously recognized Hoopa's federal reserved water rights and the priority

that Hoopa's rights have over Plaintiffs' rights.  *Klamath Water Users Association v. Patterson*,

204 F.3d 1206, 1214 (9th Cir. 2000), cert. denied, 531 U.S. 812 (2000) (Reclamation "has a

responsibility to divert the water and resources needed to fulfill the [Hoopa Valley] Tribes'

rights, rights that take precedence over any alleged rights of the Irrigators"); *Kandra v. United

States*, 145 F. Supp. 2d 1192, 1197, 1211 (D. Or. 2001) (denying Klamath irrigators request to

enjoin Reclamation's 2001 operations plan to release flow for protection of salmon and senior

tribal rights); *Baley*, 134 Fed. Cl. at 668-680 (finding Klamath irrigators were not entitled to

receive water, or compensation for non-delivery of water, in 2001 due to Hoopa's senior water

rights); *Hoopa Valley Tribe v. NMFS*, 230 F. Supp. 3d 1106, 1141-42 (N.D. Cal. 2017) (finding

that injunction requiring additional water deliveries in Klamath "would also help protect

[Hoopa's] fishing rights, which must be accorded precedence over irrigation rights").  In

contrast, no case has ever held or suggested that Plaintiffs' junior rights to receive water

deliveries from the Klamath Project may take precedence or be satisfied regardless of impacts to

ESA-listed species or to senior tribal rights.

Reserved water rights to support Indian fishing rights are created by federal law and are

not subject to state law water rights doctrines.  *Adair*, 723 F.2d at 1411, fn. 19.  Such rights carry

a priority date of the date that the federal reservation was established, at the latest.  *Id.* at 1412-

14; *Arizona*, 373 U.S. at 600.  Thus, Hoopa's rights here (with an 1876 priority date at the latest)

---

[3] The Federal Circuit heard oral argument in *Baley* on July 8, 2019.  No decision has issued.

are senior to Plaintiffs' rights. *Baley*, 134 Fed. Cl. at 670. Hoopa's federal reserved water right

to maintain its federal reserved fishing rights is non-consumptive. *Adair*, 723 F.2d at 1411.

Non-consumptive reserved rights to maintain and preserve Hoopa's fishing rights are entitled to

protection from upstream diversions even if not quantified. *Patterson*, 204 F.3d at 1214; *Joint*

*Board of Control v. United States*, 832 F.2d 1127, 1132 (9th Cir. 1987), cert. denied 486 U.S.

1007 (1988) (BIA had authority and duty to establish and implement minimum stream flows and

water levels for Indian fishery before providing water to project irrigators, despite lack of

quantification of Indian rights); *Kittitas Reclamation Dist. v. Sunnyside Valley Irrigation Dist.*,

763 F.2d 1032, 1033 (9th Cir. 1985), cert. denied, 474 U.S. 1032 (1985) (affirming order

mandating release of water to preserve salmon eggs threatened by low post-irrigation season

water flows, for purpose of protecting tribal fishing rights). *Winters* also involved federal

recognition and enforcement of unquantified federal reserved rights against junior upstream

diversions. *Winters*, 207 U.S. at 576-77.

Hoopa's fishing right entitles it to harvestable quantities of salmon to support Hoopa's

ceremonial and subsistence needs and commercial fishing opportunities consistent with the

moderate living standard. *Eberhardt*, 789 F.2d at 1359. There also must be sufficient escapement

of spawners to perpetuate fish runs to meet the moderate living standard. *Parravano*, 539 F.3d at

543-547. Hoopa's federal reserved water right consists of instream flow necessary to maintain

its federal reserved fishery. *Adair*, 723 F.3d at 1410-11; *Walton*, 647 F.2d at 48; *Joint Board*,

832 F.2d at 1131-32; Somerville Declaration, Exhibit B, pp. 6-7 (Hoopa water right includes "the

right to certain conditions of water quality and flow to support all life stages of fish").

Plaintiffs challenge Reclamation's plan for operating the Klamath Project (and releasing

water for downstream fish) consistent with its ESA obligations. Reclamation is legally obligated

to operate the Project in compliance with the ESA and provide downstream flows necessary to
avoid jeopardy to SONCC coho.  But in addition, the quantity of Hoopa's federal reserved water
right is at least co-extensive with (and certainly greater than) the amount of water that is
necessary for Reclamation to comply with its obligations under the ESA to ensure the survival
and recovery of ESA-listed salmon (i.e., SONCC coho), a tribal trust species, in the Klamath
River.  *Baley*, 134 Fed. Cl. at 672-73.  Hoopa's fishing rights entitle it to more than just the
presence of salmon in the river, but rather to sustainable harvestable quantities.  *Parravano*, 539
F.3d at 546-47; *Eberhardt*, 789 F.2d at 1359-1362; *United States v. Washington*, 853 F.3d 946,
958, 965-66 (9th Cir. 2017)*, affirmed per curiam*, 584 U.S. ___ (2018) ("moderate living"
standard requires protection of continued supply of fish).  Plaintiffs' requested relief, if granted,
would prevent releases of water from passing through Project facilities for purposes of providing
necessary flows to keep SONCC coho in the Klamath River from going extinct. These instream
flows are also necessary for non-listed Chinook.  Plaintiffs' requested relief would, without
Hoopa's presence, directly impair Hoopa's senior entitlement to water for fish.  *See* Nelson
Declaration, para. 15-16, 19-20; Orcutt Declaration, para. 24-28, 30.

      C.   <u>Reclamation's Project Operations Cause Direct and Significant Harm to
Hoopa's Reserved Fishing and Water Rights.</u>

      Subsequent to the Reservation's establishment, anadromous fish of the Klamath River,
including Chinook and Coho, have suffered significant harm from upstream impacts, including
the Project, which diverts large amounts of water that would otherwise flow through the Klamath
River for the benefit of salmon.  *PCFFA v. U.S. Bureau of Reclamation*, 426 F.3d 1082, 1085-87
(9th Cir. 2005).  These impacts include loss of spawning and rearing habitat, increased water
temperatures, and prevalent fish disease that thrives in conditions where fish must crowd
together in low flows and increased water temperatures.  *Id.; Hoopa Valley Tribe*, 230 F. Supp.

at 1112 (enjoining Reclamation to release water to mitigate disease impacts to downstream Coho, which were also suffered by Chinook).

Federally owned Link River Dam, constructed for Project purposes in 1917, regulates Klamath River flows, blocking the majority of natural flow from reaching the Klamath River and the Reservation and depriving fish of water necessary for habitat and life functions.   Project operations change the quantity of water that flows in the Klamath River as well as the timing of such flows in a way that varies from a natural flow regime.  Water released from Link River Dam (a Project facility) proceeds through the downstream and privately-owned Klamath Hydroelectric Project ("KHP") and ultimately into the Klamath River at Iron Gate Dam, which is part of the KHP and the furthest dam downstream on the River.  The KHP has minimal reservoir storage capacity and, since 1996, flows in the Klamath River downstream of Iron Gate Dam have primarily been a function of the minimum water releases ordered by Reclamation for ESA compliance and tribal trust purposes from upstream Link River Dam. *PCFFA  v. U.S. Bureau of Reclamation*, 138 F. Supp. 2d 1228, 1232 (N.D. Cal. 2001); *Patterson*, 204 F.3d  at 1212-13 (Reclamation controls releases from Link River Dam to provide flow in Klamath River).

