Jay D. Weiner, #182247
jweiner@rosettelaw.com
Rosette, LLP
1415 L St. Suite 450
Sacramento, CA 95814
(916) 353-1084

**Attorney for Intervenor The Klamath Tribes**


UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION


| | |
|---|---|
| KLAMATH IRRIGATION DISTRICT, | **Case No.: 1:19-cv-00451-CL (lead)** |
| | Case No.: 1:10-cv-00531-CL |
| Plaintiff, | |
| v. | |
| UNITED STATES BUREAU OF RECLAMATION; DAVID BERNHARDT, Acting Secretary of the Interior, in his official capacity; BRENDA BURMAN, Commissioner of the Bureau of Reclamation, in her official capacity; ERNEST CONANT, Director of the Mid-Pacific Region, Bureau of Reclamation, in his official capacity; and JEFFREY NETTLETON, in his official capacity as Area Manager for the Klamath Area Reclamation Office, | **THE KLAMATH TRIBES' MOTION TO INTERVENE AS OF RIGHT**  Request for Oral Argument |
| Defendants | |
| SHASTA VIEW IRRIGATION DISTRICT, KLAMATH DRAINAGE DISTRICT, VAN BRIMMER DITCH COMPANY, TULELAKE IRRIGATION DISTRICT, KLAMATH WATER USERS | |

ASSOCIATION, BEN DUVAL, and ROB
UNRUH,

                    Plaintiffs,

v.

UNITED STATES BUREAU OF
RECLAMATION; ERNEST CONANT, in his
official capacity as the Regional Director of
the Mid-Pacific Region of the United States
Bureau of Reclamation; JEFFREY
NETTLETON, in his official capacity as the
Area Manager of the Klamath Basin Area
Office of the United States Bureau of
Reclamation,

                    Defendants

## CERTIFICATE OF COMPLIANCE WITH LR 7-1

Undersigned counsel certifies that the parties have made a good faith effort through

telephone conference to resolve the issues herein but were unable to resolve the issues. Plaintiffs

and defendants all reserve their positions until they have had an opportunity to review the

motion.

## MOTION TO INTERVENE

Expressly reserving their sovereign immunity, the Klamath Tribes ("Tribes"), pursuant to

Federal Rule of Civil Procedure ("FRCP") 24(a)(2), move for leave to intervene in this

consolidated action[1] for the limited purpose of filing a motion to dismiss pursuant to FRCP 19

and 12(b)(7) to establish that this action cannot proceed in the Tribes' absence.[2] The Tribes are

---

[1] Case Nos. 19-cv-00451-CL and 19-cv-00531-CL were consolidated pursuant to joint motion.
Dkt. #17.
[2] The Tribe also seeks dismissal on grounds that the action cannot proceed in the absence of
either of the Hoopa Valley Tribe or the Yurok Tribe, each of whom are also indispensable
parties.

Klamath Tribes' Motion to Intervene          2

entitled to intervene as of right because they claim interests relating to fish and water resources of the Klamath Basin, which are the subject of this action. Plaintiffs seek to prohibit the Bureau of Reclamation ("Reclamation") from retaining water in Upper Klamath Lake ("UKL") for instream purposes. Such relief would, as a practical matter, directly interfere with the maintenance of UKL levels necessary to fulfill the fishing rights and senior water rights reserved to the Tribes by treaty. Plaintiffs' suit and requested relief, if granted, would significantly prejudice the Tribes by directly impairing the Tribes' federal reserved fishing and water rights. The Court should allow the Tribes to intervene for the limited purpose of moving to dismiss pursuant to Federal Rule of Civil Procedure 19.[3] This motion is based on the court file; the concurrently filed Declaration of Klamath Tribes Chairman, Donald C. Gentry; and the accompanying memorandum. The Tribes' proposed motion to dismiss, which they intend to file if intervention is granted, is attached hereto as Exhibit A.

### MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF KLAMATH TRIBES' MOTION TO INTERVENE

**I.    INTRODUCTION**

The Tribes move to intervene as a matter of right pursuant to Fed. R. Civ. P. 24(a) for the sole and limited purpose of filing a motion to dismiss pursuant to 12(b)(7) to establish that this consolidated action cannot proceed in the Tribes' absence pursuant to Fed. R. Civ. P. 19.[4]

**II.    STATEMENT OF FACTS**

**A.    The Tribe's Rights and Interests in the Klamath River**

---

[3] The Klamath Tribes do not and do not intend to waive their sovereign immunity in any manner whatsoever by filing either of these motions.

[4] The Ninth Circuit has recognized that "the district court must have some discretion to limit the issues on which . . . a party may intervene," *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 531 (9th Cir. 1983), and courts have permitted tribes to intervene to dismiss pursuant to Fed. R. Civ. P. 12(b)(7) without waiving their sovereign immunity. *See e.g. Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*, No. 17-17320, 2019 WL 3404210 (9th Cir. July 29, 2019).

Since time immemorial, the Klamath Tribes and their members have used, and continue to use, the resources of the Klamath Basin in what is now the states of both Oregon and California for subsistence, cultural, ceremonial, religious, and commercial purposes. Declaration of Donald C. Gentry in Support of the Klamath Tribes' Motion to Intervene and Motion to Dismiss ("Gentry Decl.") ¶ 3. C'waam (Lost River sucker or *Deltistes luxatus*) and Koptu (shortnose sucker or *Chasmistes brevirostris*) have played a particularly central role in the Tribes' cultural and spiritual practices, and they were once the Tribes' most important food-fish. *Id.* ¶ 4; *Klamath Tribes v. United States Bureau of Reclamation*, No. 18-CV-03078-WHO, 2018 WL 3570865, at *1 (N.D. Cal. July 25, 2018) (C'waam and Koptu are "revered by the Klamath Tribes for their cultural, spiritual, and economic significance.").

In 1864, the United States and the Tribes entered into a treaty whereby the Tribes ceded their interests in millions of acres of land and retained a reservation of approximately 800,000 acres, along with "the exclusive right of taking fish in the streams and lakes, included in said reservation, and of gathering edible roots, seeds, and berries within its limits." Treaty between the United States and the Klamath and Moadoc Tribes and Yahooskin Bank of Snake Indians, October 14, 1864, 16 Stat. 707. The Ninth Circuit has recognized that the Tribes' treaty fishing rights include "the right to prevent other appropriators from depleting the streams waters below a protected level." *United States v. Adair*, 723 F.2d 1394, 1411 (9th Cir. 1983).

In 1975, the State of Oregon initiated the Klamath Basin Adjudication which led to a quantification of the Tribes' rights in the waters of the Klamath Basin. *See* Klamath Irrigation District ("KID")'s Am. Compl., Dkt. #4 at 9:32. In February 2014, the Oregon Water Resources Department filed its Amended and Corrected Findings of Fact and Final Order of Determination ("ACFFOD") with the Klamath County Circuit Court setting forth the attributes of the Tribes'

water rights. Under Oregon law, the ACFFOD is in "full force and effect" unless and until its operation is stayed. ORS 539.130(4). Among other things, the ACFFOD recognizes the Tribes' instream rights to water in UKL to accommodate its treaty fishing rights. *See* Dkt. #4 at 12:42(f) (citing ACFFOD 04941).

>       **B.       The Klamath Irrigation Project**

Pursuant to the Act of February 9, 1905, ch. 567, 33 Stat. 714, and under the authority of the Reclamation Act of 1902, 43 U.S.C. §§ 372 et seq., Congress authorized the construction and development of the Klamath Irrigation Project (the "Project") in and around the Klamath Tribes' ancestral homelands and waters. Gentry Decl. ¶ 5.

Over the ensuing century, the Project's infrastructure and operations have modified the hydrology and water quality of UKL and the entire Klamath River Basin through the storage, diversion, and conveyance of water for agricultural, municipal, and hydroelectric purposes throughout what is now southern Oregon and northern California. *See* United States Fish and Wildlife Service Biological Opinion on the Effects of Proposed Klamath Project Operations from April 1, 2019, through March 31, 2024 on the Lost River Sucker and the Shortnose Sucker ("2019 BiOp") §§ 2.1, 4.3.3.[5] These changes have had devasting impacts on many Klamath Basin species, including the C'waam and Koptu who are now critically endangered. *Id.* at § 6.4. The Project features several major dams, including the Link River Dam at the outlet of UKL, by which Reclamation manages UKL's elevation. *Id.* at § 2.1, 4.3.3.

