# EXHIBIT A

Jay D. Weiner, #182247
jweiner@rosettelaw.com
Rosette, LLP
1415 L St. Suite 450
Sacramento, CA 95814
 (916) 353-1084

Attorney for Intervenor The Klamath Tribes

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| KLAMATH IRRIGATION DISTRICT,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES BUREAU OF RECLAMATION; DAVID BERNHARDT, Acting Secretary of the Interior, in his official capacity; BRENDA BURMAN, Commissioner of the Bureau of Reclamation, in her official capacity; ERNEST CONANT, Director of the Mid-Pacific Region, Bureau of Reclamation, in his official capacity; and JEFFREY NETTLETON, in his official capacity as Area Manager for the Klamath Area Reclamation Office,<br><br>        Defendants<br><br>SHASTA VIEW IRRIGATION DISTRICT, KLAMATH DRAINAGE DISTRICT, VAN BRIMMER DITCH COMPANY, TULELAKE IRRIGATION DISTRICT, KLAMATH WATER USERS | **Case No.: 1:19-cv-00451-CL (lead)**<br>Case No.: 1:10-cv-00531-CL<br><br>THE KLAMATH TRIBES' MOTION TO DISMISS FOR FAILURE TO JOIN A PARTY UNDER RULE 19<br><br>Request for Oral Argument |

Klamath Tribes' Motion to Dismiss   1

ASSOCIATION, BEN DUVAL, and ROB UNRUH,

           Plaintiffs,

v.

UNITED STATES BUREAU OF RECLAMATION; ERNEST CONANT, in his official capacity as the Regional Director of the Mid-Pacific Region of the United States Bureau of Reclamation; JEFFREY NETTLETON, in his official capacity as the Area Manager of the Klamath Basin Area Office of the United States Bureau of Reclamation,

           Defendants

## CERTIFICATE OF COMPLIANCE WITH LR 7-1

Undersigned counsel certifies that the parties have made a good faith effort through telephone conference to resolve the issues herein but were unable to resolve the issues. The undersigned is informed that all parties presently take no position on this motion pending their review of it.

## MOTION TO DISMISS

Expressly reserving its sovereign immunity, the Klamath Tribes (the "Tribes") move, pursuant to Fed. R. Civ. P. 12(b)(7), for an order, as Fed. R. Civ. P. 19 ("Rule 19") requires, dismissing both complaints in this consolidated action[1] for failure and inability to join the Tribes. The Tribes are a required party for three reasons. First, resolution of plaintiffs' claims may impair or impede the Tribes' ability to protect their rights to water and fish in Upper Klamath Lake ("UKL"). Second, the Tribes' absence may leave the Bureau of Reclamation

---

[1] Case Nos. 19-cv-00451-CL and 19-cv-00531-CL were consolidated pursuant to joint motion. Dkt. #17.

Klamath Tribes' Motion to Dismiss        2

("Reclamation") subject to an order by this court that is inconsistent with its obligations under the Endangered Species Act ("ESA") and its trust responsibility to protect the Tribes' treaty-based rights to water and fish. Third, for the foregoing reasons, the Tribes' absence prevents this court from according complete relief between the existing parties. The Tribes may not be joined because of their sovereign immunity, which they have not waived and do not waive here, and which Congress has not expressly abrogated. As this action may not proceed in equity and good conscience without the Tribes, this court should dismiss it. The Tribes also seek dismissal pursuant to Fed. R. Civ. P. 12(b)(7) and 19 for failure to join the Hoopa Valley Tribe or the Yurok Tribe, who are also indispensable parties.[2] This motion is based on the court file; the declaration of the Klamath Tribes Chairman, Donald C. Gentry; and the accompanying memorandum.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

The Tribes have cultural, spiritual, historical, and economic connections to the waters of the Klamath Basin and its fish, including those in UKL, dating back to time immemorial. The Tribes' treaty protects their interest in the waters of the Klamath Basin and its fish. In this action, plaintiffs seek an order from this court that would prevent the Bureau of Reclamation ("Reclamation") from managing the river and UKL in a way that would satisfy the Tribes' treaty-protected water and fishing rights or from protecting certain endangered fish. Because of the significant and adverse effects such an order would have on the Tribes' ability to protect their interests, the risk of inconsistent obligations such an order could pose for Reclamation, and the