Since 1996, Reclamation has operated the Project with operating plans that identify minimum flow levels in the Klamath River downstream of Iron Gate Dam for salmon protection. *PCFFA*, 138 F. Supp. 2d at 1232. Flows released from Link River Dam and ultimately from Iron Gate Dam downstream contribute the majority of instream flows utilized by fish in the Klamath River between Iron Gate Dam and the Trinity River confluence at the Hoopa Reservation. *PCFFA*, 426 F.3d at 1085 ("The flows past the Iron Gate dam into the Klamath River determine to a great extent the quantity of water available in the river.").  This is especially true in comparably dry years.  Orcutt Decl., para. 8.  Following a massive anadromous fish kill that

occurred in the Klamath River in 2002[4], a report found that water releases from Iron Gate Dam made up 88% of the flow in the Klamath River 60 miles downstream and 73% of the flow in the Klamath River 130 miles downstream of Iron Gate Dam. Somerville Decl., Exh. C, p. 16-17.

Coho are one species of anadromous salmon that historically thrived in the Klamath River that was harvested by Hoopa people. *Hoopa Valley Tribe*, 230 F. Supp. 3d at 1137 (describing Hoopa reliance on coho for "their subsistence, cultural identity, rituals, and economic well-being"). In 1940, SONCC coho salmon populations ranged between 150,000 and 400,000 naturally spawning fish annually. 62 Fed. Reg. 24588 (May 6, 1997). By 1997, this number had dropped to approximately 10,000 naturally produced adults. *Id.* Due to their depressed condition, the National Marine Fisheries Service (NMFS) listed coho in the Klamath River as threatened under the ESA. *Id.* NMFS found depletion, storage, and alteration of natural flows, with the associated loss of habitat, increase in water temperature, and increased disease risks to be a major factor leading to the depressed populations. *Id.* at 24593-24595.

Being listed as "threatened," the ESA restricts unauthorized "take" of coho in the Klamath River, including harvest, in order to avoid jeopardy and promote species recovery. 16 U.S.C. § 1538. The depleted populations and ESA take restrictions have significantly limited the Tribe's ability to harvest coho since 1997. However, the Project impacts, ESA-listing, and currently depressed status of coho, do not affect, as a legal matter, Hoopa's federal reserved rights to harvest coho or the United States' affirmative obligation to act to preserve and restore that fishery for the Tribe's benefit. *Parravano*, 70 F.3d at 547 ("the Tribes' federally reserved

---

[4] In 2002, following Reclamation's resumption of Project deliveries and corresponding diminished Klamath River flows, an unprecedented fish kill of over 33,000 anadromous fish occurred in the lower Klamath River. *PCFFA*, 426 F.3d at 1089.

fishing rights are accompanied by a corresponding duty on the part of the government to preserve those rights"); *Washington*, 853 F.3d at 965-66 (holding State of Washington violated treaties promising an adequate supply of fish to provide a "moderate living" to Tribes by building culverts that diminished supply of anadromous fish for harvest).

Project impacts on natural flows and anadromous salmon in the Klamath River are well-documented.  In 2013, NMFS prepared a Biological Opinion for the Project (the "2013 BiOp"), which confirmed that Project deliveries significantly impact flow levels and anadromous fish habitat in the Klamath River downstream of Iron Gate Dam.[5]  Fish disease resulting largely from depleted flow levels caused by Project diversions is a significant factor limiting survival and recovery of coho.  2013 BiOp, pp. 220, 222, 341 ("disease effects . . . likely have a substantial impact on the survival of juvenile coho salmon in [the Upper Klamath River reach])."  "Of all the adverse effects of [Project operations], NMFS believes that the disease risk from *C. shasta* is the most significant to coho salmon."  *Id.*, p. 377.  "NMFS believes the high incidence of disease in certain years within the mainstem Klamath River results largely from the reduction in magnitude, frequency, and duration of mainstem flows from the natural flow regime under which coho salmon evolved."  *Id.*, p. 341.  This change in natural flow primarily results from the Project, which blocks flows at Link River Dam from entering the Klamath River.

Reclamation's Project operations under the 2013 BiOp, combined with extremely dry conditions, led to recorded juvenile disease rates of 81% in 2014 and 91% in 2015.  *Hoopa Valley Tribe*, 230 F. Supp. 3d at 1112.  Despite these extraordinary impacts, Reclamation did not modify Project operations to address the disease outbreak and then vigorously opposed (with

---

[5]The 2013 BiOp is available at:
https://www.fws.gov/klamathfallsfwo/news/2013%20BO/2013-Final-Klamath-Project-BO.pdf

MOTION TO DISMISS - 11

support from Plaintiffs here) Hoopa's request for additional protective flows for fish in subsequent litigation. *Id.* at 1113-1146. Ultimately, the Court ordered an injunction requested by Hoopa over Reclamation's (and Plaintiffs) objection, which required Reclamation to provide additional flow downstream for the protection of SONCC coho from disease impacts. *Id.* at 1146. That injunction remained in effect until NMFS released the new Biological Opinion in March 2019 that evaluated Reclamation's Project operations challenged here.[6]

Impacts to downstream salmon associated with Project operations have caused substantial litigation between Hoopa, Reclamation, and Plaintiffs, in which courts have unanimously confirmed Reclamation's legal obligation to operate the Project in a manner that satisfies its ESA obligations and preserves senior tribal rights. *Baley*, 134 Fed. Cl. at 679-80 (denying compensation to Klamath Basin irrigators for water used for ESA and tribal trust purposes in 2001 because tribal water rights are senior and consist of at least the amount of water necessary for ESA compliance); *Hoopa Valley Tribe*, 230 F. Supp. 3d at 1146 (enjoining Reclamation to release additional flow into Klamath River for protection of ESA-listed coho); *Patterson*, 204 F.3d at 1214 (Reclamation must release water from Link River Dam as needed to fulfill downstream Tribes' rights "that take precedence over any alleged rights of the Irrigators"); *Kandra*, 145 F. Supp. 2d at 1204-06 (denying irrigators' request to enjoin Reclamation's 2001 operations plan, finding that "Reclamation . . . has a responsibility to divert the water and resources needed to fulfill the Tribes' rights"); *PCFFA*, 138 F. Supp. 2d at 1251 (enjoining

---

[6] Plaintiffs have not sued NMFS and do not challenge the substance of the 2019 BiOp in this litigation. To avoid liability under the ESA, Reclamation must comply with terms and conditions of the 2019 BiOp as well as its statutory obligations under the ESA. *Bennett v. Spear*, 520 U.S. 154, 169-70 (1997) (explaining that federal agencies (like Reclamation) are effectively compelled to comply with requirements of Biological Opinions due to the significant liability that may result from unlawfully taking species listed under the ESA). Plaintiffs' requested relief would directly conflict with Reclamation's continuing legal obligations under the ESA.

Reclamation from making Project deliveries when flows at Iron Gate Dam drop below levels

necessary for coho). Reclamation's legal duty to release water for senior tribal rights and its

ESA obligations takes precedence over any obligation to make irrigation deliveries. *Id.*

Plaintiffs' lawsuit here seeks an order of declaratory and injunctive relief that would directly

conflict with these prior precedents and that would effectively reverse the established priority of

water rights on the Klamath River – requiring full and complete satisfaction of Plaintiffs' junior

rights regardless of impact on Hoopa's senior rights and regardless of impact that such diversions

have on downstream fish, including those protected under the ESA.