The Tribes have challenged Reclamation's management of the Project for its failure to protect the C'waam and Koptu, both under the 2019 BiOp and its precursor. Gentry Decl., Ex. A

---

[5] The 2019 BiOp is available at https://www.fws.gov/cno/pdf/BiOps/FWS-BiOp-Klamath-Project-Operation-VI508.pdf

(Letter from Donald C. Gentry, Chairman of the Klamath Tribes, to Jeff Nettleton, U.S. Bureau of Reclamation, regarding Comments of the Klamath Tribes on Reclamation's November 1, 2018 Proposed Action Summary (Nov. 30, 2018)); *Id.* Ex. B (Letter from Donald C. Gentry, Chairman of the Klamath Tribes, to Jeff Nettleton, U.S. Bureau of Reclamation, regarding Comments of the Klamath Tribes on Reclamation's December 12, 2018 Draft Proposed Action Chapter of the Biological Assessment (Dec. 16, 2019)); *Klamath Tribes v. Reclamation*, No. 18-CV-03078-WHO, 2018 WL 3570865 (N.D. Cal. July 25, 2018).

###### C.    Plaintiff's Claims

Plaintiffs Shasta View Irrigation District, Klamath Drainage District, Van Brimmer Ditch Company, Tulelake Irrigation District, Klamath Water Users Association, Ben Duval, and Rob Unruh, (collectively "Plaintiff Water Users") and plaintiff Klamath Irrigation District ("KID") seek remedies which would irreversibly and materially impair the Tribes' treaty-based rights in the waters and species of the Klamath Basin. Plaintiff Water Users ask for a declaration and permanent injunction that Reclamation "may not operate or direct Klamath Project operations . . . for purposes other than irrigation, livestock, and domestic use," or in any other manner that "curtails or limits the supply of state water rights." Plaintiff Water Users Am. Compl., Dkt. #19 at 32:5. Similarly, KID alleges that "the Reclamation Act prohibits Reclamation from interfering with vested rights established under state law," Dkt. #4 at 15:49, and asks this court to enjoin Reclamation "from using water stored in UKL reservoir for instream purposes during KID's irrigation season." *Id.* 18-19:68. KID also claims that Reclamation "may not divest KID and its landowners of their . . . water rights . . . without first purchasing or condemning 'under judicial process' those same rights[.]" *Id.* 20:71.

###### D.    Procedural Background

Plaintiffs filed their First Amended Complaints on April 5 and July 10, 2019, respectively. Dkt # 4, 19. Defendants filed answers on August 9, 2019. Dkt # 26, 27. The parties have agreed to a litigation schedule in which plaintiffs' summary judgment motions are due September 30, 2019, and the defendants' cross-motion for summary judgment is due on November 15, 2019. Dkt. #17. The Hoopa Valley Tribe filed its Motion to Intervene on August, 8 2019. Dkt. #21. The parties have also stipulated to a briefing schedule to respond to this and the pending Hoopa Valley Tribe's motion to intervene. Dkt. # 28. The proceedings remain at a very early stage.

## III.    ARGUMENT

### A.  Legal Standard

The Ninth Circuit has adopted a four-part test for determining whether an applicant can intervene as of right pursuant to FRCP 24(a)(2):

(1) the application for intervention must be timely;

(2) the applicant must have a significant protectable interest relating to the property or transaction that is the subject of the action;

(3) the applicant must be so situated that disposition of the action may, as a practical matter, impair or impede the applicant's ability to protect that interest; and

(4) the applicant's interest must not be adequately represented by existing parties to the action. *Smith v. L.A. Unified Sch. Dist.*, 822 F.3d 1065, 1074 (9th Cir. 2016); *Wilderness Soc. v. U.S. Forest Service*, 6340 F.3d 1173, 1177 (9th Cir. 2011) (en banc); *United States v. City of Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002), *citing Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). The Ninth Circuit interprets and applies the rule broadly in favor of intervention.

*Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011);

*Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001).

**A.    The Tribes' motion is timely.**

Determining whether a motion to intervene is timely requires a "nuanced, pragmatic"

evaluation that considers the state of the proceedings, the prejudice to other parties, and the

reasons for and length of the delay. *League of United Latin Am. Citizens v. Wilson*, 131 F.3d

1297, 1302-03 (9th Cir. 1997). Here, all factors weigh in favor of allowing the Tribes to

intervene. Granting the Tribes' motion for limited intervention cannot prejudice any existing

parties or delay the resolution of the litigation because no substantive rulings have been issued.

*See Northwest Forest Resource Council v. Glickman*, 82 F.3d 825, 837 (9th Cir. 1996) (no

prejudice where "the motion was filed before the district court made any substantive rulings").

Plaintiffs recently filed their first amended complaints on April 5 and July 10, 2019, and

defendants filed an answer on August 9, 2019. The Tribes file this motion to intervene one week

later. In fact, the current parties understood that the Tribes intended to file their motion at this

time and have stipulated to a briefing schedule. Dkt. # 28. Finally, the sole purpose of the Tribes'

limited intervention is to move to dismiss this litigation in its entirety for failure to join the

Tribes—an indispensable party.

**B.    The Tribes have significant protectable interests relating to the property or transaction that is the subject of the action; are so situated that disposition of the action may, as a practical matter, impair or impede the Tribes' ability to protect those interests; and the Tribes' interests are not adequately represented by existing parties to the action.**

Fed. R. Civ. P. 24(a)(2) permits intervention as of right to anyone who "claims an interest

relating to the property or transaction that is the subject of the action, and is so situated that

disposing of the action may as a practical matter impair or impede the movant's ability to protect

its interest, unless existing parties adequately represent that interest." This test is nearly identical

to that under Fed. R. Civ. P. 19(a)(1)(B)(i):

> "[A] person . . . must be joined as a party if: . . . that person claims an interest
> relating to the subject of the action and is so situated that disposing of the action
> in the person's absence may: . . . as a practical matter impair or impede the
> person's ability to protect the interest[.]"

*See generally MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 390 (2d Cir.

2006) ("These rules are intended to mirror each other." (citing 4 James Wm. Moore et al.,

*Moore's Federal Practice—Civil,* § 19.03(3)(f)(i) (3d ed. 2006) ("Indeed, the operative language

of the two Rules is identical because the Rules were revised to emphasize their interrelationship

in 1966."))); In fact, the advisory committee's notes on Rule 24 recognize that a movant who

satisfies Rule 19(a)(1)(B)(i) should also be granted intervention as of right:

> "Intervention of right is here seen to be a kind of counterpart to [what is now Rule
> 19(a)(1)(B)(i)] on joinder of persons needed for a just adjudication: where, upon
> motion of a party in an action, an absentee should be joined so that he may protect
> his interest which as a practical matter may be substantially impaired by the
> disposition of the action, he ought to have a right to intervene in the action on his
> own motion."

Various circuit courts have also recognized that the tests are functionally identical, other

than Rule 24(a)(2)'s exception for a situation where "an existing party adequately represents [the

movant's] interest." *See MasterCard Int'l Inc.*, 471 F.3d at 390; *Liberty Mut. Ins. Co. v.

Treesdale, Inc.*, 419 F.3d 216, 230 (3d Cir. 2005) ("[T]he advisory committee's notes to the 1996

amendments to Rule 24 state that if a person should be joined under Rule 19, he/she should also

be entitled to intervene under Rule 24. . . . There is, however, a difference between Rule 19 and

Rule 24 . . . Rule 24 contains an additional element, i.e., the adequacy of representation.); *Glancy

v. Taubman Centers, Inc.*, 373 F.3d 656, 668 (6th Cir. 2004) ("The language of Rule 24(a)(2) is

*nearly* identical, but in one critical way, not *exactly* identical, to that of [what is now Rule 19(a)(1)(B)(i)]. . . . the absence of an 'adequate representation' clause").