---

[2] The Tribes join, and incorporate by reference, arguments in support of dismissal made in motions filed by the Hoopa Valley Tribe.

court's inability to accord complete relief to the parties in the Tribes' absence, the Tribes are a required party to this action. However, because the Tribes have not waived their sovereign immunity from suit, and do not do so here, the court cannot order the Tribes to be joined and should instead dismiss the consolidated cases with prejudice.

## II.    STATEMENT OF FACTS[3]

### A.  The Tribe's Rights and Interests in the Klamath River

Since time immemorial, the Klamath Tribes and their members have used, and continue to use, the resources of the Klamath Basin in what is now the states of both Oregon and California for subsistence, cultural, ceremonial, religious, and commercial purposes. Declaration of Donald C. Gentry in Support of the Klamath Tribes' Motion to Intervene and Motion to Dismiss ("Gentry Decl.") ¶ 3. C'waam (Lost River sucker or *Deltistes luxatus*) and Koptu (shortnose sucker or *Chasmistes brevirostris*) have played a particularly central role in the Tribes' cultural and spiritual practices, and they were once the Tribes' most important food-fish. *Id.* ¶ 4; *Klamath Tribes v. United States Bureau of Reclamation*, No. 18-CV-03078-WHO, 2018 WL 3570865, at *1 (N.D. Cal. July 25, 2018) (C'waam and Koptu are "revered by the Klamath Tribes for their cultural, spiritual, and economic significance.").

In 1864, the United States and the Tribes entered into a treaty whereby the Tribes ceded their interests in millions of acres of land and retained a reservation of approximately 800,000 acres, along with "the exclusive right of taking fish in the streams and lakes, included in said reservation, and of gathering edible roots, seeds, and berries within its limits." Treaty between the United States and the Klamath and Moadoc Tribes and Yahooskin Bank of Snake Indians, October 14, 1864, 16 Stat. 707. The Ninth Circuit has recognized that the Tribes' treaty fishing

---

[3] This Statement of Facts is identical to Section II.A-C in the Tribes' Motion to Intervene.

Klamath Tribes' Motion to Dismiss            4

rights include "the right to prevent other appropriators from depleting the streams waters below a protected level." *United States v. Adair*, 723 F.2d 1394, 1411 (9th Cir. 1983).

In 1975, the State of Oregon initiated the Klamath Basin Adjudication which led to a quantification of the Tribes' rights in the waters of the Klamath Basin. *See* Klamath Irrigation District ("KID")'s Am. Compl., Dkt. #4 at 9:32. In February 2014, the Oregon Water Resources Department filed its Amended and Corrected Findings of Fact and Final Order of Determination ("ACFFOD") with the Klamath County Circuit Court setting forth the attributes of the Tribes' water rights. Under Oregon law, the ACFFOD is in "full force and effect" unless and until its operation is stayed. ORS 539.130(4). Among other things, the ACFFOD recognizes the Tribes' instream rights to water in UKL to accommodate its treaty fishing rights. *See* Dkt. #4 at 12:42(f) (citing ACFFOD 04941).

### B. The Klamath Irrigation Project

Pursuant to the Act of February 9, 1905, ch. 567, 33 Stat. 714, and under the authority of the Reclamation Act of 1902, 43 U.S.C. §§ 372 et seq., Congress authorized the construction and development of the Klamath Irrigation Project (the "Project") in and around the Klamath Tribes' ancestral homelands and waters. Gentry Decl. ¶ 5.