Chinook salmon, another anadromous salmon species harvested by Hoopa with similar

biological and habitat needs as coho, also suffer impacts from the low flows and unnatural flow

regime caused by Project operations. Chinook were the primary victims of the 2002 fish kill that

followed resumption of Project deliveries. *PCFFA*, 426 F.3d at 1089. In 2014 and 2015, 81%

and 91% of sampled juvenile Chinook (used as a surrogate to measure disease levels in coho)

were infected with *C. shasta* disease primarily in reaches of the Klamath River between Iron

Gate Dam and the Reservation. *Hoopa Valley Tribe*, 230 F. Supp. 3d at 1112. In 2019,

California enacted regulatory protections and harvest restrictions for Spring Chinook in the

Klamath River due to their increasingly imperiled status. Orcutt Declaration, para. 21. In 2018,

NMFS published a 90-day finding on a petition to list the Upper Klamath-Trinity Rivers (UKTR)

Chinook salmon as threatened or endangered under the ESA. 83 Fed. Reg. 8410 (2/27/18).

NMFS identified disease, associated with low flows and high water temperatures, as a primary

threat to Chinook that warranted further investigation into the possible ESA-listing. 83 Fed.

Reg. 8413. In 2017, due to depressed Klamath River Fall Chinook (KRFC) stocks, the Pacific

Fishery Management Council (PFMC) closed all fishing in the Klamath Management Zone and

MOTION TO DISMISS - 13

severely restricted other ocean fisheries to the north and south.  PFMC's combined tribal harvest allocation for adult KRFC in 2017 for the Hoopa and Yurok Tribes was limited to 814 fish to be divided amongst the two tribes, who have a combined membership of approximately 10,000 members.  That tribal harvest allocation equated to less than one fish per ten tribal members for all of 2017.  Orcutt Declaration, para. 14.

Development and operation of the Project has helped decimate a once-thriving fishery to near extinction.  Flows in the Klamath River at and upstream of the Reservation are governed primarily by Reclamation's Project operations and its releases out of Link River Dam and the subsequent releases from Iron Gate Dam.   Reclamation's releases for protection of coho, required by the ESA, also help Chinook.  Plaintiffs' suits and requested relief now seeks to declare unlawful and preclude most, perhaps all, water releases for fish.  Such relief would have a devastating, irreparable impact on the fish resources relied on and reserved by Hoopa, which are already in an imperiled condition due to the Project and other causes.  Orcutt Declaration, para. 26-27, 30.  Plaintiffs' suit and requested relief would directly impair Hoopa's reserved rights and cause significant prejudice to Hoopa; thus, this case may not proceed in the absence of Hoopa who is a required party that cannot be joined due to its sovereign immunity.

D.  <u>Plaintiffs Seek to Prevent Instream Water Releases for Fish, Which Would Impede Not Only ESA Compliance but Hoopa's Reserved Rights.</u>

Plaintiffs challenge Reclamation's 2019 Project operations plan, approved in a BiOp issued by NMFS and FWS in March 2019, which allocates specific amounts of instream flow to Klamath River for fish.  Such instream flows are required by the ESA (through the BiOp) and simultaneously fulfill, in part, Hoopa's senior reserved rights. [7]

---

[7] On July 24, 2019, Hoopa submitted a 60-day notice of intent to sue Reclamation and NMFS because the flows provided in Reclamation's operations plan, and approved by NMFS in the

Plaintiffs claim that Reclamation's releases of water for downstream instream purposes (consisting of both ESA compliance and fulfillment of Hoopa's reserved rights) are unlawful due to alleged impact to the Plaintiffs' junior water rights. Klamath Irrigation District ("KID") seeks "injunctive relief enjoining Defendants from using water stored in UKL reservoir for instream purposes during KID's irrigation season." Dkt. #4, para 68. KID seeks "injunctive relief enjoining Defendants from limiting the amount of water that KID [and its members] are able to beneficially use under their water rights." *Id.*, para. 70. Also challenging the lawfulness of Defendants' instream water releases, Shasta View[8] seeks broad declaratory and injunctive relief that would prevent Defendants from operating, or directing "the operation of the Klamath Project and related facilities for purposes other than irrigation, livestock, and domestic uses" at any time of the year. Dkt. #19, pp. 32-33. Shasta View further seeks an injunction against any operation of the Klamath Project that "curtails or limits the supply of state water rights to Water Users or Association members and their patrons." *Id.* The relief sought, if granted, would effectively preclude Reclamation from releasing any water from UKL or through Link River Dam for instream fish purposes into the Klamath River. Compliance with such an order would require Reclamation to violate the ESA and would simultaneously unlawfully prevent fulfillment of Hoopa's reserved rights, effectively subordinating (as a practical matter) Hoopa's senior rights to Plaintiffs' junior rights upstream. Any proceeding that could result in such an extreme and devastating impact on Hoopa and its rights cannot go forward in Hoopa's absence. *See* Nelson Declaration; Orcutt Declaration.

---

2019 BiOp, violate the ESA and APA for failing to adequately protect SONCC coho. Somerville Decl., Exh. D. Absent corrective measures by NMFS and Reclamation in the form of additional flows, Hoopa may sue and seek injunctive relief to protect SONCC coho from irreparable harm.

[8] "Shasta View" refers to all Plaintiffs in Case No. 19-cv-531, consolidated here.

MOTION TO DISMISS - 15

## III.    ARGUMENT AND AUTHORITY

### A.  Legal Standard for Rule 12(b)(7) Motion.

FRCP 12(b)(7) authorizes dismissal of an action for failure to join a party required to be joined by FRCP 19.  To determine whether a case should be dismissed under Rule 19, "a court must undertake a two-part analysis:  it must first determine if an absent party is [required]; then, if as here, the party cannot be joined due to sovereign immunity, the court must determine whether the party is 'indispensable' so that in 'equity and good conscience' the suit should be dismissed."  *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990).  "The inquiry is a practical one and fact specific." *Id*

A party is required pursuant to FRCP 19(a)(1) if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Here, Hoopa is a required party pursuant to Rule 19(a)(1)(B)(i) because Hoopa claims an interest relating to the subject of the action [i.e., water and fish resources of the Klamath River] and is so situated that disposing of the action in Hoopa's absence would as a practical matter, impair or impede Hoopa's ability to protect its interest.  Hoopa is separately required pursuant to Rule 19(a)(1)(B)(ii) because disposing of the action in Hoopa's absence would leave Reclamation subject to inconsistent obligations because of Hoopa's interest.  Hoopa is also

required under Rule 19(a)(1)(A) because Plaintiffs cannot obtain complete relief in Hoopa's absence. Although Hoopa is required, Hoopa cannot be joined due to its sovereign immunity. *Michigan v. Bay Mills Indian Community*, 572 U.S. ____ (2014) (reaffirming tribal sovereign immunity as settled law); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) (Indian tribes enjoy sovereign immunity and cannot be sued without unequivocal waiver or Congressional abrogation).