The Ninth Circuit, however, has read Rule 24(a)'s "adequate representation" clause into the Rule 19(a)(1)(B)(ii) test. *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992) ("The [question under Rule 19(a)(1)(B)(i)] whether that party is adequately represented parallels the question whether a party's interests are so inadequately represented by existing parties as to permit intervention of right under Fed.R.Civ.P. 24(a)"). Because the Ninth Circuit's interpretation of Rule 19(a)(1)(B)(i) mirrors Rule 24(a), a party that is required to be joined under Rule 19(a)(1)(B)(i) is necessarily entitled to intervene under Rule 24(a). The Tribes are required to be joined under Rule 19(a)(1)(B)(i).

### i.    The Tribes claim interests in the action.

To establish that it is a required party under Rule 19(a)(1)(B) or a party with the right to intervene under Rule 24(a)(2), the Tribes must first "claim[] an interest relating to the subject matter of the action[.]" Rule 19(a)(1)(B); *accord* Rule 24(a)(2). An "interest relating to the subject matter of action" means an interest that is "legally protected." *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 970 (9th Cir. 2008). While there are "few categorical rules" governing how to answer the "practical… and fact specific" question of what constitutes an interest protected by Rule 19. *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*, No. 17-17320, 2019 WL 3404210, at *5 (9th Cir. July 29, 2019) (internal quotations and citations omitted). The Ninth Circuit has "held that the interest at stake need not be 'property in the sense of the due process clause,'" *Cachil*, 547 F.3d at 970 (quoting *Am. Greyhound Racing v. Hull*, 305 F.3d 1015, 1023 (9th Cir. 2002)), but it "'must be more than a financial stake, and more than speculation about a future event.'" *Id.* at

970 (quoting *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990)). At the very least, a "right already granted" is legally protected by the rule. *Dine Citizens*, 2019 WL 3404210, at *5. Too, a party need not conclusively *prove* that it has a Rule 19-protected interest. Rather, "it is the party's *claim* of a protectible interest that makes its presence necessary." *Hull*, 305 F.3d at 1024 (emphasis original).

The Ninth Circuit has held that a tribe's claimed treaty-based interest in fish is entitled to protection under Rule 19. *Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir. 1999). Moreover, the United States Court of Claims has held that the Klamath Tribes were a required party under Rule 19 based on their interests in "fishing and water rights that derive from the [1864] Treaty." *Klamath Tribe Claims Comm. v. United States*, 97 Fed. Cl. 203, 212-213 (2011). Other courts have recognized that a tribe's interest in its reserved water rights is a legally-protected interest under Rule 19. *See Oklahoma v. Tyson Foods*, Inc., 258 F.R.D. 472, 478 (N.D. Okla. 2009) (holding the Cherokee Nation's interest in its water rights warrants legal protection under Rule 19).

The Tribes here claim interests in the fish and water of the Klamath Basin because of the cultural, spiritual, historical, and economic significance of these species to the Tribes and their members. The Tribes' treaty protects these interests and the recent ACFFOD relates such protection to other water users in the Klamath Basin. As the court recognized in *Klamath Tribe Claims Comm.*, these legally protected interests incontrovertibly warrant protection under Rule 19. 97 Fed. Cl. at 212-213.

### ii. Resolving the action in the Tribes' absence may as a practical matter impair or impede the Tribes' ability to protect their interests.