Over the ensuing century, the Project's infrastructure and operations have modified the hydrology and water quality of UKL and the entire Klamath River Basin through the storage, diversion, and conveyance of water for agricultural, municipal, and hydroelectric purposes throughout what is now southern Oregon and northern California. *See* United States Fish and Wildlife Service Biological Opinion on the Effects of Proposed Klamath Project Operations from April 1, 2019, through March 31, 2024 on the Lost River Sucker and the Shortnose Sucker

Klamath Tribes' Motion to Dismiss           5

("2019 BiOp") §§ 2.1, 4.3.3.[4] These changes have had devasting impacts on many Klamath Basin species, including the C'waam and Koptu who are now critically endangered. *Id*. at § 6.4. The Project features several major dams, including the Link River Dam at the outlet of UKL, by which Reclamation manages UKL's elevation. *Id*. at § 2.1, 4.3.3.

The Tribes have challenged Reclamation's management of the Project for its failure to protect the C'waam and Koptu, both under the 2019 BiOp and its precursor. Gentry Decl., Ex. A (Letter from Donald C. Gentry, Chairman of the Klamath Tribes, to Jeff Nettleton, U.S. Bureau of Reclamation, regarding Comments of the Klamath Tribes on Reclamation's November 1, 2018 Proposed Action Summary (Nov. 30, 2018)); *Id.* Ex. B (Letter from Donald C. Gentry, Chairman of the Klamath Tribes, to Jeff Nettleton, U.S. Bureau of Reclamation, regarding Comments of the Klamath Tribes on Reclamation's December 12, 2018 Draft Proposed Action Chapter of the Biological Assessment (Dec. 16, 2019)); *Klamath Tribes v. Reclamation*, No. 18-CV-03078-WHO, 2018 WL 3570865 (N.D. Cal. July 25, 2018).

### C. Plaintiff's Claims

Plaintiffs Shasta View Irrigation District, Klamath Drainage District, Van Brimmer Ditch Company, Tulelake Irrigation District, Klamath Water Users Association, Ben Duval, and Rob Unruh, (collectively "Plaintiff Water Users") and plaintiff Klamath Irrigation District ("KID") seek remedies which would irreversibly and materially impair the Tribes' treaty-based rights in the waters and species of the Klamath Basin. Plaintiff Water Users ask for a declaration and permanent injunction that Reclamation "may not operate or direct Klamath Project operations . . . for purposes other than irrigation, livestock, and domestic use," or in any other manner that

---

[4] The 2019 BiOp is available at https://www.fws.gov/cno/pdf/BiOps/FWS-BiOp-Klamath-Project-Operation-VI508.pdf

Klamath Tribes' Motion to Dismiss           6

"curtails or limits the supply of state water rights." Plaintiff Water Users Am. Compl., Dkt. #19 at 32:5. Similarly, KID alleges that "the Reclamation Act prohibits Reclamation from interfering with vested rights established under state law," Dkt. #4 at 15:49, and asks this court to enjoin Reclamation "from using water stored in UKL reservoir for instream purposes during KID's irrigation season." *Id*. 18-19:68. KID also claims that Reclamation "may not divest KID and its landowners of their . . . water rights . . . without first purchasing or condemning 'under judicial process' those same rights[.]" *Id*. 20:71.

### III.  ARGUMENT

#### A.  Legal Standard

A party may move to dismiss a complaint for "failure to join a party under Rule 19." Fed. R. Civ. P. 12(b)(7). "Rule 19 is designed to protect the interests of absent parties, as well as those ordered before the court, from multiple litigation, inconsistent judicial determinations or the impairment of interests or rights." *CP Nat'l Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 911 (9th Cir. 1991). The inquiry is fact-specific and practical. *N. Alaska Envtl. Ctr. v. Hodel,* 803 F.2d 466, 468 (9th Cir.1986); *Camacho v. Major League Baseball,* 297 F.R.D. 457, 460–61 (S.D.Cal.2013). For this reason, it may be necessary to review evidence beyond the pleadings. *Camacho,* 297 F.R.D. at 461 (quoting *McShan v. Sherrill,* 283 F.2d 462, 464 (9th Cir.1960)).

#### B.  The Tribes are a required party.[5]

Although Fed. R. Civ. P. 19(a)(1) is drafted in the disjunctive (that is, a person need only satisfy one of its three criteria to qualify as a required party), the Tribes meet each of the three distinct requirements set forth in Fed. R. Civ. P. 19(a)(1)(A)–(B).