If a required party cannot be joined, the Court must consider whether the case may proceed in the party's absence or whether the case should be dismissed. This decision is case specific and based on "equity and good conscience." FRCP 19(b). FRCP 19(b) sets forth four non-exclusive factors for the Court to consider to determine whether to dismiss the case: (1) to what extent a judgment rendered in the person's absence might prejudice that person or the existing parties; (2) the extent to which any prejudice could be lessened or avoided; (3) whether a judgment rendered in the person's absence would be adequate; and (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder. None of the factors, which partially overlap with the necessary party analysis, are determinative.

Sovereign immunity of a required party weighs heavily in favor of dismissal. *Republic of Philippines v. Pimentel*, 533 U.S. 851 (2008). Where an Indian tribe that cannot be joined due to sovereign immunity is required, courts in the Ninth Circuit regularly order dismissal. *Dine Citizens Against Ruining Our Env't v. BIA*, 2019 U.S. App. LEXIS 22407 (9th Cir., July 29, 2019) (herein, "*DCAR*") (dismissal required due to inability to join required tribal entity); *White v. Univ. of Cal.*, 765 F.3d 1010 (9th Cir. 2014) (same); *Friends of Amador County v. Salazar*, 554 Fed. Appx. 562 (9th Cir. 2014) (same); *Dawavendewa v. Salt River Project Agric. Improvement and Power Dist.*, 276 F.3d 1150 (9th Cir. 2002); (same); *Am. Greyhound Racing v. Hull*, 305

F.3d 1015 (9th Cir. 2002) (same); *Shermoen v. United States*, 982 F.2d 1312 (9th Cir. 1992) (same); *Union Pac. R.R. Co. v. Runyon*, 320 F.R.D. 245 (D. Or. 2017) (same).  Dismissal is often required in cases involving an absent party's competing claims to finite natural resources. *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990); *Skokomish Indian Tribe v. Goldmark*, 994 F. Supp. 2d 1168 (W.D. Wash. 2014).  Here, this case addresses Plaintiffs' claims to waters of the Klamath River that are junior in priority to Hoopa's competing senior rights.

In equity and good conscience, this case cannot proceed without Hoopa whose sovereign immunity prevents it from being joined.  *Id.*  A judgment rendered in Hoopa's absence would significantly prejudice its interests in fulfillment and protection of its reserved fishing and water rights.  There is no way this prejudice can be lessened or avoided because this case involves conflicting and mutually exclusive interests in finite natural resources.  Should Plaintiffs prevail, Reclamation will have conflicting legal obligations to Hoopa (and under the ESA) which will certainly lead to further litigation.  Plaintiffs and their members will not be left without a forum, as they may pursue a monetary damage claim in the United States Court of Federal Claims ("CFC"), which would not require Hoopa's presence, if they contend that Reclamation violated their contract or Fifth Amendment rights.

      B.    <u>Hoopa Is A Required Party Because the Relief Sought by Plaintiffs Would Impair or Impede, As A Practical Matter, Hoopa's Reserved Fishing Rights and Senior Reserved Water Rights Without Their Participation.</u>

A party is required to be joined under Rule 19 if it claims a legally protected interest in the subject matter of the lawsuit and is so situated that the litigation as a practical matter would impair or impede their ability to protect it.  *Hull*, 305 F.3d at 1023; *Shermoen*, 982 F.2d at 1317. The finding that a party is required is predicated only on that party having a claim to an interest. *Shermoen*, 982 F.2d at 1317.  The person need not have a vested interest to be required under

Rule 19(a).  *Clinton v. Babbitt*, 180 F.3d 1081 (9th Cir. 1999).  "Just adjudication of claims requires that courts protect a party's right to be heard and to participate in adjudication of a claimed interest, even if the dispute is ultimately resolved to the detriment of that party. *Shermoen*, 982 F.2d at 1317.  "That the Tribes could litigate the issue [in the future] free of the constraints of res judicata and collateral estoppel does not by itself excuse their absence as necessary parties. Otherwise Rule 19(a) would become a nullity . . . ."  *Hull*, 305 F.3d at 1024.

    1.   <u>Hoopa's Interests in Fish and Water of the Klamath River Would be Directly Impaired or Impeded as A Practical Matter by Plaintiffs' Litigation.</u>

Hoopa has a legally protected interest in federal reserved fishing and senior water rights that would be directly impaired and impeded if the Court were to grant Plaintiffs' requested relief.  *See* Orcutt Decl.; Nelson Decl.  For example, KID requests an order "enjoining [Reclamation] from limiting the amount of water that [Plaintiffs] are able to beneficially use under their water rights."  Dkt. #4, para. 70.  Shasta View seeks an order barring Reclamation from operating or directing the operation of the Klamath Project and related facilities for purposes other than irrigation, livestock, and domestic uses.  Dkt. #19, p. 32. If Plaintiffs prevail, Reclamation could be enjoined from releasing or allowing any water to flow through Link River Dam (a Project facility) for any downstream instream purpose, such as protection of fish (whether ESA-listed or not) or fulfillment of Hoopa's federal reserved rights.  Such an order would directly and severely impair Hoopa's interests in fish and water resources in the Klamath River.  Orcutt Decl., para. 25-28, 30; Nelson Decl., para. 15-16, 20.  Thus, Hoopa is a required party.  *DCAR*, 2019 U.S. App. LEXIS 22407 at *18 (party has legally protected interest at stake "where the effect of a plaintiff's successful suit would be to impair a right already granted").

This case addresses, as a practical matter, Plaintiffs' claims to the finite resource of

waters of the Klamath River, which compete with and are mutually exclusive to Hoopa's senior rights. Plaintiffs do not ask this Court to quantify Hoopa's water rights or adjudicate the relative entitlements amongst the respective interstate water claimants. Yet Plaintiffs seek an order that would, without any interstate adjudication or quantification of respective rights, prohibit the release of water from Link River Dam into the Klamath River for instream fish flows. Such an order would directly prevent fulfillment of Hoopa's legally protected senior rights.

In *Verity*, the Ninth Circuit found that absent tribes were required parties to a suit challenging and seeking reallocation of ocean fishing harvest quotas. "The absent tribes had an interest in the suit because 'any share that goes to the [plaintiff] Makah must come from other tribes." *Verity*, 910 F.2d at 559. "Claims for allocation of a limited resource do not present a situation in which multiple parties share compatible interests, but rather are more analogous to a request by a beneficiary to allocate a common fund." *Goldmark*, 994 F. Supp. 2d at 1187-88. Where granting one share of a resource would come out of the share of the absent party, "such circumstances 'present a textbook example . . . where one party may be severely prejudiced by a decision in his absence." *Id.* at 1188; *Hood ex rel. Mississippi v. City of Memphis*, 533 F. Supp. 2d 646 (N.D. Miss. 2008) (Tennessee was necessary party to Mississippi's suit to enjoin Memphis from pumping groundwater claimed by Mississippi; the Court could not grant relief without Tennessee in suit because the states' respective rights in aquifer were not determined).

Hoopa's federal reserved water rights are senior in priority to those of Plaintiffs and prior appropriation principles require fulfillment of Hoopa's rights prior to any of Plaintiffs' rights. *Baley*, 139 Fed. Cl. at 670-72. The relief sought by Plaintiffs here would turn those principles on their head – requiring Plaintiffs' junior rights to be satisfied before any water could be released for Hoopa's downstream senior rights or for ESA compliance. The law does not support

MOTION TO DISMISS - 20

Plaintiffs' claims.[9]  But due to the significant prejudice that this case would have on Hoopa's interests, the Court cannot proceed to adjudicate Plaintiffs' claims in Hoopa's absence.