A person that "claims an interest relating to the subject matter of the litigation" must be joined if "it is so situated that disposing of the action in the person's absence may . . . as a

Klamath Tribes' Motion to Intervene          11

practical matter impair or impede the person's ability to protect the interest." Rule 19(a)(1)(B)(i); *accord* Rule 24(a)(2). Disposing of this action in the Tribes' absence may well impair or impede their ability to protect their interests in fish and water in the Klamath Basin. As noted above, Plaintiff Water Users ask for a declaration and permanent injunction that Reclamation "may not operate or direct Klamath Project operations . . . for purposes other than irrigation, livestock, and domestic use," or in any other matter that "curtails the supply of state water rights." Dkt. #19 at 32:5. Similarly, KID alleges that "the Reclamation Act prohibits Reclamation from interfering with vested rights established under state law," Dkt. #4 at 15:49, and asks this court to enjoin Reclamation "from using water stored in UKL reservoir for instream purposes during KID's irrigation season." *Id.* 18-19:68. Constraining Reclamation's operation of the Project in the manner requested by plaintiffs would directly impair the Tribes' ability to protect their treaty-based fishing rights and adjudicated water rights.

The Tribes' treaty-based rights include the right to a harvestable population of C'waam and Koptu capable of providing the Tribes' members with a "moderate living". *See Washington v. Fishing Vessel Ass'n*, 443 U.S. 658, 686 (1979). Given the perilously low abundance of and risk of extinction faced by the C'waam and Koptu, *see* 2019 BiOp § 6.4, the Tribes' ability to protect their treaty-based fishing rights is inextricably bound up with the mandates of the ESA. To be clear, the ESA itself does not secure the Tribes sufficient fish to fully exercise their treaty-based rights. But the protections afforded the C'waam and Koptu under the ESA by virtue of their listed status, such as a prohibition on unpermitted take, *see* 16 U.S.C. § 1538(a)(1)(B)*,* and on actions that jeopardize the continued existence of the species, *see* 50 C.F.R. §402.02, are necessary, albeit insufficient, predicates to the Tribes' ability to exercise their treaty-based, and culturally vital, fishing rights. The Tribes' federal reserved water rights are similarly intertwined

with the relief sought by plaintiffs because the water rights' primary purpose is to support the resources (including but not limited to the C'waam and Koptu) to which the Tribes have treaty-based rights to hunt, fish, gather, and trap. ACFFOD 04945. The relief plaintiffs seek would effectively constrain Reclamation's ability to comply with both the ESA's mandates and its independent trust obligation to protect the Tribes' treaty-based rights and specially privilege the provision of irrigation water to plaintiffs. This would directly, practically, and inevitably impede the Tribes' ability to protect its interests. This is a paradigmatic example of required party status under Rule 19(a)(1)(B)(i).

### iii.    The United States does not adequately represent the Tribes' interest.

In assessing whether disposition of an action may impair or impede a person's ability to protect its interest, the Ninth Circuit asks whether the present parties adequately represent the person's interest. *See Alto v. Black*, 738 F.3d 1111, 1126–29 (citing *Washington*, 173 F.3d at 1167); *Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1180; *White v. Univ. of Cal.*, 765 F.3d 1010, 1027.

Courts make this determination by applying three factors:

(1) Whether the interests of a present party to the suit are such that it will undoubtedly make all of the absent party's arguments;
(2) Whether a present party is capable of and willing to make such arguments; and
(3) Whether the absent party would offer any necessary element to the proceedings that the present parties would neglect.

*Alto*, 738 F.3d at 1127–28 (citing *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992)). Categorically, however, the United States may not adequately represent an Indian tribe when there is "a conflict between the United States and the tribe." *Verity*, 910 F.2d at 558.

The adequate representation question under Rule 19 parallels Fed.R.Civ.P. 24(a)'s test for whether a person qualifies for intervention of right. *Shermoen*, 982 F.2d at 1318. "The

requirement of [Rule 24(a)] is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing [of inadequate representation] should be treated as minimal." *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538, n. 10 (1972).