---

[5] Sections III.B.(i)-(iii) parallel Sections III.C.(i)-(iii) in the Tribes' currently filed Motion to Intervene.

Klamath Tribes' Motion to Dismiss                  7

### i. The Tribes claim interests in the action.

To establish that it is a required party under Rule 19(a)(1)(B), the Tribes must first "claim[] an interest relating to the subject matter of the action[.]" Rule 19(a)(1)(B). An "interest relating to the subject matter of action" means an interest that is "legally protected." *Cachil Dehe Band of Wintun Indians of the Colusa Indian Cmty. v. California*, 547 F.3d 962, 970 (9th Cir. 2008). While there are "few categorical rules" governing how to answer the "practical… and fact specific" question of what constitutes an interest protected by Rule 19, *Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*, No. 17-17320, 2019 WL 3404210, at *5 (9th Cir. July 29, 2019) (internal quotations and citations omitted), the Ninth Circuit has "held that the interest at stake need not be 'property in the sense of the due process clause.'" *Cachil*, 547 F.3d at 970 (quoting *Am. Greyhound Racing v. Hull*, 305 F.3d 1015, 1023 (9th Cir. 2002)), but it "'must be more than a financial stake, and more than speculation about a future event.'" *Id.* at 970 (quoting *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990)). At the very least, a "right already granted" is legally protected by the rule. *Dine Citizens*, 2019 WL 3404210, at *5. Too, a party need not conclusively *prove* that it has a Rule 19-protected interest. Rather, "it is the party's *claim* of a protectible interest that makes its presence necessary." *Hull*, 305 F.3d at 1024 (emphasis original).

The Ninth Circuit has held that a tribe's claimed treaty-based interest in fish is entitled to protection under Rule 19. *Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir. 1999). Moreover, the United States Court of Claims has held that the Klamath Tribes were a required party under Rule 19 based on their interests in "fishing and water rights that derive from the [1864] Treaty." *Klamath Tribe Claims Comm. v. United States*, 97 Fed. Cl. 203, 212-213 (2011). Other courts have recognized that a tribe's interest in its reserved water rights is a legally-protected interest

under Rule 19. *See Oklahoma v. Tyson Foods, Inc.*, 258 F.R.D. 472, 478 (N.D. Okla. 2009) (holding the Cherokee Nation's interest in its water rights warrants legal protection under Rule 19).

The Tribes here claim interests in the fish and water of the Klamath Basin because of the cultural, spiritual, historical, and economic significance of these species to the Tribes and their members. The Tribes' treaty protects these interests and the recent ACFFOD relates such protection to other water users in the Klamath Basin. As the court recognized in *Klamath Tribe Claims Comm.*, these legally protected interests incontrovertibly warrant protection under Rule 19. 97 Fed. Cl. at 212-213.

### ii. Resolving the action in the Tribes' absence may as a practical matter impair or impede the Tribes' ability to protect their interests.

A person that "claims an interest relating to the subject matter of the litigation" must be joined if "it is so situated that disposing of the action in the person's absence may . . . as a practical matter impair or impede the person's ability to protect the interest." Rule 19(a)(1)(B)(i). Disposing of this action in the Tribes' absence may well impair or impede their ability to protect their interests in fish and water in the Klamath Basin. As noted above, Plaintiff Water Users ask for a declaration and permanent injunction that Reclamation "may not operate or direct Klamath Project operations . . . for purposes other than irrigation, livestock, and domestic use," or in any other matter that "curtails the supply of state water rights." Dkt. #19 at 32:5. Similarly, KID alleges that "the Reclamation Act prohibits Reclamation from interfering with vested rights established under state law," Dkt. #4 at 15:49, and asks this court to enjoin Reclamation "from using water stored in UKL reservoir for instream purposes during KID's irrigation season." *Id.* 18-19:68. Constraining Reclamation's operation of the Project in the manner requested by

Klamath Tribes' Motion to Dismiss	9

plaintiffs would directly impair the Tribes' ability to protect their treaty-based fishing rights and adjudicated water rights.