    2.  <u>Reclamation Cannot Adequately Represent Hoopa's Interests.</u>

Hoopa is not adequately represented here by Reclamation.[10]  First, Reclamation's interest in this litigation is not the same as Hoopa's.  Second, Reclamation has conflicts of interest due to competing responsibilities to Plaintiffs as well as competing duties to other Klamath Basin tribes.  Third, Reclamation has repeatedly failed to protect Hoopa's rights from impacts arising from the Klamath Project and has been willing to negotiate against Hoopa's rights without its consent or approval.  *See* Nelson Decl., para. 22-25; Orcutt Decl., para 29.

In the Ninth Circuit, a non-party will be deemed adequately represented by existing parties only if: (1) the interests of the existing parties are such that they would undoubtedly make all of the non-party's arguments; (2) the existing parties are capable of and willing to make such arguments; and (3) the non-party would offer no necessary element to the proceeding that existing parties would neglect.  *Shermoen*, 982 F.2d at 1318.  "In assessing an absent party's necessity under Rule 19(a), the question whether that party is adequately represented parallels the question whether a party's interests are so inadequately represented by existing parties as to permit intervention of right under Rule 24(a)."  *Id*.  "The requirement of [Rule 24(a)] is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of

---

[9] Plaintiffs have been wholly unsuccessful making similar claims.  *Baley*, 134 Fed. Cl. at 679-80 (Reclamation's decision in 2001 to withhold water from plaintiffs to satisfy ESA and tribal trust obligations was not improper taking of plaintiffs' water rights); *Patterson*, 204 F.3d at 1214 (Reclamation must release water from Link River Dam to fulfill downstream Tribes' rights "that take precedence over any alleged rights of the Irrigators"); *Kandra*, 145 F. Supp. 2d at 1204-06 (denying irrigators' request to enjoin Reclamation's 2001 operations plan, finding "Reclamation . . . has a responsibility to divert the water and resources needed to fulfill the Tribes' rights").

[10] In this section, "Reclamation" collectively refers to all Federal Defendants named herein.

making that showing [of inadequate representation] should be treated as minimal." *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538, n. 10 (1972).

Here, Reclamation will not "undoubtedly" make all of Hoopa's arguments.  Hoopa is directly interested in how this proceeding would affect, as a practical matter, its federal reserved fishing and water rights, which are central to its culture, subsistence, and very existence. Reclamation has a different general interest in defending their decisions made pursuant to the ESA and APA.  *DCAR*, 2019 U.S. App. LEXIS 22407 at *22-29 (United States not adequate representative for tribal entity where it had a different, more general, interest in defending compliance with federal law); *Murphy Co. v. Trump*, 2017 U.S. Dist. LEXIS 35959 (D. Or., Mar. 14, 2017) (United States' representation of intervenors' interests inadequate where federal defendants' broader interests impair their ability to adequately represent intervenor's narrower interests); *Kickapoo Tribe of Oklahoma v. Lujan*, 728 F. Supp. 791 (D. D.C. 1990) (while United States had interest in defending agency authority, the Tribe "has an interest in its own survival, an interest which it is entitled to protect on its own").  The practical effect of Plaintiffs' requested relief would directly impair Hoopa's federal reserved fishing and water rights and the fish and water resources that Hoopa relies upon.  *See* Nelson Decl.; Orcutt Decl.  Only Hoopa can adequately present and defend its distinct interest in the affected fish and water resources as well as its interest in sovereign immunity.

The divergence of interests and potential arguments has already arisen here as Reclamation rejected Hoopa's request that Reclamation file a motion to dismiss Plaintiffs' litigation pursuant to FRCP 12(b)(7) for failure to join Hoopa and other required tribes. Somerville Declaration, para. 2-3.  Despite a shared general interest in having Plaintiffs' suits dismissed, Reclamation's attorneys cited a pending Ninth Circuit appeal in which the United

States has argued that it is always the only necessary Defendant in cases arising under the APA that challenge federal compliance with environmental laws such as NEPA and the ESA. In that case, the District Court rejected the United States' argument and dismissed the action for failure to join a required Indian tribe. *Dine' Citizens Against Ruining Our Environment v. Bureau of Indian Affairs*, 2017 U.S. Dist. LEXIS 147432 (D. Az., Sept. 17, 2017). On July 29, 2019, the Ninth Circuit affirmed the District Court's Rule 19 dismissal, agreeing that the United States was not an adequate representative of the tribal entity and that the public rights exception did not apply.[11] *DCAR*, 2019 U.S. App. LEXIS 22407, at \*\*22-43.

Here, Reclamation declined Hoopa's request to move to dismiss under FRCP 12(b)(7) and stated they might oppose any such motion. Somerville Declaration, para. 3. Reclamation's position was not based on the merits of the proposed 12(b)(7) motion, facts specific to this case, or the merits of this litigation, but was based instead on the U.S. Department of Justice's general interest in taking consistent positions in litigation throughout the nation. *Id.* Reclamation also declined to file a motion to dismiss under FRCP 12(b)(6) in conflict with interests of Klamath

---

[11] The United States' argument in *DCAR* was an unsupported attempted expansion of the "public rights" doctrine that allows, where appropriate, cases to proceed despite Rule 19 concerns. Courts narrowly apply the "public rights" doctrine to situations where the litigation "transcend[s] the private interests of the litigants and seek[s] to vindicate a public right." *Kescoli*, 101 F.3d at 1311. If the requested relief would operate to destroy an absent party's protected legal rights or entitlements, the public-rights doctrine is inapplicable and dismissal for nonjoinder under Rule 19 is required. *Id.* Here, the "public rights" doctrine is wholly inapplicable because Plaintiffs seek to protect their private rights. Dkt. #4, para. 1 (Plaintiff "brings this action . . . to protect their private property rights"); Dkt. #19, para. 38-41 (alleging harm to economic interests and private rights). Plaintiffs seek to elevate their own private rights above Hoopa's rights without joining Hoopa. *Kescoli*, 101 F.3d at 1311-12 (finding plaintiff's suit was primarily private in nature, focused on private rights, and rejecting application of public rights doctrine). Proceeding with such a suit, which threatens to destroy Hoopa's legal entitlements in Hoopa's absence, is not permissible under FRCP 19 and Plaintiffs' suits must be dismissed. *DCAR*, 2019 U.S. App. LEXIS 22407, at \*\*36-42 (rejecting "public rights" doctrine and finding dismissal appropriate under Rule 19); *Shermoen*, 982 F.3d at 1319 (same); *Amador County*, 554 Fed. Appx. at 566 (same); *Kescoli*, 101 F.3d at 1311-12 (same); *Hull*, 305 F.3d at 1025-27 (same).

Basin tribes.  Somerville Declaration, para 2-4.  Reclamation does not have the same interests as Hoopa and will not undoubtedly make all Hoopa's arguments.  *Amador County*, 554 Fed. Appx. at 564 (United States failure to move for dismissal indicated divergence between tribal and federal interests).  Without Hoopa's presence, Reclamation could continue to take litigation and settlement positions (based on general policies unrelated to Hoopa interests) that fail to adequately reflect and protect Hoopa's specific interests.  For these and other reasons below, Reclamation cannot adequately represent Hoopa's interest in this litigation.