Reclamation has a duty to protect the Tribes' fishing and water rights as the trustee of those resources. *See Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1214 (9th Cir. 1999), *opinion amended on denial of reh'g*, 203 F.3d 1175 (9th Cir. 2000) ("[T]he United States, as a trustee for the Tribes, has a responsibility to protect their rights and resources. . . . Because Reclamation maintains control of the [Link River] Dam, it has a responsibility to divert the water and resources needed to fulfill the Tribes' rights, rights that take precedence over any alleged rights of the Irrigators"). Nevertheless, a conflict exists between the Tribes and Reclamation that makes Reclamation's representation of the Tribes' interests in this case inadequate. Plaintiffs allege that Reclamation has overarching contractual obligations to deliver water to plaintiffs, which, if true, would directly conflict with Reclamation's obligations to protect the Tribes' treaty-based rights. *See* Dkt. #19 at 22:70. Although the contractual obligations are legally subordinate to the agency's trust obligations, in reality (and as evidenced by Reclamation's past practice and the endangered status of the C'waam and Koptu), the contractual obligations create a significant risk that Reclamation's representation of the Tribes' interests will be materially limited—not least if Reclamation is persuaded by plaintiffs' claim that interference with their contracts triggers a compensation requirement under the Fifth Amendment (or if, during the pendency of this litigation, the Federal Circuit reverses the lower court's ruling in *Baley v. United States,* 134 Fed. Cl. 619 (2017) to find Fifth Amendment or

other liability for a prior Reclamation shut-off of Project water deliveries to protect the Tribes' rights).[6]

History suggests that conflict persists between the Tribes and Reclamation with respect to the degree to which Reclamation is willing to protect the Tribes' interests in the C'waam and Koptu. In *Klamath Tribes v. Reclamation*, for example, the Tribes brought suit against Reclamation for what the Tribes saw as Reclamation's flawed implementation of the Joint Biological Opinion on the Effects of the Proposed Klamath Project Operations from May 31, 2013, through March 31, 2023, on Five Federally Listed Threatened and Endangered Species, which consistently favored the interests of the Klamath Project and its irrigators over the needs of the C'waam and Koptu, and thus the Tribes'. 2018 WL 3570865. The Tribes have also expressed their dissatisfaction with Reclamation's new Project operation plan that was the subject of the 2019 BiOp in its comments on the plan to Reclamation. Although Reclamation is being sued by irrigator interests in this case, it is reasonable to expect that conflict between Reclamation and the Tribes could continue or arise anew in the course of this litigation as Reclamation seeks to avoid liability to plaintiffs. *See White*, 765 F.3d. at 1027 ("[A]t present [the parties'] interest are aligned. There is some reason to believe that they will not necessarily remain aligned."); *Pacific Northwest Generating Coop v. Brown*, 822 F. Supp. 1479, 1511 (D. Or. 1993) ("[P]arties that are in agreement now may be in bitter disagreement within a very short time frame [citing to history of litigation in which tribes and U.S. were on adverse sides of issue]").

This actual or potential conflict of interest between Reclamation and the Tribes, standing alone, disqualifies Reclamation as an adequate representative of the Tribes' interest. Even in the

---

[6] The appellate court heard oral argument in *Baley* on July 8, 2019.

absence of this conflict, however, the divergence in each party's interests in this action further illustrates the inadequacy of Reclamation as a representative of the Tribes. Under plaintiffs' points of view, Reclamation shares no interest with the Tribes. Plaintiffs claim that Reclamation has no authority to operate the Klamath Project for the benefit of in-stream water uses or rights not recognized by state law. If that is true, or if Reclamation is willing to compromise on these positions to resolve this case, Reclamation cannot represent the Tribes' interest in protecting their water and other rights protected by federal law.

Even to the extent that the parties recognize Reclamation's trust obligation to protect the Tribes' water and fishing rights, Reclamation's interest in this case is still not aligned with the Tribes'. In *Dine Citizens*, the Ninth Circuit recently held that federal agencies did not adequately represent an entity of the Navajo Nation ("NTEC") for purposes of Rule 19 in a challenge under the ESA and the National Environmental Policy Act due to a divergence in interests. 2019 WL 3404210 at *2. There, plaintiffs alleged ESA and National Environmental Policy Act violations stemming from federal agencies' authorization of the continued operation of a mine owned by NTEC. *Id*. NTEC, as a required party that had not waived its sovereign immunity, intervened to seek dismissal under Fed. R. Civ. P. 12(b)(7). The Court held that the federal agencies did not adequately represent NTEC because their respective interests in the subject matter differed "in a meaningful sense." *Id*. at *8. The Court recognized that the federal agencies' "overriding interest" in the action is in "complying with environmental laws," while NTEC's interest is in the continued operation of the mine that it owns. *Id*. Importantly, the Court did not formulaically rely on the federal agencies' role as trustee to the Navajo Nation to pretend that the federal agencies adequately represented NTEC's or the Navajo Nation's interest in the continued operation of the mine when clear legal and economic conflicts of interest existed.