The Tribes' treaty-based rights include the right to a harvestable population of C'waam and Koptu capable of providing the Tribes' members with a "moderate living". *See Washington v. Fishing Vessel Ass'n*, 443 U.S. 658, 686 (1979). Given the perilously low abundance of and risk of extinction faced by the C'waam and Koptu, *see* 2019 BiOp § 6.4, the Tribes' ability to protect their treaty-based fishing rights is inextricably bound up with the mandates of the ESA. To be clear, the ESA itself does not secure the Tribes sufficient fish to fully exercise their treaty-based rights. But the protections afforded the C'waam and Koptu under the ESA by virtue of their listed status, such as a prohibition on unpermitted take, *see* 16 U.S.C. § 1538(a)(1)(B), and on actions that jeopardize the continued existence of the species, *see* 50 C.F.R. §402.02, are necessary, albeit insufficient, predicates to the Tribes' ability to exercise their treaty-based, and culturally vital, fishing rights. The Tribes federal reserved water rights are similarly intertwined with the relief sought by plaintiffs because the water rights' primary purpose is to support the resources (including but not limited to the C'waam and Koptu) to which the Tribes have treaty-based rights to hunt, fish, gather and trap. ACFFOD 04945. The relief plaintiffs seek would effectively constrain Reclamation's ability to comply with both the ESA's mandates and its independent trust obligation to protect the Tribes' treaty-based rights and specially privilege the provision of irrigation water to plaintiffs. This would directly, practically, and inevitably impede the Tribes' ability to protect its interests. This is a paradigmatic example of required party status under Rule 19(a)(1)(B)(i).

      iii.  **The United States does not adequately represent the Tribes' interest.**

In assessing whether disposition of an action may impair or impede a person's ability to protect its interest, the Ninth Circuit asks whether the present parties adequately represent the person's interest. *See Alto v. Black*, 738 F.3d 1111, 1126–29 (citing *Washington*, 173 F.3d at 1167); *Salt River Project Agr. Imp. & Power Dist. v. Lee*, 672 F.3d 1176, 1180; *White v. Univ. of Cal.*, 765 F.3d 1010, 1027.

Courts make this determination by applying three factors:

(1) Whether the interests of a present party to the suit are such that it will undoubtedly make all of the absent party's arguments;
(2) Whether a present party is capable of and willing to make such arguments; and
(3) Whether the absent party would offer any necessary element to the proceedings that the present parties would neglect.

*Alto*, 738 F.3d at 1127–28 (citing *Shermoen v. United States*, 982 F.2d 1312, 1318 (9th Cir. 1992)). Categorically, however, the United States may not adequately represent an Indian tribe when there is "a conflict between the United States and the tribe." *Verity,* 910 F.2d at 558.

The adequate representation question under Rule 19 parallels Fed.R.Civ.P. 24(a)'s test for whether a person qualifies for intervention of right. *Shermoen*, 982 F.2d at 1318. "The requirement of [Rule 24(a)] is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing [of inadequate representation] should be treated as minimal." *Trbovich v. United Mine Workers of Am.,* 404 U.S. 528, 538, n. 10 (1972).

Reclamation has a duty to protect the Tribes' fishing and water rights as the trustee of those resources. *See Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1214 (9th Cir. 1999), *opinion amended on denial of reh'g*, 203 F.3d 1175 (9th Cir. 2000) ("the United States, as a trustee for the Tribes, has a responsibility to protect their rights and resources. . . . Because Reclamation maintains control of the [Link River] Dam, it has a responsibility to divert

the water and resources needed to fulfill the Tribes' rights, rights that take precedence over any alleged rights of the Irrigators"). Nevertheless, a conflict exists between the Tribes and Reclamation that makes Reclamation's representation of the Tribes' interests in this case inadequate. Plaintiffs allege that Reclamation has overarching contractual obligations to deliver water to plaintiffs, which, if true, would directly conflict with Reclamation's obligations to protect the Tribes' treaty-based rights. *See* Dkt. #19 at 22:70. Although the contractual obligations are legally subordinate to the agency's trust obligations, in reality (and as evidenced by Reclamation's past practice and the endangered status of the C'waam and Koptu), the contractual obligations create a significant risk that Reclamation's representation of the Tribes' interests will be materially limited—not least if Reclamation is persuaded by plaintiffs' claim that interference with their contracts triggers a compensation requirement under the Fifth Amendment (or if, during the pendency of this litigation, the Federal Circuit reverses the lower court's ruling in *Baley v. United States,* 134 Fed. Cl. 619 (2017) to find Fifth Amendment or other liability for a prior Reclamation shut-off of Project water deliveries to protect the Tribes' rights).[6]