Reclamation is not capable or willing to make all of Hoopa's arguments.  The United States is not an adequate representative for an absent Tribe where a specific conflict of interest exists between the United States and the Tribe in the context of the case at issue.  *Alto v. Black*, 738 F.3d 1111, 1128 (9th Cir. 2013) ("To be sure, conflicts can arise between the United States and an Indian tribe; when they do, the government cannot adequately represent the Tribe's interests [though BIA was found to be an adequate representative in *Alto* due to no apparent conflict]").  Conflicts of interest preclude a finding of adequate representation where Federal Defendants owe trust duties to multiple tribes with conflicting interests in the litigation. *Manybeads v. United States*, 209 F.3d 1164, 1166-67 (9th Cir. 2000); *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1460 (9th Cir. 1994); *Pit River Home and Agricultural Coop. Ass'n v. United States*, 30 F.3d 1088 (9th Cir. 1994); *Conf. Tribes of the Chehalis Indian Reservation v. Lujan*, 928 F.2d 1496, 1500 (9th Cir. 1991); *Shermoen*, 982 F.3d at 1318; *Verity*, 910 F.2d at 560.

Reclamation cannot adequately represent Hoopa's interests here because a conflict exists relating to Reclamation's trust duties to provide water to satisfy the rights of the respective upstream and downstream Klamath Basin tribes.  Hoopa (and Yurok) are downstream tribes that have rights and interests in water being released from Link River Dam for salmon.  The upstream

Klamath Tribes have rights and interests in water being retained in UKL for protection of suckers. *Baley*, 134 Fed. Cl. at 671. Broadly speaking, water kept in UKL benefits suckers, potentially to the detriment of salmon downstream; in contrast, water released downstream cannot be used for needs of suckers in UKL after its release. *Hoopa Valley Tribe*, 230 F. Supp. 3d at 1140. Release of water for Project irrigation harms both salmon and suckers. *Id.*

Reclamation presented this conflict between its obligations to the upstream and downstream interests as a defense in *Hoopa Valley Tribe*. Opposing the injunctive relief sought by Hoopa (and Yurok) in that litigation, Reclamation argued that release of additional water from UKL for protection of salmon downstream could jeopardize sucker fish in UKL, which are a trust resource of the Klamath Tribes. *Hoopa Valley Tribe*, 230 F. Supp. 3d at 1140-42. Instead of reducing Project deliveries and providing water necessary for all ESA-listed species, Reclamation vigorously defended against Hoopa's litigation, in part, by pitting Reclamation's upper basin responsibilities against Hoopa's lower basin interests. *Id.* Reclamation cannot adequately represent Hoopa's interest here due to its competing tribal trust and ESA duties to upper basin resources. *Lujan*, 928 F.2d at 1500 (finding representation inadequate where "United States cannot adequately represent [absent tribe's] interest without compromising the trust obligations owed to [other] tribes").

There is also a conflict of interest between Reclamation's obligations to Hoopa and obligations to Plaintiffs that may exist. Reclamation is responsible for delivering water to which Plaintiffs may be entitled from the Klamath Project to the extent consistent with federal law. Reclamation's responsibilities to Plaintiffs directly conflict with Hoopa's interest in maintaining flows in the Klamath River downstream for fish. *NRDC v. Kempthorne*, 539 F. Supp. 2d 1155, 1188 (E.D. Cal. 2008) (United States was not adequate representative for absent water

contractors in ESA litigation because "the Bureau is obligated to provide water under the contracts and to comply with the ESA at the same time.  The Bureau may decide that complying with the ESA requires it to not fulfill its obligations under its contracts with the absent contractors").  Here, Reclamation has competing obligations to multiple parties with divergent interests in a limited water resource.  *PCFFA*, 426 F.3d at 1085-86 (noting Reclamation's water management is especially difficult on Klamath River due to limited supply and many competing obligations). In managing the Project, Reclamation has regularly favored Plaintiffs' interests over Hoopa's interests.  Nelson Declaration, para. 24-25; Orcutt Declaration, para. 29. Reclamation cannot adequately represent Hoopa in this litigation.

The specific history relating to Reclamation's management of the Klamath Project shows that it cannot adequately represent Hoopa's interests in this litigation.  Hoopa (and other Klamath Basin tribes) have repeatedly sued or intervened against Reclamation for failure to adequately protect fish and water resources in the Klamath Basin from Project impacts.  *See, e.g., Klamath Tribes v. U.S. Bureau of Reclamation*, Case No. 18-cv-3078-WHO (N.D. Cal.) (seeking injunction to maintain water in UKL for protection of ESA-listed tribal trust resources); *Hoopa Valley Tribe*, 230 F. Supp. 3d at 1106-46 (obtaining injunction against Reclamation requiring additional downstream flow released from UKL for protection of ESA-listed tribal trust resource); *PCFFA/Yurok Tribe v. U.S. Bureau of Reclamation*, 2005 U.S. Dist. LEXIS 36035 (N.D. Cal., March 8, 2005) (lawsuit alleging that Reclamation violated federal reserved fishing right of Yurok Tribe by failing to release adequate flow into Klamath River from UKL); *PCFFA*, 426 F.3d at 1082-94 (tribes intervened in support of challenge to Reclamation's project operations in 2002).  This history of conflict and demonstrated failure of Reclamation to adequately protect Hoopa's interests from Project impacts further shows that Hoopa would add a

necessary element to this litigation and that Reclamation cannot adequately represent Hoopa's interests here.  Nelson Decl., para. 22-25; Orcutt Decl., para. 29.  *See White*, 765 F.3d at 1027 (finding University not adequate representative for absent tribal interests where their respective interests may "not necessarily remain aligned"); *Pac. NW Generating Coop v. Brown*, 822 F. Supp. 1479 (D. Or. 1993) (in suit challenging federal actions under ESA:  "To say that the tribes' interests are so 'aligned' with those of the government that they are already adequately represented flies in the face of decades of controversy and, again, fails to take into consideration that parties that are in agreement now may be in bitter disagreement within a very short time frame [citing to history of litigation in which tribes and U.S. were on adverse sides of issue]").

Reclamation's multiple and conflicting obligations could lead (and have led) to taking litigation or settlement positions that Hoopa would not take or that conflict with Hoopa's interests.  This is not unwarranted speculation.  In 2009, the United States executed a conditional stipulation in the Oregon Klamath Basin Adjudication that would have guaranteed a set amount of water for Plaintiffs' Klamath Project diversions regardless of the downstream impacts on Hoopa and the fish and water resources it relies upon. *Schlosser*, Dewatering Trust Responsibility:  The New Klamath River Hydroelectric and Restoration Agreements, 1 Wash. J. Envtl. L. & Pol'y 42, 70-72 (2011); Nelson Declaration, at para. 25.  In the conditional stipulation, once effective, the United States agreed it would not assert tribal water or fishing rights theories or tribal trust theories on behalf of any Klamath Basin tribes (including the non-consenting Hoopa Valley Tribe) unless the Project exceeded its guaranteed water diversion amounts. *Id.*  The conditional stipulation did not become effective due in part to Hoopa's relentless public advocacy against it; yet, its execution shows that the United States is willing in

certain circumstances to disregard its responsibility to protect Hoopa's federal reserved rights in favor of the Project and Plaintiffs here. Reclamation cannot adequately represent Hoopa here.