A similar calculus applies here. Reclamation's interest in this case differs "in a meaningful sense" from the Tribes'. Reclamation's overriding interest is defending its compliance with statutory requirements and the constitutionality of its actions. The Tribes' interests, on the other hand, are to protect their treaty-based rights to fish and water, and the long-term survival of the C'waam and Koptu. The fact that Reclamation has a trust obligation to protect the Tribes' resources does not create an equivalence in interest between Reclamation and the Tribes here, just as it did not for the United States and the tribal entity in *Dine Citizens*.

Reclamation's interest in defending its authority under the ESA is also distinct from the Tribes' interest in the same. To be sure, a rebuttable presumption of adequate representation arises where an existing party and the applicant for intervention "share the same ultimate objective," *Citizens for Balanced Use v. Montana Wilderness Ass'n,* 647 F.3d 893, 898 (9th Cir. 2011), or where "the government is acting on behalf of a constituency that it represents." *Arakaki v. Cayetano,* 324 F.3d 1078, 1086 (9th Cir. 2003) *as amended* (May 13, 2003). The Ninth Circuit has held, however, that the presumption of adequacy may be overcome where the intervenors have "more narrow, parochial interests" than the existing party, or where "the applicant asserts a personal interest that does not belong to the general public." *Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1499 (9th Cir. 1995) (internal citations and quotations omitted), abrogated on other grounds by *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011). While Reclamation certainly has an interest in—and indeed a statutory duty to ensure—its compliance with the ESA, the Tribes have a "personal interest that does not belong to the general public": C'waam and Koptu play a central role in the Tribes' cultural and spiritual practices, are its most historically important food-fish, Gentry Decl. ¶ 4, and are "revered by the Klamath Tribes for their cultural, spiritual, and economic significance." *Klamath Tribes v. United States*

*Bureau of Reclamation*, 2018 WL 3570865, at *1. These interests are inherent in the rights reserved by the Tribes in its 1864 treaty with the United States, thus decidedly making them interests that do not belong to the general public.

Finally, looking to the first factor set forth by the court in *Shermoen*, Reclamation will not "undoubtedly make all of the [Tribes'] arguments." 982 F.2d at 1318. In particular, Reclamation is unlikely to make all of the arguments the Tribes might in response to KID's alternate request for relief that Reclamation purchase or condemn the water it uses that would otherwise go to KID. Dkt. # 24 at 20:71. The Tribes' interests in the C'waam and Koptu and its treaty-based rights could potentially be better protected if Reclamation simply condemned junior water rights, such as plaintiffs' (whether for ESA reasons or otherwise). The arguments the Tribes might make on that front (were the Tribes participating in this litigation on the merits), would very likely not be arguments that Reclamation would be willing to make given the financial liability to the United States. Reclamation therefore cannot adequately represent the Tribes' interests.

## IV.    CONCLUSION

For the foregoing reasons, Rule 24(a) entitles the Tribes to intervene in this action by right. The Court should grant this motion and allow the Tribes to file their attached motion to dismiss.[7]

Dated: August 16, 2019.

s/ Jay D. Weiner
Jay D. Weiner, #182247

---

[7] The Tribes attach their proposed Motion to Dismiss to this motion as Exhibit A.

Klamath Tribes' Motion to Intervene          18

**CERTIFICATE OF SERVICE**

I hereby certify that on August 16, 2019, I filed a true and correct copy of the foregoing document as well as the supporting Declaration of Donald C. Gentry and all exhibits to the above-referenced documents, with the Clerk of Court for the United States District Court —District of Oregon via the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

ROSETTE, LLP

s/ *Jay D. Weiner*

Jay D. Weiner, OSB # 182247