     History suggests that conflict persists between the Tribes and Reclamation with respect to the degree to which Reclamation is willing to protect the Tribes' interests in the C'waam and Koptu. In *Klamath Tribes v. Reclamation*, for example, the Tribes brought suit against Reclamation for what the Tribes saw as Reclamation's flawed implementation of the Joint Biological Opinion on the Effects of the Proposed Klamath Project Operations from May 31, 2013, through March 31, 2023, on Five Federally Listed Threatened and Endangered Species, which consistently favored the interests of the Klamath Project and its irrigators over the needs

---

[6] The appellate court heard oral argument in *Baley* on July 8, 2019.

Klamath Tribes' Motion to Dismiss               12

of the C'waam and Koptu, and thus the Tribes'. 2018 WL 3570865. The Tribes have also expressed their dissatisfaction with Reclamation's new Project operation plan that was the subject of the 2019 BiOp. The Tribes have also expressed their dissatisfaction with Reclamation's new Project operation plan that was the subject of the 2019 BiOp in its comments on the plan to Reclamation. Although Reclamation is being sued by irrigator interests in this case, it is reasonable to expect that conflict between Reclamation and the Tribes could continue or arise anew in the course of this litigation as Reclamation seeks to avoid liability to plaintiffs. *See White*, 765 F.3d at 1027 ("[A]t present [the parties'] interest are aligned. There is some reason to believe that they will not necessarily remain aligned."); *Pacific Northwest Generating Coop v. Brown*, 822 F. Supp. 1479, 1511 (D. Or. 1993) ("[P]arties that are in agreement now may be in bitter disagreement within a very short time frame [citing to history of litigation in which tribes and U.S. were on adverse sides of issue]").

      This actual or potential conflict of interest between Reclamation and the Tribes, standing alone, disqualifies Reclamation as an adequate representative of the Tribes' interest. Even in the absence of this conflict, however, the divergence in each party's interests in this action further illustrates the inadequacy of Reclamation as a representative of the Tribes. Under plaintiffs' points of view, Reclamation shares no interest with the Tribes. Plaintiffs claim that Reclamation has no authority to operate the Klamath Project for the benefit of in-stream water uses or rights not recognized by state law. If that is true, or if Reclamation is willing to compromise on these positions to resolve this case, Reclamation cannot represent the Tribes' interest in protecting their water and other rights protected by federal law.

      Even to the extent that the parties recognize Reclamation's trust obligation to protect the Tribes' water and fishing rights, Reclamation's interest in this case is still not aligned with the

Tribes'. In *Dine Citizens*, the Ninth Circuit recently held that federal agencies did not adequately represent an entity of the Navajo Nation ("NTEC") for purposes of Rule 19 in a challenge under the ESA and the National Environmental Policy Act due to a divergence in interests. 2019 WL 3404210 at *2. There, plaintiffs alleged ESA and National Environmental Policy Act violations stemming from federal agencies' authorization of the continued operation of a mine owned by NTEC. *Id*. NTEC, as a required party that had not waived its sovereign immunity, intervened to seek dismissal under Fed. R. Civ. P. 12(b)(7). The Court held that the federal agencies did not adequately represent NTEC because their respective interests in the subject matter differed "in a meaningful sense." *Id*. at *8. The Court recognized that the federal agencies' "overriding interest" in the action is in "complying with environmental laws," while NTEC's interest is in the continued operation of the mine that it owns. *Id*. Importantly, the Court did not formulaically rely on the federal agencies' role as trustee to the Navajo Nation to pretend that the federal agencies adequately represented NTEC's or the Navajo Nation's interest in the continued operation of the mine when clear legal and economic conflicts of interest existed.