    3.   <u>Reclamation Will Have Conflicting Legal Obligations If Plaintiffs Prevail Without Hoopa's Joinder.</u>

    Hoopa will not be bound by any judgment rendered in its absence. *Dawavendewa*, 276 F.3d at 1155. Thus, if Plaintiffs were to prevail in Hoopa's absence, Reclamation would be bound by an injunction preventing release of water for instream fish flows while simultaneously being legally obligated to operate the Project in compliance with its substantive obligations under the ESA and to provide water sufficient to fulfill Hoopa's federal reserved water rights. *Baley*, 139 Fed. Cl. at 679-80 (holding government's decision in 2001 to withhold water from plaintiffs in order to satisfy ESA and tribal trust obligations was not improper taking of plaintiffs' water rights); *Patterson*, 204 F.3d at 1214 (Reclamation must release water from Link River Dam as needed to fulfill downstream Tribes' rights "that take precedence over any alleged rights of the Irrigators"); *Kandra*, 145 F. Supp. 2d at 1204-06 (denying irrigators' request to enjoin Reclamation's 2001 operations plan, finding that "Reclamation . . . has a responsibility to divert the water and resources needed to fulfill the Tribes' rights"). Cases involving competing interests in a scarce resource managed by the Defendant often create a risk of inconsistent obligations that require joinder of all claimants. *Goldmark*, 994 F. Supp. 2d at 1187-88. Due to the competing and mutually exclusive obligations that Reclamation would be left with in Hoopa's absence, Hoopa is required under FRCP 19(a)(1)(B)(ii).

    In *Dawavendewa*, an individual sued Salt River Project (SRP) for employing a hiring policy required by SRP's lease with the Navajo Nation that required SRP to preferentially hire Navajos. Plaintiff sought an injunction prohibiting SRP from implementing the preferential hiring policy. The Court found that the Navajo Nation was an indispensable party, in part,

because adjudication in the absence of the Navajo would leave SRP with "intractable, mutually exclusive alternatives." 276 F.3d at 1158. "If the federal court granted [the] requested injunctive relief, SRP would be between the proverbial rock and a hard place – comply with the injunction prohibiting the hiring preference policy or comply with the lease requiring it. If, in resolving this quandary, SRP declines to abide by the injunction and instead continues to comply with its lease obligations, [plaintiff] would not be accorded complete relief. Thus, under Rule 19(a)(1), the Nation is a necessary party." 276 F.3d at 1156.

Here, if Plaintiffs prevail and obtain their requested injunction, Reclamation would be between a similar rock and a hard place – faced with the choice of complying with the injunction or complying with its competing legal obligations to release water to fulfill the fishing and water rights of the absent Tribe(s) in addition to its continuing substantive legal obligations under the ESA.[12] Should Reclamation fail to honor its legal obligation to release water necessary for Hoopa's rights (or ESA-compliance), Reclamation would certainly be subject to a lawsuit that could result in a directly conflicting injunction. *Keweenaw Bay Indian Community,* 11 F.3d 1141 (6th Cir. 1993) (likelihood that absent tribes would seek legal recourse in the event that the judgment deprived them of fishing rights to which they believe they are entitled can hardly be described as speculative). Hoopa is a required party under FRCP 19(a)(1)(B)(ii).

C.  Hoopa Is Indispensable:  This Action May Not Proceed in Hoopa's Absence.

1.  A Judgment Rendered in Hoopa's Absence Would Prejudice Hoopa as Well as Existing Parties.

A judgment rendered in Hoopa's absence would result in significant prejudice to Hoopa.

---

[12] For the same reasons, Hoopa is required under FRCP 19(a)(1)(A) because Plaintiffs could not obtain complete relief in Hoopa's absence. Reclamation would be faced with choosing whether to comply with the injunction prohibiting flow releases or its competing federal law responsibilities under the ESA and its tribal trust obligations that require flow releases to protect fish and tribal rights downstream. *Dawavendewa*, 276 F.3d at 1156.

This first factor of the Rule 19(b) "indispensable party" analysis overlaps substantially with consideration of whether an absent party is required under FRCP 19(a). *Dawavendewa*, 276 F.3d at 1162 ("The prejudice to the [Navajo] Nation stems from the same impairment of legal interests that makes the [Navajo] Nation a necessary party under Rule 19(a)(2)(i)"); *Clinton*, 180 F.3d at 1090 (determining prejudice under Rule 19(b) is essentially same inquiry as under Rule 19(a)). As described above, Hoopa will suffer significant prejudice from a judgment that prevents Reclamation from releasing water for instream fish flows in the Klamath River, which flows are necessary not only to protect ESA-listed (and other) salmon species but also to fulfill Hoopa's senior reserved fishing and water rights. Moore's [3d. ed] 19.05[2][d] (prejudice may be unavoidable if absentee and party's claims are mutually exclusive; i.e., where case involves competing claims to finite resources). Reclamation will also be prejudiced due to the conflicting obligations that would exist if Plaintiffs prevailed in Hoopa's absence. Hoopa incorporates by reference its arguments relating to FRCP 19(a), which also support dismissal under FRCP 19(b).

Hoopa's right to intervene on the merits does not minimize the prejudice because such intervention would require Hoopa to waive its sovereign immunity, which it has not done here. *Wilbur v. Locke*, 423 F.3d 1101, 1114 (9th Cir. 2005) (intervention right does not minimize potential prejudice to absent tribe, because intervention would require sovereign immunity waiver); *Lujan*, 928 F.2d at 1500 (rejecting argument that absent Indian tribe "could minimize the potential prejudice by intervening in the action and asserting its interests"); *Wichita & Affiliated Tribes of Okla. v. Hodel,* 788 F.2d 765, 776 (D.C. Cir. 1986) ("It is wholly at odds with the policy of tribal immunity to put the Tribe to this Hobson's choice between waiving its immunity or waiving its right not to have a case proceed without it"). Sovereign immunity of a necessary party weighs heavily in favor of dismissal pursuant to Rule 19. *Pimentel,* 553 U.S. at

MOTION TO DISMISS - 30

853 (when sovereign immunity is asserted, and the sovereign's claims are not frivolous, dismissal must be ordered when there is a potential for injury to the absent sovereign's interests); *White*, 765 F.3d at 1028 (noting "wall of circuit authority" favoring dismissal where required absent party has sovereign immunity); *Hull*, 305 F.3d at 1025 (noting the Ninth Circuit regularly finds immune Indian tribes indispensable and that other courts find that sovereign immunity of absent party forecloses balancing of interests and requires dismissal under Rule 19(b)).

      2.   <u>There Is No Way to Shape Relief to Avoid the Prejudice.</u>

"If the claims of a party and absentee are mutually exclusive, prejudice from non-joinder is virtually inescapable." Moore's [3d. ed.] 19.05[2][d].  Here, the all-or-nothing nature of Plaintiffs' claims and requested relief forecloses any possibility to shape relief to avoid prejudice to Hoopa.  Plaintiffs seek an order that would require Reclamation to honor Plaintiffs' water rights in full prior to releasing any water for instream fish flows in the Klamath River downstream.   Such an order is directly incompatible with Reclamation's federal law obligations to provide water for fish under the ESA and its trust obligations to protect and fulfill Hoopa's federal reserved fishing and water rights.