  A similar calculus applies here. Reclamation's interest in this case differs "in a meaningful sense" from the Tribes'. Reclamation's overriding interest is defending its compliance with statutory requirements and the constitutionality of its actions. The Tribes' interests, on the other hand, are to protect their treaty-based rights to fish and water, and the long-term survival of the C'waam and Koptu. The fact that Reclamation has a trust obligation to protect the Tribes' resources does not create an equivalence in interest between Reclamation and the Tribes here, just as it did not for the United States and the tribal entity in *Dine Citizens*.

  Reclamation's interest in defending its authority under the ESA is also distinct from the Tribes' interest in the same. To be sure, a rebuttable presumption of adequate representation

Klamath Tribes' Motion to Dismiss      14

arises where an existing party and the applicant for intervention "share the same ultimate objective," *Citizens for Balanced Use v. Montana Wilderness Ass'n,* 647 F.3d 893, 898 (9th Cir. 2011), or where "the government is acting on behalf of a constituency that it represents." *Arakaki v. Cayetano,* 324 F.3d 1078, 1086 (9th Cir. 2003) *as amended* (May 13, 2003). The Ninth Circuit has held, however, that the presumption of adequacy may be overcome where the intervenors have "more narrow, parochial interests" than the existing party, or where "the applicant asserts a personal interest that does not belong to the general public." *Forest Conservation Council v. U.S. Forest Service*, 66 F.3d 1489, 1499 (9th Cir. 1995) (internal citations and quotations omitted), abrogated on other grounds by *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011). While Reclamation certainly has an interest in—and indeed a statutory duty to ensure—its compliance with the ESA, the Tribes have a "personal interest that does not belong to the general public": C'waam and Koptu play a central role in the Tribes' cultural and spiritual practices, are its most historically important food-fish, Gentry Decl. ¶ 4, and are "revered by the Klamath Tribes for their cultural, spiritual, and economic significance." *Klamath Tribes v. United States Bureau of Reclamation*, 2018 WL 3570865, at *1. These interests are inherent in the rights reserved by the Tribes in its 1864 treaty with the United States, thus decidedly making them interests that do not belong to the general public.

Finally, looking to the first factor set forth by the court in *Shermoen*, Reclamation will not "undoubtedly make all of the [Tribes'] arguments." 982 F.2d at 1318. In particular, Reclamation is unlikely to make all of the arguments the Tribes might in response to KID's alternate request for relief that Reclamation purchase or condemn the water it uses that would otherwise go to KID. Dkt. # 24 at 20:71. The Tribes' interests in the C'waam and Koptu, and its treaty-based rights, could potentially be better protected if Reclamation simply condemned junior

water rights, such as plaintiffs' (whether for ESA reasons or otherwise). The arguments the Tribes might make on that front (were the Tribes participating in this litigation on the merits), would very likely not be arguments that Reclamation would be willing to make given the financial liability to the United States. Reclamation therefore cannot adequately represent the Tribes' interests.

    **iv. Resolving the action in the Tribes' absence may leave Reclamation subject to inconsistent obligations because of the Tribes' Interest.**

The Tribes incorporate section III.B.3. of Hoopa Valley Tribe's Mot. To Dismiss, Dkt. #21-1 at 28-29. Where the Hoopa Valley Tribe has federal reserved water and fishing rights, the Tribes likewise have rights protected by treaty, including treaty-based right to fish and to federal reserved water rights that have been adjudicated in the ACFFOD.

  **B. Joinder is not feasible.**

"Federally recognized Indian tribes enjoy sovereign immunity from suit, and may not be sued absent an express and unequivocal waiver of immunity by the tribe or abrogation of tribal immunity by Congress." *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1159 (9th Cir. 2002) (citations omitted). The Tribes have not waived, and do not now waive, their sovereign immunity and Congress has not abrogated it. Therefore, joinder is not possible, let alone feasible.