Plaintiffs' claims to the finite water resources of the Klamath River are mutually exclusive to those of Hoopa and other absent tribes.  In similar cases involving competing claims to finite natural resources, courts have found no way to shape relief to avoid prejudice. *Goldmark*, 994 F. Supp. 2d at 1190-91 (no way to eliminate prejudice to absent tribes where tribal claimant sought exclusive authority to manage and harvest 100% of treaty resources to the exclusion of other treaty tribes); *Verity*, 910 F.2d at 560 (no way to shape remedy where only "adequate" remedy would be at expense of absent tribes).

When the parties' interests are in a specified percentage of the pie, and the combined claims exceed 100% of the pie, the court cannot afford one relief without affecting the rights of

the others. *Hodel*, 788 F.2d at 776. Here, there is "not enough pie to satisfy all." *Id.; Verity*, 910 F.2d at 560. Given the respective needs of Plaintiff irrigators and the fish downstream, Plaintiffs and Hoopa (and others) often compete for the same scarce water resources of the Klamath River at the same times of year. This is especially true in comparably dry years. Orcutt Declaration, para. 28. *Baley*, 134 Fed. Cl. at 678 (explaining that Reclamation's implementation of its ESA obligations in 2001 left no water available for delivery to Klamath Basin irrigators that year); *Kandra*, 145 F. Supp. 2d at 1197-99 (discussing competing water demands in Klamath Basin). For example, flows necessary to limit disease impacts in the Spring and early Summer directly compete with Plaintiffs' irrigation needs during that same time. *Hoopa Valley Tribe*, 230 F. Supp. 3d at 1146 (entering injunction to make additional flow available from April 1 through June 15 to mitigate disease impacts). Respective water demands of Plaintiffs and Hoopa (and the Klamath Tribes upstream) often collectively exceed 100% of available water in the Klamath River. *Baley*, 134 Fed. Cl. at 678; *Kandra*, 145 F. Supp. 2d at 1197-99. There is insufficient water to satisfy Plaintiffs' claims while adequately protecting ESA-listed species and Hoopa's reserved fishing and water rights downstream. Orcutt Declaration, para. 30.

Plaintiffs seek an order that would effectively result in their rights superseding Reclamation's obligations to provide flows for fish pursuant to the ESA and its tribal trust responsibilities. Even though their rights are junior to Hoopa under governing principles of prior appropriation and federal reserved rights, Plaintiffs' requested relief would effectively require that their rights be satisfied prior to Hoopa. Hoopa has a legally protected right to sufficient water to implement and preserve its federal reserved fishing rights. Any relief that could, as a practical matter, impair or impede its federal reserved fishing or senior water rights would result in significant prejudice to Hoopa. Nelson Decl.; Orcutt Decl. There is no way to minimize such

prejudice given the limited water resources in the Klamath and the directly competing nature of

Plaintiffs' claims with Hoopa's.  The consolidated cases must be dismissed pursuant to FRCP 19.

    3.   <u>A Judgment Rendered in Hoopa's Absence Will Not Be Adequate.</u>

The third factor in the Rule 19(b) analysis is "whether a judgment rendered in the

[absent party's] absence would be adequate."  FRCP 19(b)(3). Here, the only "adequate" remedy

for Plaintiffs would be at the expense of Hoopa who cannot be joined.  *Amador County*, 554 Fed.

Appx. at 566.  An order enjoining Reclamation from releasing water for instream purposes

would conflict with Reclamation's existing and continuing legal duties under federal law.

Absent Hoopa's joinder, Reclamation would have to choose which of its competing legal duties

to honor – an injunction prohibiting Reclamation from releasing water downstream for fish, or its

ESA and tribal trust obligations that require such releases.  Any impairment of Hoopa's rights or

failure by Reclamation to comply with its ESA obligations would certainly be the subject of

another lawsuit to enforce Reclamation's ESA and/or tribal trust obligations which could lead to

a separate conflicting judgment and injunction.  *Goldmark*, 994 F. Supp. 2d at 1191-92

(judgment would not be adequate "given the significant possibility that Defendants would face

subsequent litigation on the same issues with potentially different results by the [absent tribes]").

    4.   <u>Plaintiffs Have an Alternative Forum.</u>

The fourth factor under FRCP 19(b) is "whether the plaintiff would have an adequate

remedy if the action were dismissed for nonjoinder."  FRCP 19(b)(4).  Here, although there is no

alternative forum in which Plaintiffs could obtain the injunctive relief they seek in Hoopa's

absence, Plaintiffs have an adequate remedy at law, which is a suit for monetary damages in the

CFC.  *Baley*, 134 Fed. Cl. 619 (seeking monetary damages resulting from Reclamation's Project

operations in 2001).  The availability of this alternative forum weighs in favor of dismissal.

*Shermoen*, 982 F.2d at 1320-21.

Plaintiffs allege that they have contract rights that have been violated and vested property rights that have been unconstitutionally taken by Reclamation without compensation.  The harms allegedly suffered by Plaintiffs are economic; thus, Plaintiffs have an available adequate remedy at law that can be pursued in the CFC.  Dkt. #19, para. 38-41 (alleging that water curtailment will harm Plaintiffs economically and will result in loss of farming income); Dkt. #4, para 26 (alleging Reclamation cannot deprive Plaintiffs of their water rights without condemnation or purchase).  Shasta View expressly acknowledges and reserves its rights to seek damages in the CFC.  Dkt. #19, para. 4.  The fact that Plaintiffs have an adequate remedy at law in a different forum that does not require Hoopa's joinder supports dismissal under FRCP 19.

Even if Plaintiffs lacked any available forum, dismissal would still be appropriate.  A Tribe's interest in sovereign immunity outweighs prejudice arising from lack of an alternative forum.  *DCAR*, 2019 U.S. App. LEXIS 22407 at *34-35; *Friends of Amador County*, 554 Fed. Appx. at 566; *Hull,* 305 F.3d at 1025; *Dawavendewa*, 276 F.3d at 1162; *Pit River*, 30 F.3d at 1088, 1102-03; *Lujan*, 928 F.2d at 1500; *Verity*, 910 F.2d at 560; *Goldmark*, 994 F. Supp. 2d at 1192; *see also Pimentel*, 533 U.S. at 853.

## IV.    CONCLUSION

For the foregoing reasons, Hoopa is a required party because proceeding with the action would, as a practical matter, significantly impair or impede Hoopa's ability to protect its federal reserved fishing and water rights.  Hoopa's sovereign immunity precludes its joinder in this action and the case cannot in equity and good conscience proceed without Hoopa.  Hoopa's motion to dismiss should be granted and this consolidated action should be dismissed in its entirety with prejudice.

Respectfully submitted this ___ day of _____, 2019

MORISSET, SCHLOSSER, JOZWIAK & SOMERVILLE APC

s/ *Thane D. Somerville*_____

Thane D. Somerville, OSB #092500
811 First Avenue, Suite 218
Seattle, WA 98104
Tel:  206-386-5200
Fax:  206-386-7322
E-mail:  t.somerville@msaj.com
Attorneys for Hoopa Valley Tribe

MOTION TO DISMISS - 35