  **C. The action cannot proceed in equity and good conscience among the existing parties.**

The Tribes incorporate section III.C. of the Hoopa Valley Tribe's Mot. To Dismiss, Dkt. #21-1 at 29-34. The Tribes add two points. First, unlike the Hoopa Valley Tribe, which will be prejudiced if the plaintiffs are afforded their requested relief because Reclamation would be prevented from releasing water downstream, the Tribes would be prejudiced because, in a similar

circumstance, Reclamation would be prevented from retaining water in UKL for non-irrigation purposes, in derogation of its obligations under the ESA and its trust responsibility to the Tribes. Second, KID's request for a delayed injunction does not shape relief to avoid prejudice. KID asks this court not to enforce an injunction until April 1, 2020 to allow Reclamation time to acquire water rights under state law necessary to support endangered species. *See* Dkt. # 4 at19:1-7. However, this litigation may well not resolve until either shortly before or even after that date, allowing Reclamation little to no time to make accommodations to protect endangered species such as the C'waam and Koptu. Additionally, there is no guarantee that Reclamation would or even could acquire water rights under state law with both a quantity and a priority date sufficient to protect the Tribes' water and fishing rights while satisfying plaintiffs if they secure the relief requested in this litigation. Ultimately, plaintiffs, Reclamation, and the Tribes are all competing over a limited resource. Plaintiffs' claims in this case and the vindication of the Tribes' interests may be mutually exclusive. This action therefore cannot proceed without the Tribes, who cannot be joined to it. It must be dismissed with prejudice.

### D. The Public Rights Exception Does Not Apply.

The Ninth Circuit recognizes a public rights exception to dismissals based on Rule 19(b). *See Verity*, 910 F.2d at 559 n.6. To qualify for the public rights exception, "the litigation must transcend the private interests of the litigants and seek to vindicate a public right." *Hull*, 305 F.3d at 1026 (internal quotations omitted). "Almost any litigation, however, can be characterized as an attempt to make one party or another act in accordance with the law." *Id*. Accordingly, the Ninth Circuit refused to apply the public rights exception in derogation of tribal sovereign immunity where plaintiffs' interest in an action was "in freeing themselves from the competition of Indian gaming, not in establishing for all the principle of separation of powers." *Id*. Similarly, in *Kescoli*

*v. Babbitt*, the Court rejected plaintiff's argument that it was vindicating a public interest by enforcing the Surface Mining Control and Reclamation Act, because plaintiff's claim was "a private one focused on the merits of her dispute rather than on vindicating a larger public interest." 101 F.3d 1304, 1311 (9th Cir. 1996). The Ninth Circuit recently reframed the public rights analysis as "whether the litigation *threatens* to destroy an absent party's legal entitlements." *Dine Citizens* at 32, 2019 WL 3404210 at *13 (emphasis original).

As in *Hull* and *Kescoli*, plaintiffs here are concerned with vindicating their own rights—not those of the public. Plaintiffs seek relief from Reclamation's alleged interference with their access to water under state law-based water rights and contracts with Reclamation, not enforcement of the Reclamation Act and ESA for the benefit of the greater public. *See* Dkt. #4 at 1:1 ("Plaintiff [KID], on behalf of itself and its landowners, brings this action for declaratory and injunctive relief to protect their private property rights."); Dkt. #19 at 4-7 (describing the representative scope of each party to the complaint). Moreover, as in *Dine Citizens*, this litigation *threatens* to destroy the Tribes' entitlement to water for their own use and the protection of C'waam and Koptu under their treaty. Because this case is "a private one focused on the merits of [the] dispute rather than on vindicating a larger public interest" and the litigation threatens to destroy or severely compromise the Tribes' pre-existing legal rights and entitlements, the public rights exception does not apply.

## IV.    CONCLUSION

For the foregoing reasons, the Tribes are a required party. The Tribes' sovereign immunity makes joinder infeasible, however, and the case cannot proceed without the Tribes in equity and good conscience. The court should grant the Tribes' motion to dismiss and dismiss the action with prejudice.

Dated: August 16, 2019.

                                                              s/ Jay D. Weiner
                                                              Jay D. Weiner, #182247